IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

| | |
|---|---|
| ANTOINE POTEAT, : | |
| : | |
| Plaintiff, : | CIVIL ACTION |
| : | |
| v. : | No. 21-cv-3117 |
| : | |
| GERALD LYDON, *et al.*, : | |
| : | |
| Defendants. : | |

_____

**ORDER**

AND NOW, this ___ day of _____, 2021, upon consideration of the Cpl. Lydon, Cpl. Labour, Cpl. Goldsmith, Cpl. Julius, Lt. Emery, Tpr. Konopka (hereinafter "Commonwealth Defendants"), Motion to Dismiss Plaintiff's Complaint, it is ORDERED and DECREED that the Motion is GRANTED. All claims against Commonwealth Defendants are hereby DISMISSED with prejudice.

BY THE COURT:

_____
Joseph F. Leeson, Jr., J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTOINE POTEAT, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | No. 21-cv-3117 |
| | : | |
| GERALD LYDON, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## COMMONWEALTH DEFENDANTS'
## <u>MOTION TO DISMISS</u>

Defendants Cpl. Lydon, Cpl. Labour, Cpl. Goldsmith, Cpl. Julius, Lt. Emery, Tpr. Konopka (hereinafter "Commonwealth Defendants"), move the Court, pursuant to Federal Rules of Civil Procedure 12(b)(6), to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for the reasons contained in the attached Memorandum of Law.

Respectfully submitted,

JOSH SHAPIRO
Attorney General

By:     s/ Sarina Kaplan
_____

Sarina Kaplan
Deputy Attorney General
Attorney I.D. No. 209738

Office of Attorney General
1600 Arch St., Suite 300
Philadelphia, PA 19103
Phone: (267) 689-3964
Fax:    (717) 772-4526
skaplan@attorneygeneral.gov

Karen M. Romano
Acting Chief Deputy Attorney General
Civil Litigation Section

Date:  September 24, 2021

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____
                                            :
ANTOINE POTEAT,                             :
                                            :
        Plaintiff,                          :        CIVIL ACTION
                                            :
        v.                                  :        No. 21-cv-3117
                                            :
GERALD LYDON, *et al.*,                     :
                                            :
        Defendants.                         :
_____

## MEMORANDUM OF LAW IN SUPPORT OF COMMONWEALTH DEFENDANTS' <u>MOTION TO DISMISS</u>

Defendants Cpl. Lydon, Cpl. Labour, Cpl. Goldsmith, Cpl. Julius, Lt. Emery, Tpr. Konopka (hereinafter "Commonwealth Defendants"), by counsel, respectfully submit this Memorandum of Law in Support of his Motion to Dismiss Plaintiff's Complaint ("Motion").

## I.    INTRODUCTION

Plaintiff alleges civil rights violations and state-law claims against Cpl. Lydon, Cpl. Labour, Cpl. Goldsmith, Cpl. Julius, Lt. Emery, Tpr. Konopka (hereinafter "Commonwealth Defendants") stemming from his arrest on February 20, 2013, and conviction for charges related to that arrest on September 21, 2015. *Plaintiff's Complaint, ECF No. 1, ¶¶1, 31, 79.* Plaintiff's constitutional and state law claims are all barred by the statute of limitations. Even if Plaintiff's claims are not considered to be time-barred, Plaintiff's Section 1983 claims against the Commonwealth Defendants fail to state a claim, and they are barred by the doctrine of qualified immunity while the state law claims are barred by the doctrine of sovereign immunity.

## II.    RELEVANT FACTUAL ALLEGATIONS

1. On February 20, 2013, Defendant Corporal Lydon, acting in his capacity as a Trooper for the Pennsylvania State Police, pulled Plaintiff over for a routine traffic offense. *Plaintiff's Complaint, ECF No. 1, ¶¶1-2; Affidavit of Probable Cause, Exhibit "A," ¶¶1, 3, 4.*

2. Upon approaching Plaintiff's vehicle, Cpl. Lydon made the following observations:

   > While speaking to [Plaintiff] I smelled an odor of marijuana coming from the vehicle. I also observed multiple air fresheners and dryer sheets throughout the vehicle. Through my training and experience these indicators are often· used as a masking agent to facilitate the transportation of narcotics. I also observed multiple cellular phones in the vehicle. During the course of the traffic stop, [Plaintiff] received multiple cellular phone calls. A NYC Parking Authority citation was observed in plain view. When asked about the ticket he advised he lent his friend the vehicle and he received the ticket. The ticket was dated 02/19/13. An NCIC check of the [Plaintiff's] criminal history showed two prior drug arrests in Virginia including simple possession of marijuana and possession of marijuana with intent to deliver.

   *Plaintiff's Complaint, ECF No. 1, ¶3; Affidavit of Probable Cause, Exhibit "A," ¶5.*

3. Cpl. Lydon asked Plaintiff whether he could search Plaintiff's vehicle to which Plaintiff did not grant permission. *Plaintiff's Complaint, ECF No. 1, ¶¶12-13; Affidavit of Probable Cause, Exhibit "A," ¶¶6.*

4. Cpl. Lydon called for backup and Defendant Corporal Labour of the Bureau of Emergency & Special Operations, Canine Section arrived on the scene to deploy State Police drug detection canine "DANO" to conduct an exterior only search of the vehicle. *Plaintiff's Complaint, ECF No. 1, ¶¶4-5; Affidavit of Probable Cause, Exhibit "A," ¶¶7.*

5.  During the search, "DANO" displayed alert behavior followed by indication, by stopping and staring at the rear driver's side corner of the vehicle. "DANO" then continued to work the odor and squared his body toward the vehicle, where he sat and stared at the area between the driver's side rear door and the wheel well of the vehicle, which is consistent with his training. "DANO" was verbally praised off the area, but refused to leave the area, which completed the search.  *Plaintiff's Complaint, ECF No. 1, ¶¶5, 21, 23; Affidavit of Probable Cause, Exhibit "A," ¶7.*

