UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

| | |
|---|---|
| ANTOINE POTEAT, | : |
|     Plaintiff, | : |
| | : |
| v. | :   No. 5:21-cv-03117 |
| | : |
| GERALD LYDON, *et al.*, | : |
|     Defendants. | : |

_____

**O P I N I O N**
**Defendants' Motions to Dismiss, ECF Nos. 23 and 24 – Granted**

**Joseph F. Leeson, Jr.**                                                                        January 7, 2022
**United States District Judge**

**I.**       **INTRODUCTION**

      This matter involves claims arising under 42 U.S.C. § 1983 brought by pro se Plaintiff Antoine Poteat against more than a dozen Defendants, many of whom are employed by either the Pennsylvania State Police or the Lehigh County District Attorney's Office. Poteat raises claims involving the Fourth and Fourteenth amendments, as well as tort claims for intentional infliction of emotional distress and malicious prosecution. Poteat further alleges that Defendants conspired to violate his rights. Defendants now move to dismiss the Complaint in its entirety.[1]

      Following a review of the Complaint and the Defendants' motions to dismiss, this Court grants both motions and dismisses the Complaint in part with prejudice and in part without prejudice.

---

[1]     Two sets of Defendants each filed separate motions to dismiss. The first motion, ECF No. 23, was filed by Defendants Heather Gallauger, James Martin, Edward Ressler, Joseph Stauffer, and Bethany Zampogna. The second motion, ECF No. 24, was filed by Defendants Gregory Emory, Nicholas Goldsmith, Justin Julius, Brian Konopka, Chad Labour, and Gerald Lydon.

## II.  BACKGROUND

The background is taken, in large part, from allegations in Poteat's Complaint. *See* Compl., ECF No. 1.  On February 20, 2013, Poteat was pulled over by Defendant Gerald Lydon. *See id.* ¶ 1.  During the traffic stop, Lydon alleges that he smelled marijuana coming from Poteat's vehicle. *See id.* ¶ 3.  Thereafter, two officers arrived with a K-9, and they asked Poteat to step out of his vehicle. *See id.* ¶ 5-6.  Poteat alleges that Lydon issued Poteat a warning for the traffic violation and informed Poteat that he was free to leave. *See id.* ¶¶ 8-9.  Thereafter, Poteat alleges that Lydon then asked Poteat if anything illegal was in the vehicle. *See id.* ¶ 10.  Poteat denied having anything illegal in the car and did not consent to a search. *See id.* ¶ 12.  Poteat continued to refuse a search of the vehicle, so the officers walked the K-9 around the vehicle. *See id.* ¶¶ 19-22.  Lydon told Poteat that the K-9 alerted on the vehicle, and Lydon indicated that he would be applying for a search warrant for Poteat's vehicle. *See id.* ¶¶ 23, 26.  Poteat agreed to go to the Pennsylvania State Police barracks where his vehicle would be towed. *See id.* ¶¶ 29-30.  While in the back of the police car, Poteat alleges that he saw one of the officers enter his vehicle and move items from the armrest to the passenger seat. *See id.* ¶¶ 34-35.

Once at the barracks, Lydon applied for a search warrant that was approved by a magistrate judge. *See id.* ¶¶ 38-40.  That evening, Lydon and other officers searched the vehicle and seized two plastic bags of suspected cocaine and two bags of suspected marijuana, among other items. *See id.* ¶¶ 41-44.  As a result, on February 26, 2013, Lydon filed charges against Poteat. *See id.* ¶ 50.  While processing Poteat, Lydon included the extradition code "SSO" or "Surrounding States Only," despite knowing Poteat's address. *See id.* ¶ 51.  Pursuant to an arrest warrant, Poteat was arrested on May 27, 2014 in Maryland. *See id.* ¶ 54.  Poteat was taken into

custody at the Harford County Detention Center and served extradition papers for charges in Virginia. *See id.* ¶ 57. However, Poteat alleges that no detainer nor extradition proceedings were brought by Pennsylvania authorities to bring Poteat to Pennsylvania. *See id.* ¶ 58.