6.  Thereafter, Corporal Lydon requested a search warrant for the search of Plaintiff's vehicle, which was granted.  *Plaintiff's Complaint, ECF No. 1, ¶5, 39; Affidavit of Probable Cause, Exhibit "A," ¶7.*

7.  Plaintiff was thereafter handcuffed and brought to PSP Fogelsville barracks.  *Plaintiff's Complaint, ECF No. 1, ¶¶31, 33, 37.*

8.  Charges were brought against Plaintiff in connection with illegal substances found in the vehicle and charges were brought in Pennsylvania after his extradition from Virginia terminated, on June 11, 2014.  *Plaintiff's Complaint, ECF No. 1, ¶¶42-44, 70-71.*

9.  On July 18, 2014, Plaintiff posted bail, and on August 27, 2014, Plaintiff waived his preliminary hearing.  *Plaintiff's Complaint, ECF No. 1, ¶¶72-73.*

10. On September 21, 2015, Plaintiff was convicted on all counts.  *Plaintiff's Complaint, ECF No. 1, ¶79.*

11. Plaintiff thereafter filed a Motion for Post-Conviction Collateral Relief, which was

granted on July 2, 2019[1], vacating Plaintiff's charges on the premise that Plaintiff's

right to a speedy trial was violated pursuant to PA.R.Crim.P. 600(A)(3), having

nothing at all to do with the substantive merits of Plaintiff's case or the innocence of

*Plaintiff's Complaint, ECF No. 1, ¶89; Lehigh County Court of Common Pleas*

*Order, dated July 2, 2019, vacating Plaintiff's Charges, Exhibit "B."*

12. On July 9, 2019, Plaintiff was released from State Correctional Institute at Mahoney.

*Plaintiff's Complaint, ECF No. 1, ¶90.*

## III.    LEGAL STANDARDS

### A.  Applicable standard

Under Rule 12(b)(6), "[t]o survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic  Corp v Twombly*, 550 U.S. 544,

570 (2007)).

The *Iqbal* Court elucidated the two tenets with which the Court may evaluate the

sufficiency of a complaint.  First, although the court must accept as true all of the allegations

contained in a complaint, legal conclusions are not included in this lens.  *Id*. at 678.  To the

contrary, "[t]hreadbare recitals of the elements of a cause of action, supported by mere

conclusory statements do not suffice."  Explaining this departure from the "hypertechnical, code-

pleading regime of a prior era," the *Iqbal* Court reasoned that pleadings are not intended to

---

[1] Plaintiff alleges that the vacating Order came on July 8, 2019; however, the date of Order is
marked July 2, 2019.  *Lehigh County Court of Common Pleas Order, dated July 2, 2019, vacating Plaintiff's
Charges, Exhibit "A."*

unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79.

Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679 (citing *Twombly* at 556). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 *See also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n. 27 (3d Cir.2010). Although the plausibility standard "does not impose a probability requirement," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007), it does require a pleading to show "more than a sheer possibility that a defendant has acted unlawfully," *Iqbal*, 556 U.S. at 678. A complaint that pleads facts "merely consistent with a defendant's liability ... stops short of the line between possibility and plausibility of entitlement to relief." *Id.* The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

In the *Iqbal* matter, the Court used this two-prong approach, first analyzing the allegations in the complaint not entitled to the assumption of truth, namely that "petitioners 'knew of, condoned, and willfully and maliciously agreed to subject [him]' to harsh conditions of confinement…solely on account of [his] religion, race, and/or national origin…" *Iqbal* at 680. The Court determined that the pleadings amounted to "nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim." *Id.* at 681. Next, the Court considered the factual allegations in respondent's complaint to determine plausibility…"that the 'FBI, under the direction of Defendant Mueller, arrested and detained thousands of Arab Muslim men…as part of its investigation of the events of September 11." The Court reasoned that the allegations did not give rise to a plausible inference, and even if it did, the complaint fell short of showing,

or even intimating, that the petitioners "were purposefully housed detainees…due to their race, religion or national origin."  *Id*. at 681 and 683.  The Court instructed that the complaint would need to allege "more by factual content to 'nudge' his claim of purposeful discrimination 'across the line from conceivable to plausible."  *Id*. at 683 (citing *Twombly*, 550 U.S., at 570).

In considering a motion to dismiss a pro se complaint, a court must bear in mind that pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers. *See Dickerson v. New Jersey Inst. of Tech.,* 2019 WL 6032378, at *4 (D.N.J. Nov. 14, 2019) (citing *Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004). This more liberal construction of pro se complaints does not, however, absolve a pro se plaintiff of the need to adhere to the Federal Rules of Civil Procedure. See, e.g., *Fantone v. Latini*, 780 F.3d 184, 193 (3d Cir. 2015) ("a pro se complaint ... must be held to 'less stringent standards than formal pleadings drafted by lawyers;' ... but we nonetheless review the pleading to ensure that it has 'sufficient factual matter; accepted as true; to state a claim to relief that is plausible on [its] face.' "); *Badger v. City of Phila. Office of Prop. Assessment*, 563 F. App'x 152, 154 (3d Cir. 2014) ("Complaints filed pro se are construed liberally, but even a pro se complaint must state a plausible claim for relief.").