On May 29, 2014, Poteat was extradited to Virginia. *See id.* ¶ 60. While the facts that follow are unclear, it appears from the Complaint that there was disagreement over whether Poteat would be extradited to Pennsylvania for the charges stemming from February 2013. *See id.* ¶¶ 61-68. Eventually, on July 16, 2014, Poteat was extradited to Pennsylvania. *See id.* ¶ 70.

On August 5, 2015, relating to Poteat's Pennsylvania charges, Poteat alleges that Lydon again applied for a search warrant, but Poteat does not indicate what that warrant related to. *See id.* ¶¶ 77-78. On September 21, 2015, Poteat was convicted on all counts in a non-jury trial. *See id.* ¶ 79. On October 10, 2015, Poteat was sentenced to 5-10 years' incarceration. *See id.* ¶ 80. The Pennsylvania Superior Court affirmed his conviction, and Poteat's petitions for Pennsylvania Supreme Court review and United States Supreme Court review were both denied. *See id.* ¶¶ 81-83.

On September 21, 2018, Poteat filed a PCRA petition. *See id.* ¶ 84. On July 8, 2019,[2] the PCRA court determined that the Commonwealth had violated Rule 600 of the Pennsylvania Rules of Criminal Procedure, and accordingly, the PCRA court vacated Poteat's sentence. *See id.* ¶ 89; ECF No. 24-2 at Ex. B. On July 9, 2019, Poteat was released from prison. *See* Compl. ¶ 90.

On July 12, 2021, Poteat filed the instant Complaint, asserting five counts against more than a dozen Defendants. In Count I, Poteat asserts a claim under the Fourth Amendment for

---

[2] The order vacating Poteat's sentence, which Defendants attach to their motion, is dated July 2, 2019. *See* ECF No. 24-2 at Ex. B. However, it is possible that Poteat did not receive notice of this Order under July 8, 2019.

unreasonable search and seizure.  In Count II, Poteat asserts a claim for malicious prosecution.  In Count III, Poteat claims intentional infliction of emotional distress.  In Count IV, Poteat asserts nine claims under the Fourteenth Amendment, including due process, false imprisonment, abuse of process, equal protection of laws, wrongful conviction, negligent training, negligence, rights to liberty, and right to property.  In Count V, Poteat asserts that the Defendants engaged in a conspiracy to interfere with his  civil rights.

On September 20, 2021 a group of named Defendants consisting of Heather Gallauger, Jared Hanna, James Martin, Edward Ressler, Joseph Stauffer, and Bethany Zampogna moved to dismiss Poteat's Complaint.  See ECF No. 23.  On September 24, 2021, another group of named Defendants consisting of Gregory Emory, Nicholas Goldsmith, Justin Julius, Brian Konopka, Chad Labour, and Lydon moved to dismiss Poteat's Complaint.  See ECF No. 24.  Poteat responded to the motions on November 8, 2021.[3]  See Resp., ECF No. 26.

## III.    LEGAL STANDARDS

### A.    Motion to Dismiss – Review of Applicable Law

In rendering a decision on a motion to dismiss, this Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (cleaned up).  Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim.  *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "A

---

[3]    In addition to his response, Poteat filed a request for more time to respond to the motions to dismiss.  See ECF No. 27.  This Court granted that request and provided Poteat until November 29, 2021 to file any supplemental response to the pending motions.  See ECF No. 28.  To date, no supplemental response has been filed.

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).  The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted.  *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

    **B.**    **Statute of Limitations for § 1983 Claims – Review of Applicable Law**

"Claims brought under § 1983 are subject to the state statutes of limitations governing personal injury actions." *See Moore v. Giorla*, 302 F. Supp. 3d 700, 706 (E.D. Pa. 2018) (citing *Garvin v. City of Philadelphia*, 354 F.3d 215, 220 (3d Cir. 2003)).  The Pennsylvania statute of limitations for personal injury actions, which is applicable in the instant case, is two years.  *Id.*

    **C.**    **Malicious Prosecution – Review of Applicable Law**

To state a claim for malicious prosecution, a plaintiff must show:

(1) "the defendants initiated a criminal proceeding;"

(2) the proceeding "ended in plaintiff's favor;"

(3) "the proceeding was initiated without probable cause;"

(4) "the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice;" and

(5) "the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding."