### 1. **Third Circuit Permits A Statute of Limitations Defense To Be Raised In 12(b)(6) Motion**

Technically, the Federal Rules of Civil Procedure require a defendant to plead an affirmative defense, like a statute of limitations defense, in the answer, not in a motion to dismiss. *Robinson v. Johnson,* 313 F.3d 128, 134–35 (3d Cir.2002). In this circuit, however, a limitations defense is permitted to be raised by a motion under Rule 12(b)(6) "only if 'the time alleged in the statement of a claim shows that the cause of action has not been brought

within the statute of limitations.' " *Id.* (quoting *Hanna v. U.S. Veterans' Admin. Hosp.,* 514 F.2d 1092, 1094 (3d Cir.1975)).

In the instant matter and in the claims that follow, Plaintiff's Complaint is deficient on its face because it is beyond the statute of limitations and, therefore, fails to state a claim against Commonwealth Defendants. Accordingly, Commonwealth Defendants request that Your Honor dismiss Plaintiff's Complaint with prejudice.

### B.  Documents to Consider in Motion to Dismiss

Generally, in ruling on a motion to dismiss, a district court relies on the complaint, attached exhibits, and matters of public record. *Pension Benefit Guar. Corp. v. White Consol. Industries, Inc.,* 998 F.2d 1192, 1196 (3d Cir.1993).   Judicial proceedings constitute public records and courts may take judicial notice of another court's opinions.  *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007) (citing *Southern Cross Overseas Agencies v. Wah Kwong Shipping Group Ltd.,* 181 F.3d 410, 426 (3d Cir.1999); s*ee also Burlington Coat Factory,* 114 F.3d at 1426 (courts can consider documents "integral to or explicitly relied upon in the complaint" (quoting *Shaw v. Digital Equip. Corp.,* 82 F.3d 1194, 1220 (1st Cir.1996))) (emphasis omitted).  Under Third Circuit law, the Court can and should consider the Affidavit for Probable Cause, Search Warrant, and Lehigh County Court of Common Pleas Order Vacating Verdict, dated July 2, 2019 because they are referenced and incorporated into Plaintiff's Complaint.  *Plaintiff's Complaint, ECF No. 1, ¶¶38-41, 89*; *accord A.P. v. Medina*, 779 Fed.Appx. 840, 841-42 (3d Cir. 2019) (affirming grant of motion to dismiss that considered the defendant's "detailed reports and updates about her investigation" that were "[i]ntegral to" and cited in the complaint).  Notably, the Affidavit of Probable Cause, Search Warrant and Order do not contradict a fact pled in the Complaint, but rather provide context of the traffic stop,

search and arrest of Plaintiff in February 2013.  *Affidavit of Probable Cause, Exhibit "A;"*

*Lehigh County Court of Common Pleas Order, dated July 2, 2019, vacating Plaintiff's Charges,*

*Exhibit "B."*

## IV.    ARGUMENT

### A.  Plaintiff's Claims Are Time-Barred By The Statute of Limitations

#### 1.  Constitutional Claims Barred By Statute of Limitations

While state law governs the applicable statute of limitations, federal law controls the issue

of when a § 1983 claim accrues. *Wallace v. Kato,* 549 U.S. 384, 388 (2007). Because §

1983 provides no independent statute of limitations, federal courts look to the most analogous

limitations period of the forum state. *Dique v. New Jersey State Police*, 603 F.3d 181, 185 (3d Cir.

2010) (citing *Wallace,* 549 U.S. at 387). The United States Court of Appeals for the Third Circuit

has determined that the Pennsylvania state law claim most analogous to a § 1983 claim is a

personal injury action, which is subject to the Commonwealth's two-

year statute of limitations under 42 Pa. Cons. Stat. Ann.§ 5524. *Sameric Corp. of Delaware, Inc.

v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998); *Kost v. Kozakiewicz*, 1 F.3d 176, 190 (3d Cir.

1993). Accrual occurs "when the plaintiff has a complete and present cause of action." *Wallace*,

549 U.S. at 388.

##### a.  Unreasonable Search and Seizure Claim Pursuant to Fourth Amendment And Conspiracy Claim Barred By Statute of Limitations

Because the limitations period in a Section 1983 case begins to run from the time the

plaintiff knows or has reason to know of the injury that the Section 1983 claim is based upon,

Plaintiff's claim for an unreasonable search and seizure stemming from the search on February

20, 2013, began to accrue on that date, making his statute of limitations expiration February 20,

2015.  ECF 1, ¶ *Montgomery v. De Simone,* 159 F.3d 120, 126 (3d Cir.1998) (quoting *Gentry v. RTL.* 937 F.2d 899, 919 (3d Cir.1991) (holding that an officer's search of vehicle that occurred on May 2, 2009 began accrual for statute of limitations because plaintiff was present at the search and had knowledge of any injury at that time). Accordingly, Plaintiff's Fourth–Amendment–based Section 1983 claim for unreasonable search and seizure accrued on the same date.

The statute of limitations for civil conspiracy is identical to the statute of limitations for the underlying substantive offense.  *Harry Miller Corp. v. Mancuso Chemicals Limited,* 469 F.Supp.2d 303, 318 (E.D.Pa. 2007) (citing <u>*Ammlung v. City of Chester,*</u> 494 F.2d 811, 814 (3d Cir.1974)).

The instant action was not filed until July 12, 2021—over six years after the limitations period had closed—the illegal search claim and conspiracy claim are, as plaintiff concedes from the face of his Complaint, time-barred by Pennsylvania's Statute of Limitations.