*Malcomb v. McKean*, 535 F. App'x 184, 186 (3d Cir. 2013) (quoting *Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009)).

### D. Intentional Infliction of Emotional Distress – Review of Applicable Law

"An action for [IIED] requires a plaintiff to show that (1) the conduct is extreme; (2) the conduct is intentional or reckless; (3) the conduct caused emotional distress; and (4) the distress is severe." *Kornegey v. City of Philadelphia*, 299 F. Supp. 3d 675, 683 (E.D. Pa. 2018) (citing, *inter alia*, *Arnold v. City of Philadelphia*, 151 F. Supp. 3d 568, 579 (E.D. Pa. 2015)). "To state a claim for IIED in Pennsylvania, a plaintiff must demonstrate that the defendant's conduct was 'so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized society.'" *Id.* (quoting *McGreevy v. Stroup*, 413 F.3d 359, 371 (3d Cir. 2005)).

### E. 14th Amendment Due Process Claim – Review of Applicable Law

"To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006) (citing *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)).

F.      **Abuse of Process – Review of Applicable Law**

"The common law tort of abuse of process is defined as the perversion of legal process after it has begun 'primarily to accomplish a purpose for which it is not designed.'" *See Ciolli*, 625 F. Supp. 2d at 296 (quoting *Werner v. Plater–Zyberk*, 799 A.2d 776, 785 (Pa. Super. Ct. 2002)). "To state a claim for abuse of process, a plaintiff must allege facts sufficient to show that 'the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed, and (3) harm has been caused to the plaintiff.'" *See EMC Outdoor, LLC v. Stuart*, Civ. A. No. 17-5712, 2018 WL 3208155, at *3 (E.D. Pa. June 28, 2018) (quoting *Naythons v. Stradley, Ronon, Stevens & Young, LLP*, No. 07-4489 (RMB), 2008 WL 1914750, at *3 (E.D. Pa. Apr. 30, 2008)).

The tort is designed to prevent the "use of legal process as a tactical weapon to coerce a desired result that is not the legitimate object of the process." *See id.* (quoting *Al Hamilton Contracting Co. v. Cowder*, 644 A.2d 188, 191 (Pa. Super. Ct. 1994)). A defendant's "bad or malicious intentions" are not enough; "[r]ather there must be an act or threat not authorized by the process, or the process must be used for an illegitimate aim such as extortion, blackmail, or to coerce or compel the plaintiff to take some collateral action." *See id.* (quoting *Al Hamilton Contracting*, 644 A.2d at 192).

G.      **Conspiracy under § 1983 – Review of Applicable Law**

To make out a conspiracy to violate one's civil rights under § 1983, a plaintiff must show "(1) the existence of a conspiracy involving state action; and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy." *See Rosembert v. Borough of East Lansdowne*, 14 F. Supp. 3d 631, 647 (E.D. Pa. 2014) (quoting *Gale v. Storti*, 608 F. Supp. 2d

629, 635 (E.D. Pa. 2009)). "A plaintiff must allege that there was an agreement or meeting of the minds to violate his constitutional rights." *Id.*

### H. False Imprisonment – Review of Applicable Law

"[F]alse imprisonment consists of detention without legal process." *Wallace v. Kato*, 549 U.S. 384, 389 (2007). "[A] false imprisonment ends once the victim becomes held pursuant to such process—when, for example, he is bound over by a magistrate or arraigned on charges." *See id.* "Thereafter, unlawful detention forms part of the damages for the 'entirely distinct' tort of malicious prosecution." *See id.* Accordingly, the statute of limitations for a false imprisonment claim runs from the date that legal process is initiated against the detained, not the date of ultimate release from custody. *See id.*

## IV. ANALYSIS

### A. Statute of Limitations

Defendants first argue that all of Poteat's claims are barred by the statute of limitations. As noted above, a plaintiff in this state has two years from the date of accrual to bring his § 1983 claims. Defendants note that the most recent accrual event alleged, namely Poteat's release from prison, occurred on July 9, 2019. Poteat's Complaint was given a file date of July 12, 2021. However, Poteat signed and dated the Complaint July 7, 2021. Accordingly, in light of the mail delays and changes to the filing procedures that resulted from the COVID-19 pandemic, this Court affords Poteat the benefit of the doubt and reviews his claims on the merits to the extent that they are based on the ultimate vacation of his sentence and his release from prison.