### b.  False Imprisonment Claim Pursuant to Fourteenth Amendment Barred By Statute of Limitations

A Section 1983 claim for false imprisonment accrues at that point in time when the injured party knows or has reason to know of the injury forming the basis of the action, and that point is most usually on the date of the arrest. *See Rose v. Bartle,* 871 F.2d 331, 348 (3d Cir.1989); *Cunnane v. The Honorable Judge Albert Subers, et al.,* Civil No. 92–4844, 1993 WL 21217 (E.D.Pa. January 26, 1993).  Reflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held *pursuant to such process*—when, for example, he is bound over by a magistrate or arraigned on charges. Thereafter, unlawful detention forms part of the damages for the "entirely distinct" tort of malicious prosecution, which remedies detention accompanied, not by absence of legal

process, but by *wrongful institution* of legal process. *Saunders v. McDonald,* N. 3:17-cv-1686, 2018 WL 4171602, *6 (M.D.Pa. June 25, 2018) (holding that the statute of limitations on plaintiff's claim for false arrest/false imprisonment began when he was formally charged on April 25, 2011, and expired on April 25, 2013) (citing *Wallace v. Kato*, 549 U.S. 384, 390 (2007).

In the case at hand, Plaintiff was formally charged on June 11, 2014. *Plaintiff's Complaint, ECF 01, ¶71.* Plaintiff's claim for false imprisonment expired on June 11, 2016, more than five years ago.

### c. Malicious Prosecution Claim Pursuant to Fourteenth Amendment Barred By Statute of Limitations

The elements of an action for malicious prosecution are: (1) the proceedings were brought with malice, (2) there was no probable cause, and (3) the proceedings terminated favorably to the accused. *Sicola v. First National Bank of Altoona, supra; Lynch v. Johnson,* 76 Pa.Cmwlth. Ct. 8 (1983). Until the proceedings are terminated, an accused does not have the right to start a malicious prosecution action. *Cap. v. K-Mart Discount Stores, Inc.,* 515 A.2d 52, 53 (Pa. Super. 1986). It follows, then, that the right of action is not complete until there is a successful vindication in favor of the accused and the statute of limitations for malicious prosecution begins to run on the date the proceedings terminated favorably to the accused. *Id.* *See, Wilkenson v. Ellis,* 484 F.Supp. 1072 (E.D.Pa.1980).

As per Plaintiff's Complaint, Plaintiff's "Judgment of Sentence was vacated" on July 8, 2019. *Plaintiff's Complaint, ECF 1, ¶89.* The Order from Lehigh County Court of Common Pleas, vacating Plaintiff's judgment, was actually dated July 2, 2019; however, for purposes of this Motion, we will use Plaintiff's representation of July 8, 2019, from his Complaint, to grant all inferences in favor of Plaintiff. *Order Vacating Plaintiff's Judgment, dated 7/2/19, Exhibit*

*"B."* Assuming for the purposes of tolling the statute of limitations that the Order constituted a favorable termination, Plaintiff's cause of action would begin to accrue on July 8, 2019. Using the accrual date of July 8, 2019, Plaintiff's statute of limitations for this claim ran on July 8, 2021, and Plaintiff's Complaint, filed on July 12, 2021, falls outside this window and is, therefore, time-barred by the statute of limitations.

### 2. **State Law Claims Barred By Statute of Limitations**

Federal courts apply the relevant state statute of limitations in state law-tort claims. *Travis v. Dashiel*, 832 F.Supp.2d 449, 453 (3d Cir. 2011) (citing *Callwood v. Questel,* 883 F.2d 272, 274 (3d Cir.1989)). Claims for intentional infliction of emotional distress brought in Pennsylvania are governed by the two year limitations period, *see* 42 Pa. Cons.Stat. Ann. § 5524. The time within which a matter must be commenced is calculated from the time the cause of action accrued. *Id.* § 5502. "[A] cause of action accrues when the plaintiff could have first maintained the action to a successful conclusion." *Id.* (citing *Fine v. Checcio,* 870 A.2d 850, 857 (2005)). Normally, the cause of action accrues at the moment the plaintiff is injured. *Id.* (citing *Debiec v. Cabot Corp.,* 352 F.3d 117, 129 (3d Cir.2003)). Here, the incident giving rise to the state-law claim of intentional infliction of emotional distress occurred on February 20, 2013, in connection with a traffic stop that resulted in Plaintiff's arrest on the same date. Plaintiff filed his Complaint on July 12, 2021, over eight and one-half years later, barring this claim as per the statute of limitations, which is two years.

### B. **The Complaint Fails to Allege Plausible Claims Pursuant to 42 U.S.C. § 1983**

It is well settled that "§ 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Bristow v. Clevenger*, 80 F.Supp 2d 421, 429 (M.D. Pa. 2000) (citing *Graham v. Connor*, 490 U.S. 386, 393-94 (1989)). The plaintiff must establish that (1) the defendants deprived him of a right secured by the

Constitution or the laws of the United States; and (2) that defendants were acting under color of

state law in effecting such a deprivation. *Id.* (citing *Groman v. Twp. Of Manalapan*, 47 F.3d 628

(3d Cir. 1990). Section 1983 is not a source of substantive rights and does not provide redress

for common law torts – the plaintiff must allege a violation of a federal right. *Berg v County of*

*Allegheny*, 219 F.3d 261, 268 (3d Cir. 2000) (citing *Baker v McCollan*, 443 U.S. 137, 146

(1979). Plaintiff fails to do that with his allegations that he was subjected to unreasonable search

and seizure, malicious prosecution wrongful conviction, false imprisonment and due process

violations pursuant to 42 U.S.C. §1983 and the Fourth and Fourteenth Amendments.

### 1. Probable Cause Defeats Claim For Unreasonable Search And Seizure, Malicious Prosecution, and False Imprisonment

Under the Fourth Amendment to the United States Constitution, people have the right "to

be secure in their persons, houses, papers, and effects, against unreasonable searches and

seizures, ... and no Warrants shall issue, but upon probable cause." *U.S. Const. amend. IV*. The

Fourth Amendment thus "prohibits a police officer from arresting a citizen except on probable

cause." *Reedy v. Evanson*, 615 F. 3d 197, 211 (3d Cir. 2010) (quoting *Orsatti v. N.J. State*

*Police*, 71 F.3d 480, 482 (3d Cir. 1995)).