Notwithstanding, Poteat's Fourth Amendment claim, Count I, and false imprisonment claim, part of Count IV, are time barred. In Count I, Poteat alleges claims of unreasonable search and seizure. Poteat alleges two separate searches: one that occurred in February of 2013

and another that occurred in September of 2015.  Accordingly, regardless of which search forms the basis for this claim, the two-year limitations period expired well before Poteat filed the instant Complaint.  Therefore, Count I is dismissed with prejudice.  Additionally, Poteat's false imprisonment claim, which is part of Count IV, is also time barred.  To the extent Poteat's detention constituted a false imprisonment, the claim ultimately accrued on the date that legal process was brought against Poteat.[4]  *See Wallace*, 549 U.S. at 389.  From Poteat's allegations, it appears that the most recent arraignment occurred sometime during the summer months of 2014.  Accordingly, the two-year statute of limitations on this claim had long run by the time Poteat filed the instant Complaint.  Accordingly, Poteat's false imprisonment claim in Count IV is dismissed with prejudice.

### B.   Malicious Prosecution (Count II)

In Count II, Poteat asserts a claim for malicious prosecution.  In order to state a claim for malicious prosecution, among other elements, a plaintiff must show that the underlying proceedings terminated in his favor.  *Malcomb*, 535 F. App'x at 186 (3d Cir. 2013) (quoting *Kossler*, 564 F.3d at 186).  The Third Circuit has held that "a prior criminal case must have been disposed of in a way that indicates the innocence of the accused in order to satisfy the favorable termination element."  *See Kossler*, 564 F.3d at 186 (citing *Donahue v. Gavin*, 280 F.3d 371, 383 (3d Cir. 2002)).  Significantly, "the eventual dismissal of [a] federal prosecution due to a violation of the Speedy Trial Act does not constitute a favorable termination in that the dismissal here does not reflect the merits of the underlying criminal charges, only a violation of statutory

---

[4]   As *Wallace* instructs, once the imprisoned individual is arraigned, any unlawful detention is challengeable through a claim for malicious prosecution, which Poteat does raise and which this Court addresses below.  *See Wallace*, 549 U.S. at 389

procedural requirements." *See Noble v. City of Erie*, 1:18-cv-06, 2021 WL 3609987, at *5 (W.D. Pa. July 15, 2021) (citing *Cordova v. City of Albuquerque*, 816 F.3d 645, 652 (10th Cir. 2016)).

Here, Poteat's proceedings terminated via an order from the PCRA court vacating his sentence. In that order, the presiding judge indicated that the basis for vacating the sentence was the government's violation of Rule 600 of the Pennsylvania Rules of Criminal Procedure. *See* ECF No. 24-2. Rule 600 governs a defendant's right to a speedy trial in Pennsylvania. Accordingly, Poteat's criminal prosecution was terminated on the basis of a speedy trial violation. Like *Noble*, this termination does not indicate Poteat's innocence; rather, it represents a dismissal based on a procedural violation. *See id.* at *5. Poteat has failed to otherwise allege that the proceedings terminated in a manner that would indicate his innocence, and for that reason, he has failed to state a claim for malicious prosecution. Therefore, Count II is dismissed without prejudice.[5]

### C. Intentional Infliction of Emotional Distress (Count III)

In order to state a claim for IIED, Poteat must allege (1) extreme conduct, (2) that is intentional or reckless, and (3) that causes severe emotional distress. *See Kornegey*, 299 F. Supp. 3d at 683 (citing, *inter alia*, *Arnold*, 151 F. Supp. 3d at 579). Here, Poteat merely alleges that the Defendants acted in a manner that was "malicious and shocking to the conscience." *See* Compl. ¶ 108. The mere recitation of IIED elements is insufficient to state a plausible claim for the same. Poteat fails to indicate what conduct was extreme or how any severe emotional distress

---

[5] In Count IV, Poteat asserts a claim of "wrongful conviction." However, Poteat does not include any allegations to support this claim or to otherwise differentiate it from his malicious prosecution claim. In the absence of any allegations to independently support this claim, this Court treats the wrongful conviction claim as duplicative of Poteat's malicious prosecution claim. Accordingly, the wrongful conviction claim of Count IV is dismissed without prejudice.

manifested as a result of that conduct. Accordingly, Poteat's claim for IIED, Count III, is dismissed without prejudice.