To make a valid claim under § 1983 for false imprisonment in violation of the

Fourth Amendment, a plaintiff needs to demonstrate that (1) an arrest occurred, and (2) there was

a lack of probable cause for the arrest. *James v. City of Wilkes-Barre*, 700 F.3d 675, 680 (3d Cir.

2012).

To make a valid claim under § 1983 for malicious prosecution in violation of the Fourth

Amendment, a plaintiff needs to demonstrate that: (1) the defendant initiated a criminal

proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the

proceeding without probable cause; (4) the defendant acted maliciously or for purpose other than

bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent

with the concept of seizure as a consequence of a legal proceeding. *Johnson v. Knorr*, 477 F.3d

75, 82 (3d Cir. 2007) (citing *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003).

      "[P]robable cause to arrest exists when the facts and circumstances within the arresting

officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an

offense has been or is being committed by the person to be arrested." *Estate of Smith v Marasco*,

318 F.3d 497, 514 (3d Cir. 2003) (citing *Orsatti v. New Jersey State Police*, 71 F.3d 480, 482 (3d

Cir.1995)).  "[T]he evidentiary standard for probable cause is significantly lower than the

standard which is required for conviction." *Wright v. City of Philadelphia*, 409 F.3d at 602

(citing *Michigan v. DiFillipo*, 443 U.S. at 36 ("We have made clear that the kinds and degrees of

proof and the procedural requirements necessary for conviction are not prerequisites to a valid

arrest"); *U.S. v. Miknevich*, 638 F.3d 178, 182 (3d Cir. 2011) (probable cause is not proof beyond

a reasonable doubt)).  Indeed, "[p]robable cause does not require the same type of specific

evidence of each element of the offense as would be needed to support a conviction." *Wright v.

City of Philadelphia*, 409 F.3d 602 (citing *Adams v. Williams*, 407 W.U. 143, 149 (1972)).

      Although, generally, "the question of probable cause in a Section 1983 damage suit is one

for the jury," *Montgomery v. De Simone,* 159 F.3d 120, 124 (3d Cir.1998), a district court may

conclude "that probable cause did exist as a matter of law if the evidence, viewed most favorably

to plaintiff, reasonably would not support a contrary factual finding." *Id.* (citing *Sherwood v.

Mulvihill,* 113 F.3d 396, 401 (3d Cir.1997)).  Distilled to its essence, the absence of probable

cause to initiate a criminal proceeding is an essential element of a civil rights claim for false

arrest and malicious prosecution.  *See Basile v. Township of Smith;* 752 F. Supp. 2d at 650-651;

*Watson v. Witmer*, 183 F. Supp. 3d at 612-613.  *See also Kossler v. Crisanti*, 564 F.3d 181, 186

(3d Cir. 2009)(*en banc*). Consequently, such claims necessarily fail if probable cause existed for initiating the criminal proceeding.  See *Michigan v. DiFillipo*, 433 U.S. 31, 36 (1979); *Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988) (proper inquiry is not whether the person arrested actually committed the offense, but rather, whether the arrested officers had probable cause to believe the person had committed the offense).  See *Wright v. City of Philadelphia*, 409 F.3d 595, 602 (3d Cir. 2005) (citing *Johnson v. Campbell*, 332 F.3d 199, 211 (3d Cir. 2003)).  The probable cause standard does not require the arresting officer to resolve conflicting evidence correctly or to have his assessment of the credibility of witnesses prove to be an accurate determination in retrospect, but only mandates that his belief have been reasonable at the time that the arrest was made.  *Wright v. City of Philadelphia*, 409 F.3d at 603.

It is well-settled that probable cause to arrest generally exists when a police officer makes an arrest pursuant to a warrant which meets the requirements of the Fourth Amendment." *Kis v. Cnty. of Schuylkill,* 866 F.Supp. 1462, 1469 (E.D.Pa.1994) (citing *Baker v. McCollan,* 443 U.S. 137, 144, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)). When a probable cause finding was made by a neutral magistrate in connection with a warrant application, a plaintiff must establish "first, that the officer, with at least a reckless disregard for the truth, 'made false statements or omissions that create[d] a falsehood in applying for a warrant,'" and second, "that those assertions or omissions were 'material, or necessary, to the finding of probable cause.'" *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 468-69 (3d Cir. 2016) (quoting *Wilson*, 212 F.3d at 786-87). Omissions are made with reckless disregard only if an officer withholds a fact "in his ken" that any "reasonable person would have known . . . [is] the kind of thing the judge would wish to know." *Dempsey*, 834 F.3d at 470 (quoting *Wilson*, 212 F.3d at 788) (internal quotation marks omitted). Thus, the focus of the court's analysis is the "facts and circumstances within the officer's knowledge" at

the time of the arrest, irrespective of later developments. *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979).

Plaintiff does not dispute that there was a valid traffic stop, prompting Plaintiff to be pulled over by Defendant Lydon on February 20, 2013, confirmed by the Affidavit of Probable Cause. *Plaintiff's Complaint, ECF 1, ¶¶1-2; Affidavit of Probable Cause, Exhibit "A," ¶3.* Thereafter, there became a suspicion of drugs contained in the vehicle, as detailed in the Affidavit of Probable Cause:

> I observed several indicators of criminal activity. He had numerous air fresheners in original packaging on the passenger's seat. There were several more air fresheners hanging from the tum signal lever on the steering column of the vehicle. There was also a bottle of perfume and an open pack of laundry sheets on the passenger seat. I observed 2 cell phones in plain view in the vehicle (1 iPhone and 1 Trac Phone). The phones rang numerous times throughout the course of the stop. I observed a NYC Parking Ticket in the center console that was dated 02/18/13. ! was also able to smell an odor of marijuana emitting from the vehicle despite all the scent masking agents. Through my training and experience I know the above are indicators of the transportation of narcotics.

*Affidavit of Probable Cause, Exhibit "A," ¶5.* This suspicion became heightened with the use of a State Police drug detection canine to search the outside of the vehicle. *Affidavit of Probable Cause, Exhibit "A," ¶7.* Thereafter, a search warrant was sought for the search of the interior of Plaintiff's vehicle, which Plaintiff does not dispute. *Plaintiff's Complaint, ECF 1, ¶38.* Plaintiff's claim that the search warrant "lacked particularity with numerous false and misleading sworn statements" begins and ends there. *Plaintiff's Complaint, ECF 1, ¶38.* Plaintiff did not allege any specific falsehoods or misleading statements. The Affidavit for Probable Cause stated specifically:

> On 02/20/13 at approx. 1410 hours, TFC. Chad LABOUR, Bureau of Emergency & Special Operations, Canine Section, deployed State Police drug detection canine "DANO" to conduct an exterior only search of the vehicle. During the search, "DANO" displayed alert behavior followed by

indication, by stopping and staring at the rear driver's side corner of the vehicle. "DANO" then continued to work the odor and squared his body toward the vehicle, where he sat and stared at the area between the driver's side rear door and the wheel well of the vehicle, which is consistent with his training. "DANO" was verbally praised off the area, but refused to leave the area, which completed the search.

Based on the observed indicators and canine alerting on the vehicle, [Plaintiff's] vehicle was towed by Sacks Towing to PSP Fogelsville Barracks pending approval and service of a search warrant.

*Affidavit of Probable Cause, Exhibit "A," ¶7, 9.*

With the admission of these facts contained in Plaintiff's Complaint, and no allegations to the contrary, probable cause can clearly be established, negating Plaintiff's conclusory allegations of "misleading sworn statements."

### 2. Plaintiff's Underlying Claim Was Not Favorably Terminated On The Merits, Precluding Malicious Prosecution Claim

"The favorable termination element and the probable cause element are distinct requirements that a malicious prosecution plaintiff must satisfy to prevail and therefore should not be conflated." *Kossler v. Crisanti*, 564 F.3d 181, 193 (3d Cir. 2009). District courts need not reach the probable cause element unless they first make a finding of favorable termination after examining whether the proceeding as a whole indicates innocence of the accused with respect to the conduct underlying all of the charges. *Id.* at 194. The Third Circuit has held that a "malicious prosecution claim cannot be predicated on an underlying criminal proceeding which terminated in a manner not indicative of the innocence of the accused." *Kossler* at 187.

The vacating of Plaintiff's judgment is not indicative of Plaintiff's innocence. In a Petition for Post Conviction Collateral Relief, Plaintiff's charges were vacated only on the premise that Plaintiff's right to a speedy trial were violated pursuant to PA.R.Crim.P. 600(A)(3), having nothing at all to do with the substantive merits of Plaintiff's case or the innocence of

Plaintiff.  *Lehigh County Court of Common Pleas Order, dated July 2, 2019, Exhibit "B"; Nash v. Kenney*, 784 Fed.Appx. 54, 57 (3d Cir. 2019) (holding that plaintiff could not maintain a malicious-prosecution claim where his underlying claims were vacated due to the lack of a speedy-trial not because his conviction had been set aside).

### 3.  Plaintiff's Alleged Violations of the Fourteenth Amendment are Precluded by the "Explicit Source" Rule

The United States Supreme Court has held that, "[w]here a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.  *Id.* (citing *Albright v Oliver*, 510 U.S. 266, 273 (1994)).  The "constitutionality of arrests by state officials is governed by the Fourth Amendment rather than due process analysis.  *Berg* at 268 (citing *United States v. Lanier,* 520 U.S. 259, 272 (1997).

In a similar context, the plaintiff in *Rankin v. Smithburger*, 2013 WL 3550894 (W.D.Pa. 2013), brought a substantive due process claim concomitant with certain Fourth Amendment claims, arguing that the defendant's actions also violated her substantive due process rights.  In finding that such claims were barred, the court said:

> This Court recently explained ['the so-called "explicit source rule"'] in *Posey v. Swissvale Borough*, 2:12–CV–955, 2013 WL 989953 (W.D.Pa. Mar.13, 2013):
>
>> In *Albright*, the plurality noted that because the plaintiff alleged he was prosecuted without probable cause, he could only rely on the protections of the Fourth Amendment and not "substantive due process, with its scarce and open-ended guideposts."

*Id.* at *14 (citing *Albright v Oliver*, 510 U.S. 266, 275 (1994); *see also Torres v. McLaughlin*, 163 F.3d 169, 172 (3d Cir. 1998).

*Rankin v. Smithburger*, 2013 WL 3550894, at *11-12. *Cf. Meketa v. Kamoie*, 955 F.Supp.2d 345, 365 (M.D.Pa. 2013) ("where the core of a plaintiff's claim arises from allegations of unlawful arrest, imprisonment, or prosecution, courts are directed to analyze those claims through the prism of the Fourth and not the Fourteenth Amendment").

As in *Albright*, the Fourth Amendment provides Plaintiff with "an explicit textual source of constitutional protection" against unreasonable search and seizure, malicious prosecution and false imprisonment. *See Billups v. Penn State Milton S. Hershey Medical Center*, 2012 WL 1392294, *9 (M.D.Pa. 2012). Thus, Plaintiff cannot also proceed with a substantive due process claim under the Fourteenth Amendment.

### 4. Plaintiff Cannot Sustain A Claim For Conspiracy Because There Is No Underlying Tort

As a preliminary but essential note, if Counts I, II and IV are dismissed, then there can be no conspiracy claim as a matter of law because there will be no predicate tort upon which a conspiracy can be found. *See Muhammad v. Dempsey*, 531 Fed. Appx. 216, 219 (3d Cir. 2013) ("A civil conspiracy claim requires a valid underlying tort claim . . . and § 1983 does not provide an independent cause of action") (citing *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 313 (3d Cir.2003); *Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396, 407 (3d Cir. 2000)); *see also Rink v. Ne. Educ. Intermediate Unit 19*, 717 Fed. Appx. 126, 141 (3d Cir. 2017) ("There can be no civil conspiracy to commit an unlawful act under § 1983 where the plaintiff has not proven a deprivation of a constitutional or federal statutory right or privilege.").

A civil conspiracy, which is an intentional tort, requires an agreement of two or more persons to do an unlawful or criminal act or to do a lawful act by unlawful means or for an unlawful purpose. *Ammlung v. City of Chester*, 494 F.2d 811, 814 (3d Cir. 1974). Put another way, the parties must have a "conspiratorial agreement." *Great Western Mining & Mineral Co. v.*

*Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010). A conspiracy, at its heart, requires showing that the co-conspirators had "a meeting of the minds" to violate the plaintiff's rights. *Mikhail v. Kahn*, 991 F.Supp.2d 596, 645 (E.D. Pa. 2014) (citing *Startzell v. City of Phila.*, 533 F.3d 183, 205 (3d Cir. 2008)) (additional citations omitted).

      In the present case, Count IV of the Complaint alleges a conspiracy to unreasonably search and seize, maliciously prosecute and falsely imprison Plaintiff. Plaintiff cannot proceed with such a claim because: *first*, there is no record evidence that the Commonwealth Defendants acted in concert to unreasonably search and seize, maliciously prosecute or falsely imprison; and, *second*, under Pennsylvania law, "[a] single entity cannot conspire with itself and, similarly, agents of a single entity cannot conspire among themselves." *Grose v. Procter & Gamble Paper Prods.*, 866 A.2d 437, 441 (Pa. Super. Ct. 2005); *see also Shingara v. Skiles,* 274 Fed.Appx. 164, fn 2 (3d Cir. 2008) (holding that "[a]s agents of the State Police, the District Court determined that Defendants could not be liable for civil conspiracy because a single entity cannot conspire with itself.")

      At no point has Plaintiff established or even attempted to establish how, when, and where there was the requisite "meeting of the minds" between Defendants. "To withstand a motion to dismiss, a complaint alleging a civil rights conspiracy should identify with particularity the conduct violating plaintiffs' rights, the time and place of these actions, and the people responsible therefor." *Rosembert v. Borough of East Landsowne*, 14 F.Supp.3d 631, 648 (E.D. Pa. 2014) (citing *DeJohn v. Temple University,* 2006 WL 2623274, at *5 (E.D.Pa. Sept. 11, 2006) (quoting *Boddorff v. Publicker Indus., Inc.,* 488 F.Supp. 1107, 1112 (E.D.Pa.1980)). Specific allegations of an agreement to carry out the alleged chain of events are essential in stating a claim for conspiracy. *Id.* (citing *Spencer v. Steinman,* 968 F.Supp. 1011, 1020 (E.D.Pa.1997)).  It is not

enough that the end result of the parties' independent conduct caused plaintiff harm or even that the alleged perpetrators of the harm acted in conscious parallelism." *Id.*  There is no evidence of any meeting of the minds to achieve the objectives of the alleged conspiracy.

5. **No Personal Involvement Alleged Against Defendants Cpl. Goldsmith, Cpl. Julius, Lt. Emery, Tpr. Konopka**

Plaintiff must aver personal involvement by each defendant in the alleged wrong. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Personal involvement in the alleged wrong "can be shown through allegations of personal direction or of actual knowledge and acquiescence," but "must be made with appropriate *particularity*."  *Simonton*, 437 Fed. Appx. at 62, citing *Rode*, 845 F.2d at 1207.  In the instant matter, Plaintiff has not alleged any claims at all against Cpl. Goldsmith, Cpl. Julius, Lt. Emery, Tpr. Konopka.  With no substantive allegations in the Complaint that allege any conduct that violated Plaintiff's constitutional rights, Cpl. Goldsmith, Cpl. Julius, Lt. Emery, Tpr. Konopka request that this Court dismiss Plaintiff's Complaint against them.

**C.  Qualified Immunity Bars Plaintiff's Constitutional Claims**

Each of the claims in Plaintiff's Complaint involves state officials acting within the scope of their duties to perform a core state investigative and prosecutorial function.  Consequently, the claims together invoke qualified immunity.

The defense of qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *Harlow v.* Fitzgerald, 457 U.S. 800, 818 (1982).  When an officer's actions give rise to a § 1983 claim, the privilege of qualified immunity, in certain circumstances, can serve as a shield from suit. *Wright v. City of* Phila., 409 F.3d at 599-600.  See *Hunter v. Bryant,* 502 U.S. 224, 227, 116 L.Ed.2d 589 (1991). Qualified

immunity requires the Court to consider two issues: (1) whether the plaintiff has shown a violation of a federal right, and (2) whether that right was "clearly established" at the time of the alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The court may consider these issues in any order, and the Plaintiff's failure to establish either element entitles a defendant to immunity from liability and from the burdens of litigation. *Pearson v. Callahan*, 555 U.S. 223, 232-36 (2009).[2]

Under the Supreme Court's repeated guidance, determining whether a right has been clearly established is a two-step process. First, the court must identify the violated right "in light of the specific context of the case, not as a broad general proposition." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)). The right must be identified with a "high degree of specificity" so that it is 'clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *D.C. v. Wesby*, 138 S.Ct. 577, 590 (2018) (quoting *Saucier v. Katz,* 533 U.S. 194, 202, (2001)). Second, once the right has been sufficiently defined, the court must find that the defendant violated a rule of "settled law" based in "then-existing precedent." *Id.* at 589. There does not have to be a case "directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Although there may be rare "obvious cases"

---

[2] Qualified immunity offers an "***immunity from suit*** rather than a mere defense to liability." *Wyatt v. Cole*, 504 U.S. 158, 166 (1992) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)) (emphasis added in *Wyatt*). To that end, it is long established that, once qualified immunity has been asserted, "[u]ntil this threshold immunity question is resolved, discovery should not be allowed." *Harlow v. Fitzgerald*, 475 U.S. 800, 818 (1982); *see also Mitchell*, 472 U.S. at 526 ("[A] defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery.") "The immunity is intended to protect officials from the potential consequences of suit, including distraction from official duties, inhibition of discretionary action, and deterrence of able people from public service." *Thomas v. Independence Twp.*, 463 F.3d 285, 291 (3d Cir. 2006).

where determining the unlawfulness of the official's conduct does not require relevant case law, the court must usually identify a "controlling authority" or "a robust" consensus of cases of persuasive authority" that held other officials to have violated the right under similar circumstances. *Wesby*, 138 S.Ct. at 590.

The privilege of qualified immunity can only be overcome when state officials violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* (citing *Harlow,* 457 U.S. at 818). If no constitutional violation is found, a court need not address whether a reasonable officer would have known he or she was violating a clearly established right. *Id.* at 600. As exhibited above, Commonwealth Defendants are entitled to qualified immunity because Plaintiff fails to establish the elements of his claims, beyond mere legal conclusion, for unreasonable search and seizure, malicious prosecution, and false imprisonment or conspiracy, without the requisite degree of probable cause, and further fails to show the violation of any clearly established right. Because there is no constitutional violation, the qualified immunity inquiry concludes at the first step. *Haefner v. City of Phila.*, 2005 WL 525404, at *2 (E.D. Pa. Mar. 4, 2005).

### D. Sovereign Immunity Bars Plaintiff's State Law Claims

Under Pennsylvania law, "the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity." 1 Pa.C.S. §2310. Liability may not be imposed upon a governmental agency or official where breach of the duty is not coincidental with an exception to immunity. *Wolfe v. Stroudsburg Area Schl. Dist.*, 688 A.2d 1245 (Cmwlth. Ct. 1997); 1 Pa.C.S. §2310.

A claim involving an intentional tort performed by a "Commonwealth party" which

the PSP Defendants are,5 does not fall within any of the exceptions to sovereign immunity.

*Milhoff v. Benson,* No. 09–1679, 2011 WL 1044663,*5 (W.D.Pa. February 24, 2011) (citing

*Faust v. Department of Revenue,* 140 Pa.Cmwlth. 389, 592  (Pa.Cmwlth.1991), *allocatur*

*den.,* 530 Pa. 647, 607 A.2d 257 (1992). Because the PSP Defendants constitute a

"commonwealth party" who are immune from suit unless an exception applies and because

the State tort law claim of intentional infliction of emotional distress constitutes an intentional

tort and there is no exception to immunity for intentional torts, Plaintiff fails to state a claim

upon which relief can be granted as to the PSP Defendants.  *Id.  See, e.g., McGrath v.*

*Johnson,* 67 F.Supp.2d 499, 511 (E.D.Pa.1999) ("In addition, Commonwealth employees are

immune from liability even for intentional torts."), *afd,* 35 F.App'x 357 (3d Cir.2002). Hence, the

intentional infliction of emotional distress claim must be dismissed as to the PSP Defendants.

## V.    CONCLUSION

Based on the foregoing, Commonwealth Defendant respectfully requests that this Court

grant the Commonwealth Defendant's Motion to Dismiss Plaintiff's Complaint, and all claims

against Commonwealth Defendants are dismissed accordingly.

Respectfully submitted,

JOSH SHAPIRO
Attorney General

By:      s/ Sarina Kaplan
Sarina Kaplan
Office of Attorney General          Deputy Attorney General
1600 Arch St., Suite 300            Attorney I.D. No. 209738
Philadelphia, PA 19103
Phone: (267) 768-3964              Karen M. Romano
Fax:     (717) 772-4526            Acting Chief Deputy Attorney General
skaplan@attorneygeneral.gov        Civil Litigation Section

## <u>CERTIFICATE OF SERVICE</u>

I, Sarina M. Kaplan, Deputy Attorney General for the Commonwealth of Pennsylvania, Office of Attorney General, hereby certify that on September 24, 2021, a true and correct copy of the foregoing Motion to Dismiss Plaintiff's Amended Complaint, and memorandum of law in support, has been filed electronically and is available for viewing and downloading from the Court's Electronic Case Filing System. I further certify that a true and correct copy of this document was mailed on September 24, 2021 by first class mail, postage prepaid to:

Antoine Poteat
435 Merchant Walk Square
Suite 300-541
Charlottesville, VA  22902
*Pro Se Plaintiff*

By:    s/ Sarina Kaplan
_____

Sarina Kaplan
Deputy Attorney General
Attorney I.D. No. 209738

Office of Attorney General
1600 Arch St., Suite 300
Philadelphia, PA 19103
Phone: (267) 768-3964
Fax:    (717) 772-4526
skaplan@attorneygeneral.gov

Karen M. Romano
Acting Chief Deputy Attorney General
Civil Litigation Section