**D.     Fourteenth Amendment Claims (Count IV)**

In Count IV of his Complaint, Poteat lists nine separate claims that he wishes to bring under the Fourteenth Amendment. However, the only novel allegation in Count IV states that "[a]ll said name[d] Defendants above violated clearly established federal and state rights under color of law." *See* Compl. ¶ 110. Despite the lack of supportive allegations, this Court interprets the claims liberally and addresses them in turn below.

**1.     Due Process**

Poteat asserts a claim for violation of due process. Notwithstanding, Poteat does not allege what process he was denied during the underlying proceedings. Construing his Complaint in the most liberal fashion, it is possible that Poteat wishes to claim that the speedy trial violation constitutes a due process violation. However, to the extent that is the crux of Poteat's claim, he has failed to sufficiently plead an actionable claim.

"In procedural due process claims, . . . "[t]he constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process." *Zinermon v. Burch*, 494 U.S. 113, 126 (1990). Here, Poteat's allegations indicate that he was provided an opportunity to be heard regarding the speedy trial violation. *See* Compl. ¶ 89. Significantly, Poteat alleges that the PCRA Judge vacated his sentence on July 8, 2019, and Poteat was released from custody on July 9, 2019. *See id.* ¶¶ 89-90. Accordingly, Poteat was provided both process and a remedy for the speedy trial violation. Thus, because the state had not deprived Poteat of due process for the speedy trial violation, the claim is not yet actionable as pleaded, and it is dismissed without prejudice.

### 2. Abuse of Process

In order to state a claim for abuse of process, Poteat must allege that the Defendants used a legal process against him, to accomplish an improper purpose, that resulted in harm to Poteat. *See EMC Outdoor, LLC*, 2018 WL 3208155, at *3. Here, however, Poteat does not allege what process Defendants used or how that use was improper. Rather, "abuse of process" is merely listed among eight other claims in Count IV, and no elaboration is provided for this specific claim. Accordingly, in the absence of any allegations as to what process the Defendants abused, Poteat has failed to state a claim, and this claim is dismissed without prejudice.

### 3. Remaining Fourteenth Amendment Claims

In addition to those claims already addressed from Count IV, Poteat lists several other claims, including negligent training, negligence, rights to liberty, rights to property and equal protection of the law. Poteat does not allege any facts to support these claims. Instead, Poteat simply lists these causes of action and states that "[a]ll said name[d] Defendants above violated clearly established federal and state rights under color of law." *See* Compl. ¶ 110. Even under the most liberal construction of Poteat's Complaint, he fails to set forth any allegations that support any of these remaining causes of action. Accordingly, these remaining claims in Count IV are dismissed without prejudice.

### E. Conspiracy to Interfere with Civil Rights (Count V)

Finally, Poteat asserts that the Defendants conspired to interfere with his civil rights. Notwithstanding, this claim fails for two reasons. First, Poteat has failed to state a claim with respect to any of his other claims. Accordingly, there is no surviving underlying claim upon which to ground a claim of conspiracy. Second, even if one of his underlying claims had survived, Poteat does not allege any facts that would indicate that the Defendants conspired with

one another to achieve a joint purpose. Importantly, Poteat does not allege any meeting of the minds or agreement between the several named Defendants to violate Poteat's rights. Accordingly, Count IV is dismissed without prejudice.

## V.     CONCLUSION

Following a review of his pro se Complaint, Poteat's Fourth Amendment claim in Count I and false imprisonment claim in Count IV are time barred, and accordingly, they are dismissed with prejudice. The remaining claims in Counts II through V are insufficiently pleaded. Accordingly, those claims are dismissed without prejudice. As to Counts II through V, this Court cannot say at this time whether amendment would be inequitable or futile. *See Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). Therefore, Poteat is granted leave to file an amended complaint only as to those Counts dismissed without prejudice.

A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge