IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____
                                     :

ANTOINE POTEAT,                      :

                                       :

        Plaintiff,                :          CIVIL ACTION

                                         :

        v.                      :          No. 21-cv-3117

                                         :

GERALD LYDON, *et al.*,            :

                                         :

        Defendants.             :
_____

**ORDER**

AND NOW, this ___ day of _____, 2022, upon consideration of the Cpl. Lydon, Cpl. Labour, Cpl. Goldsmith, Cpl. Julius, Lt. Emery, Tpr. Konopka (hereinafter "Commonwealth Defendants"), Motion to Dismiss Plaintiff's Amended Complaint, it is ORDERED and DECREED that the Motion is GRANTED. All claims against Commonwealth Defendants are hereby DISMISSED with prejudice.

BY THE COURT:

_____
Joseph F. Leeson, Jr., J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| ANTOINE POTEAT, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | No. 21-cv-3117 |
| | : | |
| GERALD LYDON, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## COMMONWEALTH DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Defendants Cpl. Lydon, Cpl. Labour, Cpl. Goldsmith, Cpl. Julius, Lt. Emery, Tpr. Konopka (hereinafter "Commonwealth Defendants"), move the Court, pursuant to Federal Rules of Civil Procedure 12(b)(6), to dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for the reasons contained in the attached Memorandum of Law.

Respectfully submitted,

JOSH SHAPIRO
Attorney General

By:      s/ Sarina Kaplan
_____

Sarina Kaplan
Deputy Attorney General
Attorney I.D. No. 209738

Office of Attorney General
1600 Arch St., Suite 300
Philadelphia, PA 19103
Phone: (267) 689-3964
Fax:    (717) 772-4526
skaplan@attorneygeneral.gov

Karen M. Romano
Acting Chief Deputy Attorney General
Civil Litigation Section

Date:  March 22, 2022

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____
                              :

ANTOINE POTEAT,                :
                              :

     Plaintiff,           :          CIVIL ACTION
                              :

     v.                  :          No. 21-cv-3117
                              :

GERALD LYDON, *et al.*,     :
                              :

     Defendants.      :
_____

### MEMORANDUM OF LAW IN SUPPORT OF COMMONWEALTH DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Defendants Cpl. Lydon, Cpl. Labour, Cpl. Goldsmith, Cpl. Julius, Lt. Emery, Tpr. Konopka (hereinafter "Commonwealth Defendants"), by counsel, respectfully submit this Memorandum of Law in Support of his Motion to Dismiss Plaintiff's Amended Complaint ("Motion").

## I.      INTRODUCTION

Plaintiff renews his allegations of civil rights violations and state-law claims against Cpl. Lydon, Cpl. Labour, Cpl. Goldsmith, Cpl. Julius, Lt. Emery, Tpr. Konopka (hereinafter "Commonwealth Defendants") stemming from his arrest on February 20, 2013, in this late-filed Amended Complaint, and adds new claims that contain the same deficiencies contained in Plaintiff's now-dismissed original Complaint. Plaintiff's constitutional and state law claims continue to fail to state a cause of action and Plaintiff's Amended Complaint should be dismissed accordingly.

## II.    RELEVANT FACTUAL ALLEGATIONS

1.  On February 20, 2013, Defendant Corporal Lydon, acting in his capacity as a Trooper for the Pennsylvania State Police, pulled Plaintiff over for a routine traffic offense. *Plaintiff's Amd. Complaint, ECF No. 39, ¶7; Affidavit of Probable Cause, ECF No. 24-1, ¶¶1, 3, 4.*

2.  Upon approaching Plaintiff's vehicle, Cpl. Lydon made the following observations:

    > While speaking to [Plaintiff] I smelled an odor of marijuana coming from the vehicle. I also observed multiple air fresheners and dryer sheets throughout the vehicle. Through my training and experience these indicators are often· used as a masking agent to facilitate the transportation of narcotics. I also observed multiple cellular phones in the vehicle. During the course of the traffic stop, [Plaintiff] received multiple cellular phone calls. A NYC Parking Authority citation was observed in plain view. When asked about the ticket he advised he lent his friend the vehicle and he received the ticket. The ticket was dated 02/19/13. An NCIC check of the [Plaintiff's] criminal history showed two prior drug arrests in Virginia including simple possession of marijuana and possession of marijuana with intent to deliver.

    *Plaintiff's Amd. Complaint, ECF No. 39, ¶7; Affidavit of Probable Cause, ECF No. 24-1, ¶5.*

3.  Cpl. Lydon asked Plaintiff whether he could search Plaintiff's vehicle to which Plaintiff did not grant permission.  *Plaintiff's Amd. Complaint, ECF No. 39, ¶7; Affidavit of Probable Cause, ECF No. 24-1, ¶6.*

4.  Cpl. Lydon called for backup and Defendant Corporal Labour of the Bureau of Emergency & Special Operations, Canine Section arrived on the scene to deploy State Police drug detection canine "DANO" to conduct an exterior only search of the vehicle.

*Plaintiff's Amd. Complaint, ECF No. 39, ¶7; Affidavit of Probable Cause, ECF No. 24-1, ¶7.*

5. During the search, "DANO" displayed alert behavior followed by indication, by stopping and staring at the rear driver's side corner of the vehicle. "DANO" then continued to work the odor and squared his body toward the vehicle, where he sat and stared at the area between the driver's side rear door and the wheel well of the vehicle, which is consistent with his training. "DANO" was verbally praised off the area, but refused to leave the area, which completed the search. *Plaintiff's Amd. Complaint, ECF No. 39, ¶7; Affidavit of Probable Cause, ECF No. 24-1, ¶7.*

6. Thereafter, Corporal Lydon requested a search warrant for the search of Plaintiff's vehicle, which was granted. *Plaintiff's Amd. Complaint, ECF No. 39, ¶8; Affidavit of Probable Cause, ECF No. 24-1, ¶7.*

7. Plaintiff's vehicle was searched and officers' seized two plastic bags of suspected cocaine and two bags of suspected marijuana. *Plaintiff's Amd. Complaint, ECF No. 39, ¶8.*

8. On February 26, 2013, charges were brought against Plaintiff in connection with illegal substances found in his vehicle. *Plaintiff's Amd. Complaint, ECF No. 39, ¶8.*

9. On May 27, 2017, Plaintiff was arrested in Maryland. *Plaintiff's Amd. Complaint, ECF No. 39, ¶8.*

10. Plaintiff was taken into custody at Harford County Detention Center and, on May 29, 2014, was extradited to Virginia. *Plaintiff's Amd. Complaint, ECF No. 39, ¶9.*

11. On July 16, 2014, Plaintiff was extradited to Pennsylvania and, on September 21, 2015, Plaintiff was convicted on all counts and sentenced to 5-10 years in prison. *Plaintiff's Amd. Complaint, ECF No. 39, ¶10.*

12. Plaintiff alleges that the Motion for Post-Conviction Collateral Relief was decided on July 8, 2019; however, he refers to the Order granting this relief, which is dated July 2, 2019. *Plaintiff's Amd. Complaint, ECF No. 39, ¶11; Lehigh County Court of Common Pleas Order, dated July 2, 2019, vacating Plaintiff's Charges, ECF No. 24-2.*

13. The Order, dated July 2, 2019, vacating Plaintiff's charges, was based upon the premise that Plaintiff's right to a speedy trial was violated pursuant to PA.R.Crim.P. 600(A)(3), having nothing at all to do with the substantive merits of Plaintiff's case or the innocence of Plaintiff. *Plaintiff's Amd. Complaint, ECF No. 39, ¶11; Lehigh County Court of Common Pleas Order, dated July 2, 2019, vacating Plaintiff's Charges, ECF No. 24-2.*

14. On July 9, 2019, Plaintiff was released from prison. *Plaintiff's Amd. Complaint, ECF No. 39, ¶11.*

## III. PROCEDURAL HISTORY

On July 12, 2021, Plaintiff filed a Complaint against Commonwealth Defendants and claims against the Lehigh County District Attorney's Office, along with a Pro Se Notice. *Plaintiff's Complaint and Pros Se Notice, ECF Nos. 1-2.* Plaintiff's originally-filed Complaint contained Counts for violations of his Fourth and Fourteenth Amendment rights, alleging claims of unreasonable search and seizure, abuse of process, false imprisonment, malicious prosecution, intentional infliction of emotional distress and conspiracy, in connection with his arrest on

February 20, 2013.  *Plaintiff's Complaint , ECF No. 1.*  On July 20, 2021, the Court issued an Order permitting Plaintiff to proceed with his Complaint after having paid all filing fees.

On August 23, 2021, counsel for Commonwealth Defendants entered an appearance, *ECF No. 20*, and, on September 24, 2021, Commonwealth Defendants filed a Motion to Dismiss based upon the statute of limitations time-bar of Plaintiff's claims and Plaintiff's failure to state a claim on the merits, for either a federal or state law action.  *ECF No. 24.*

On January 7, 2022, the Court issued an Order granting Commonwealth Defendants' Motion to Dismiss Plaintiff's Complaint, in part with prejudice, and in part without prejudice.  The Court dismissed Plaintiff's claims of Fourth Amendment violations, including unreasonable search and seizure and false imprisonment, with prejudice, after determining that the claims were time-barred.  *ECF No. 29.*  The Court instructed that the remaining claims for malicious prosecution, intentional inflection of emotional distress, due process, and conspiracy were improperly pled and, therefore, dismissed without prejudice.  *ECF No. 29.*

In the Court's Order, dated January 7, 2022, the Court granted Plaintiff until January 20, 2022, to file an amended complaint.  *ECF No. 30.*  On January 19, 2022, Plaintiff filed a First Request for an Extension to File his Amended Complaint.  *ECF No. 31.*  Unopposed, the Court granted this request and permitted Plaintiff until February 10, 2022, to file an amended complaint. *ECF No. 32.*  On February 10, 2022, Plaintiff filed a Second Request for an Extension to File his Amended Complaint.  *ECF No. 33*.  Unopposed, the Court granted this request and permitted Plaintiff until March 3, 2022, to file an amended complaint, but noted that no further extensions would be granted.  *ECF No. 34.*

Plaintiff filed the instant late-filed Amended Complaint on March 8, 2022, well beyond the time granted by the Court, barring Plaintiff's Amended Complaint.

## IV.  LEGAL STANDARDS

### A.  Applicable standard

Under Rule 12(b)(6), "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic  Corp v Twombly*, 550 U.S. 544, 570 (2007)).

The *Iqbal* Court elucidated the two tenets with which the Court may evaluate the sufficiency of a complaint.  First, although the court must accept as true all of the allegations contained in a complaint, legal conclusions are not included in this lens.  *Id*. at 678.  To the contrary, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice."  Explaining this departure from the "hypertechnical, code-pleading regime of a prior era," the *Iqbal* Court reasoned that pleadings are not intended to unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Id.* at 678-79.

Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Id.* at 679 (citing *Twombly* at 556).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 *See also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n. 27 (3d Cir.2010). Although the plausibility standard "does not impose a probability requirement," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007), it does require a pleading to show "more than a sheer possibility that a defendant has acted unlawfully," *Iqbal*, 556 U.S. at 678. A complaint that pleads facts "merely consistent with a defendant's liability ... stops short of the line between possibility and plausibility of entitlement to relief." *Id.*  The

plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

In the *Iqbal* matter, the Court used this two-prong approach, first analyzing the allegations in the complaint not entitled to the assumption of truth, namely that "petitioners 'knew of, condoned, and willfully and maliciously agreed to subject [him]' to harsh conditions of confinement…solely on account of [his] religion, race, and/or national origin…" *Iqbal* at 680. The Court determined that the pleadings amounted to "nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim." *Id.* at 681. Next, the Court considered the factual allegations in respondent's complaint to determine plausibility…"that the 'FBI, under the direction of Defendant Mueller, arrested and detained thousands of Arab Muslim men…as part of its investigation of the events of September 11." The Court reasoned that the allegations did not give rise to a plausible inference, and even if it did, the complaint fell short of showing, or even intimating, that the petitioners "were purposefully housed detainees…due to their race, religion or national origin." *Id.* at 681 and 683. The Court instructed that the complaint would need to allege "more by factual content to 'nudge' his claim of purposeful discrimination 'across the line from conceivable to plausible." *Id.* at 683 (citing *Twombly*, 550 U.S., at 570).

In considering a motion to dismiss a pro se complaint, a court must bear in mind that pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers. *See Dickerson v. New Jersey Inst. of Tech.,* 2019 WL 6032378, at *4 (D.N.J. Nov. 14, 2019) (citing *Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004). This more liberal construction of pro se complaints does not, however, absolve a pro se plaintiff of the need to adhere to the Federal Rules of Civil Procedure. See, e.g., *Fantone v. Latini*, 780 F.3d 184, 193 (3d Cir. 2015) ("a pro se complaint ... must be held to 'less stringent standards than formal pleadings drafted by

lawyers;' ... but we nonetheless review the pleading to ensure that it has 'sufficient factual

matter; accepted as true; to state a claim to relief that is plausible on [its] face.' ''); *Badger v. City

of Phila. Office of Prop. Assessment*, 563 F. App'x 152, 154 (3d Cir. 2014) ("Complaints filed

pro se are construed liberally, but even a pro se complaint must state a plausible claim for

relief.").

## 1. Third Circuit Permits A Statute of Limitations Defense To Be Raised In 12(b)(6) Motion

Technically, the Federal Rules of Civil Procedure require a defendant to plead an

affirmative defense, like a statute of limitations defense, in the answer, not in

a motion to dismiss. *Robinson v. Johnson,* 313 F.3d 128, 134–35 (3d Cir.2002). In this circuit,

however, a limitations defense is permitted to be raised by a motion under Rule 12(b)(6) "only if

'the time alleged in the statement of a claim shows that the cause of action has not been brought

within the statute of limitations.' '' *Id.* (quoting *Hanna v. U.S. Veterans' Admin. Hosp.,* 514 F.2d

1092, 1094 (3d Cir.1975)).

In the instant matter and in the claims that follow, Plaintiff's late-filed Amended Complaint

is deficient on its face because it is beyond the statute of limitations and, therefore, fails to state a

claim against Commonwealth Defendants.  Accordingly, Commonwealth Defendants request that

Your Honor dismiss Plaintiff's Amended Complaint with prejudice.

## B.  Documents to Consider in Motion to Dismiss

Generally, in ruling on a motion to dismiss, a district court relies on the complaint,

attached exhibits, and matters of public record. *Pension Benefit Guar. Corp. v. White Consol.

Industries, Inc.,* 998 F.2d 1192, 1196 (3d Cir.1993).   Judicial proceedings constitute public

records and courts may take judicial notice of another court's opinions.  *Sands v. McCormick*,

502 F.3d 263, 268 (3d Cir. 2007) (citing *Southern Cross Overseas Agencies v. Wah Kwong*

*Shipping Group Ltd.,* 181 F.3d 410, 426 (3d Cir.1999); s*ee also Burlington Coat Factory,* 114 F.3d at 1426 (courts can consider documents "integral to or explicitly relied upon in the complaint" (quoting *Shaw v. Digital Equip. Corp.,* 82 F.3d 1194, 1220 (1st Cir.1996))) (emphasis omitted).  Under Third Circuit law, the Court can and should consider the Affidavit for Probable Cause, Search Warrant, and Lehigh County Court of Common Pleas Order Vacating Verdict, dated July 2, 2019 because they are referenced and incorporated into Plaintiff's Amended Complaint.  *Plaintiff's Amd. Complaint, ECF No. 39, ¶1; A.P. v. Medina*, 779 Fed.Appx. 840, 841-42 (3d Cir. 2019) (affirming grant of motion to dismiss that considered the defendant's "detailed reports and updates about her investigation" that were "[i]ntegral to" and cited in the complaint).  Notably, the Affidavit of Probable Cause, Search Warrant and Order do not contradict a fact pled in the Amended Complaint, but rather provide context of the traffic stop, search and arrest of Plaintiff in February 2013.  *Affidavit of Probable Cause, ECF No. 24-1;  Lehigh County Court of Common Pleas Order, dated July 2, 2019, vacating Plaintiff's Charges, ECF No. 24-2.*

## V.    ARGUMENT

### A.  Plaintiff's Amended Complaint Barred By Order, Dated February 11, 2022

On January 19, 2022, Plaintiff filed a First Request for an Extension to File An Amended Complaint.  *ECF No. 31.*  Unopposed, the Court granted this request and permitted Plaintiff until February 10, 2022, to file an amended complaint.  *ECF No. 32.*  On February 10, 2022, Plaintiff filed a Second Request for an Extension to File An Amended Complaint.  *ECF No. 33.* Unopposed, the Court granted this request on Februrary 11, 2022, and permitted Plaintiff until ***March 3, 2022, to file an amended complaint***, but noted that no further extensions would be granted.  *ECF No. 34.*

Despite having been granted two unopposed motions to extend the time upon which to file an amended complaint, Plaintiff did not file the instant Amended Complaint until March 8, 2022, almost a week beyond the time with which the Court permitted such filing. For these reasons, Plaintiff's Amended Complaint should be dismissed with prejudice.

### B. Plaintiff's New Constitutional Claims Time-Barred By Statute of Limitations

Regardless of Plaintiff's late-filing, Plaintiff's Amended Complaint continues to allege violations of federal law for claims well beyond the statute of limitations. The same arguments in Commonwealth Defendants' Motion to Dismiss, *ECF No. 24*, which follow, are the basis for the dismissal of the instant Amended Complaint.

While state law governs the applicable statute of limitations, federal law controls the issue of when a § 1983 claim accrues. *Wallace v. Kato,* 549 U.S. 384, 388 (2007). Because § 1983 provides no independent statute of limitations, federal courts look to the most analogous limitations period of the forum state. *Dique v. New Jersey State Police*, 603 F.3d 181, 185 (3d Cir. 2010) (citing *Wallace,* 549 U.S. at 387). The United States Court of Appeals for the Third Circuit has determined that the Pennsylvania state law claim most analogous to a § 1983 claim is a personal injury action, which is subject to the Commonwealth's two-year statute of limitations under 42 Pa. Cons. Stat. Ann.§ 5524. *Sameric Corp. of Delaware, Inc. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998); *Kost v. Kozakiewicz*, 1 F.3d 176, 190 (3d Cir. 1993). Accrual occurs "when the plaintiff has a complete and present cause of action." *Wallace*, 549 U.S. at 388.

### 1. Abuse of Process Time-Barred

Although this claim was also contained in Plaintiff's original-filed Complaint, Plaintiff for the first time elaborates the basis upon which he asserts this claim in his Amended

Complaint. However, similar to the now-dismissed claims for false arrest and unreasonable search and seizure, contained in Plaintiff's Complaint, "a Section 1983 claim for abuse of process accrues on the date of arrest because, on that date a plaintiff "would have reason to know of the injury." *Rose v. Bartle,* 871 F.2d 331, 350 (3d Cir. 1989) (citing *Deary v. Three Un-named Police Officers,* 746 F.2d 185, 197 n.16 (3d Cir.1984)).

In Plaintiff's Amended Complaint, Plaintiff states his abuse of process claim in Count IV, which includes: Plaintiff's stop on February 20, 2013 by Commonwealth Defendants; the use of a K-9 dog on February 20, 2013; the search of Plaintiff's vehicle on February 20, 2013; and the prosecution of Plaintiff, which began with charges being filed on February 26, 2013, an arrest on May 17, 2014 in Maryland, an extradition to Pennsylvania on July 16, 2014, and a conviction in Pennsylvania on September 21, 2015. *Plaintiff's Amd. Complaint, ECF No. 39, ¶¶7-9, 50.* Plaintiff did not file his Complaint until July 12, 2021, almost six years after the last of this series of events alleged in Plaintiff's Count IV for "Abuse of Process." These claims are all well beyond the two-year statute of limitations and, for those reasons, Count IV must be dismissed with prejudice.

### 2. Equal Protection Claim Barred By Statute of Limitations

The statute of limitations in a claim such as this one -- where Plaintiff alleges that he was being racially profiled at the time of his traffic stop on February 20, 2013, resulting in a warrant for the search of his car, yielding drugs -- began to run at the time Plaintiff became "detained pursuant to legal process." *Dique v. NJ State Police*, 603 F.3d 181, 188 (3d Cir. 2010) (citing *Wallace v. Kato,* 549 U.S. 384, 397 (2007). In this case, as per Plaintiff's Amended Complaint, charges were brought against Plaintiff on February 26, 2013, beginning the accrual for his action

for alleged racial profiling. *Id.* Plaintiff's Complaint, filed eight-and-one-half years later, on July 12, 2021, are well beyond that time-frame and should be dismissed accordingly.

### 3. Eighth Amendment Deliberate Indifference Against Supervisory Defendants Barred By Statute of Limitations

Plaintiff's claim for deliberate indifference against "supervisory defendants" is barred by the statute of limitations. *Plaintiff's Amd Complaint, ECF No. 39, ¶66.* With Plaintiff's section 1983 claims against "supervisory defendants" accruing "when the plaintiff has 'a complete and present cause of action,' or in other words, when the wrongful act or omission results in damages," Plaintiff cannot now sustain a time-barred action against Commonwealth Defendants. *Dique v. New Jersey State Police,* 603 F.3d 181, 185–86 (3d Cir. 2010) (quoting *Wallace v. Kato,* 549 U.S. 384, 388 (2007)). Plaintiff alleges that the wrongful acts resulting in damages were: the allegedly racially discriminatory stop of Plaintiff, arrest and prosecution. *Plaintiff's Amd Complaint, ECF No. 39, ¶67.* Plaintiff's stop and arrest were in February 2013, and his trial was in September 2015, all of which occurred well beyond the two-year statute of limitations. *Plaintiff's Amd Complaint, ECF No. 39, ¶¶7-10.*

### 4. Wrongful Extradition Barred By Statute of Limitations

Plaintiff's alleged wrongful extradition occurred on July 16, 2014, barring any claims filed beyond July 16, 2016. Plaintiff's Complaint, filed in July 2021, far exceed this scope.

### C. State Law Claims Barred By Statute of Limitations

Regardless of Plaintiff's late-filing, Plaintiff's Amended Complaint does not correct any of the deficiencies contained within his original Complaint. The same arguments in Commonwealth Defendants' Motion to Dismiss, *ECF No. 24*, which follow, are the basis for the dismissal of the instant Amended Complaint.

Federal courts apply the relevant state statute of limitations in state law-tort claims. *Travis v. Dashiel*, 832 F.Supp.2d 449, 453 (3d Cir. 2011) (citing *Callwood v. Questel,* 883 F.2d 272, 274 (3d Cir.1989)).   Claims for intentional infliction of emotional distress brought in Pennsylvania are governed by the two year limitations period, *see* 42 Pa. Cons.Stat. Ann. § 5524.   The time within which a matter must be commenced is calculated from the time the cause of action accrued. *Id.* § 5502. "[A] cause of action accrues when the plaintiff could have first maintained the action to a successful conclusion." *Id.* (citing *Fine v. Checcio,* 870 A.2d 850, 857 (2005)).   Normally, the cause of action accrues at the moment the plaintiff is injured.   *Id.* (citing *Debiec v. Cabot Corp.,* 352 F.3d 117, 129 (3d Cir.2003)).

Plaintiff's Amended Complaint leaves no question that the incidents upon which give rise to Plaintiff's state-law claim of intentional infliction of emotional distress, and failure to intervene, occurred on February 20, 2013, when Plaintiff was pulled over, in connection with a traffic stop, resulting in his subsequent arrest for illegal substances.   Plaintiff's extradition to Pennsylvania occurred on July 16, 2014, and his trial occurred on September 21, 2015.   These dates are also well beyond the two-year statute of limitations, with Plaintiff's Complaint being filed on July 12, 2021, well over two years after Plaintiff's traffic stop, search of his vehicle, and resulting arrest and trial.

### D.  The Amended Complaint Fails to Allege Plausible Claims Pursuant to 42 U.S.C. § 1983

It is well settled that "§ 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Bristow v. Clevenger*, 80 F.Supp 2d 421, 429 (M.D. Pa. 2000) (citing *Graham v. Connor*, 490 U.S. 386, 393-94 (1989)). The plaintiff must establish that (1) the defendants deprived him of a right secured by the Constitution or the laws of the United States; and (2) that defendants were acting under color of

state law in effecting such a deprivation. *Id.* (citing *Groman v. Twp. Of Manalapan*, 47 F.3d 628 (3d Cir. 1990). Section 1983 is not a source of substantive rights and does not provide redress for common law torts – the plaintiff must allege a violation of a federal right. *Berg v County of Allegheny*, 219 F.3d 261, 268 (3d Cir. 2000) (citing *Baker v McCollan*, 443 U.S. 137, 146 (1979). Plaintiff fails to do that with his allegations that he was subjected malicious prosecution and due process violations pursuant to 42 U.S.C. §1983 and the Fourth and Fourteenth Amendments.

    1. **Plaintiff Does Not Sufficiently State a Claim For Malicious Prosecution**

To make a valid claim under **§** 1983 for malicious prosecution in violation of the Fourth Amendment, a plaintiff needs to demonstrate that: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007) (citing *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003).

Plaintiff's Amended Complaint fails to cure the fatal deficiencies contained in his original Complaint and, for those reasons, the same arguments as those made in response to Plaintiff's Complaint, follow.

    a. **Commonwealth Defendants Had Probable Cause To Arrest**

"[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Estate of Smith v Marasco*, 318 F.3d 497, 514 (3d Cir. 2003) (citing *Orsatti v. New Jersey State Police,* 71 F.3d 480, 482 (3d

Cir.1995)). "[T]he evidentiary standard for probable cause is significantly lower than the standard which is required for conviction." *Wright v. City of Philadelphia*, 409 F.3d at 602 (citing *Michigan v. DiFillipo*, 443 U.S. at 36 ("We have made clear that the kinds and degrees of proof and the procedural requirements necessary for conviction are not prerequisites to a valid arrest"); *U.S. v. Miknevich*, 638 F.3d 178, 182 (3d Cir. 2011) (probable cause is not proof beyond a reasonable doubt)). Indeed, "[p]robable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction." *Wright v. City of Philadelphia*, 409 F.3d 602 (citing *Adams v. Williams*, 407 W.U. 143, 149 (1972)).

Although, generally, "the question of probable cause in a Section 1983 damage suit is one for the jury," *Montgomery v. De Simone,* 159 F.3d 120, 124 (3d Cir.1998), a district court may conclude "that probable cause did exist as a matter of law if the evidence, viewed most favorably to plaintiff, reasonably would not support a contrary factual finding." *Id.* (citing *Sherwood v. Mulvihill,* 113 F.3d 396, 401 (3d Cir.1997)). Distilled to its essence, the absence of probable cause to initiate a criminal proceeding is an essential element of a civil rights claim for false arrest and malicious prosecution. *See Basile v. Township of Smith;* 752 F. Supp. 2d at 650-651; *Watson v. Witmer*, 183 F. Supp. 3d at 612-613. *See also Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009)(*en banc*). Consequently, such claims necessarily fail if probable cause existed for initiating the criminal proceeding. See *Michigan v. DiFillipo*, 433 U.S. 31, 36 (1979); *Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988) (proper inquiry is not whether the person arrested actually committed the offense, but rather, whether the arrested officers had probable cause to believe the person had committed the offense). See *Wright v. City of Philadelphia*, 409 F.3d 595, 602 (3d Cir. 2005) (citing *Johnson v. Campbell*, 332 F.3d 199, 211 (3d Cir. 2003)). The probable cause standard does not require the arresting officer to resolve

conflicting evidence correctly or to have his assessment of the credibility of witnesses prove to be an accurate determination in retrospect, but only mandates that his belief have been reasonable at the time that the arrest was made. *Wright v. City of Philadelphia*, 409 F.3d at 603.

It is well-settled that probable cause to arrest generally exists when a police officer makes an arrest pursuant to a warrant which meets the requirements of the Fourth Amendment." *Kis v. Cnty. of Schuylkill,* 866 F.Supp. 1462, 1469 (E.D.Pa.1994) (citing *Baker v. McCollan,* 443 U.S. 137, 144, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)). When a probable cause finding was made by a neutral magistrate in connection with a warrant application, a plaintiff must establish "first, that the officer, with at least a reckless disregard for the truth, 'made false statements or omissions that create[d] a falsehood in applying for a warrant,'" and second, "that those assertions or omissions were 'material, or necessary, to the finding of probable cause.'" *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 468-69 (3d Cir. 2016) (quoting *Wilson*, 212 F.3d at 786-87). Omissions are made with reckless disregard only if an officer withholds a fact "in his ken" that any "reasonable person would have known . . . [is] the kind of thing the judge would wish to know." *Dempsey*, 834 F.3d at 470 (quoting *Wilson*, 212 F.3d at 788) (internal quotation marks omitted). Thus, the focus of the court's analysis is the "facts and circumstances within the officer's knowledge" at the time of the arrest, irrespective of later developments. *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979).

Plaintiff was pulled over for a valid traffic stop by Defendant Lydon on February 20, 2013, confirmed by the Affidavit of Probable Cause. *Plaintiff's Amd. Complaint, ECF 39, ¶¶1-2; Affidavit of Probable Cause, Commonwealth Defendants' Motion to Dismiss, ECF 24-2.* Thereafter, there became a suspicion of drugs contained in the vehicle, as detailed in the Affidavit of Probable Cause:

I observed several indicators of criminal activity. He had numerous air fresheners in original packaging on the passenger's seat. There were several more air fresheners hanging from the turn signal lever on the steering column of the vehicle. There was also a bottle of perfume and an open pack of laundry sheets on the passenger seat. I observed 2 cell phones in plain view in the vehicle (1 iPhone and 1 Trac Phone). The phones rang numerous times throughout the course of the stop. I observed a NYC Parking Ticket in the center console that was dated 02/18/13. ! was also able to smell an odor of marijuana emitting from the vehicle despite all the scent masking agents. Through my training and experience I know the above are indicators of the transportation of narcotics.

*Affidavit of Probable Cause, Commonwealth Defendants' Motion to Dismiss, ECF 24-2, ¶5.*

This suspicion became heightened with the use of a State Police drug detection canine to search the outside of the vehicle. *Id., ¶7.* Thereafter, a search warrant was sought for the search of the interior of Plaintiff's vehicle, which Plaintiff does not dispute. *Plaintiff's Amd. Complaint, ECF 39, ¶7.* The Affidavit for Probable Cause stated specifically:

On 02/20/13 at approx. 1410 hours, TFC. Chad LABOUR, Bureau of Emergency & Special Operations, Canine Section, deployed State Police drug detection canine "DANO" to conduct an exterior only search of the vehicle. During the search, "DANO" displayed alert behavior followed by indication, by stopping and staring at the rear driver's side corner of the vehicle. "DANO" then continued to work the odor and squared his body toward the vehicle, where he sat and stared at the area between the driver's side rear door and the wheel well of the vehicle, which is consistent with his training. "DANO" was verbally praised off the area, but refused to leave the area, which completed the search.

Based on the observed indicators and canine alerting on the vehicle, [Plaintiff's] vehicle was towed by Sacks Towing to PSP Fogelsville Barracks pending approval and service of a search warrant.

*Affidavit of Probable Cause, Commonwealth Defendants' Motion to Dismiss, ECF 24-2, ¶¶7, 9.* With no allegations to the contrary, probable cause can clearly be established.

### b. Plaintiff's Underlying Claim Was Not Favorably Terminated On The Merits, Precluding Malicious Prosecution Claim

"The favorable termination element and the probable cause element are distinct requirements that a malicious prosecution plaintiff must satisfy to prevail and therefore should not be conflated." *Kossler v. Crisanti*, 564 F.3d 181, 193 (3d Cir. 2009). District courts need not reach the probable cause element unless they first make a finding of favorable termination after examining whether the proceeding as a whole indicates innocence of the accused with respect to the conduct underlying all of the charges. *Id.* at 194. The Third Circuit has held that a "malicious prosecution claim cannot be predicated on an underlying criminal proceeding which terminated in a manner not indicative of the innocence of the accused." *Kossler* at 187.

The vacating of Plaintiff's judgment is not indicative of Plaintiff's innocence. In a Petition for Post Conviction Collateral Relief, Plaintiff's charges were vacated only on the premise that Plaintiff's right to a speedy trial were violated pursuant to PA.R.Crim.P. 600(A)(3), having nothing at all to do with the substantive merits of Plaintiff's case or the innocence of Plaintiff. *Lehigh County Court of Common Pleas Order, dated July 2, 2019, Exhibit "B"; Nash v. Kenney*, 784 Fed.Appx. 54, 57 (3d Cir. 2019) (holding that plaintiff could not maintain a malicious-prosecution claim where his underlying claims were vacated due to the lack of a speedy-trial not because his conviction had been set aside).

As a result, Plaintiff cannot sustain the claims alleged in Plaintiff's Amended Complaint, Count I.

## 2. Plaintiff Has Not Sufficiently Plead a Violation of Due Process Rights Under the Fourteenth Amendment pursuant to §1983

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). In order to prevail on a procedural due process claim under 42 U.S.C. § 1983, a plaintiff must show (1) that he possessed a life, liberty, or property interest within the meaning of the Fourteenth Amendment, and (2) that he did not have procedures available to him that would provide him with "due process of law." *Rockledge Dev. Co. v. Wright Township*, 2011 WL 588068, at *2 (M.D.Pa. Feb.10, 2011) (citing *Robb v. City of Philadelphia*, 733 F.2d 286, 292 (3d Cir.1984)). A due process analysis is a two-staged process. *Keeley v. Commonwealth, State Real Estate Commission*, 501 A.2d 1155, 1157 (Pa.Cmwlth.1985).

### a. No Due Process Claim For Alleged Time In Prison

Plaintiff concedes in his Amended Complaint that he was provided an opportunity to be heard regarding his speedy trial violation, which resulted in his release on July 9, 2019; however, alleges that he was not compensated for the amount of time he was "wrongfully incarcerated as a result of the violation." *Plaintiff's Amd. Complaint, ECF 39, ¶¶45-46.* Plaintiff cannot sustain a claim where he has pled that there were procedures available to him, which he took advantage of in the form of a PCRA Petition, filed on September 21, 2018, resulting in Plaintiff's release less than ten months later. *Plaintiff's Amd. Complaint, ECF 39, ¶11.* For these reasons, Plaintiff cannot sustain his claim contained in Count III of his Amended Complaint.

### b. No Due Process Claim For Alleged Deprivation of Personal Property

In order to determine whether an individual has been deprived of his property without due process "it is necessary to ask what process the State provided, and whether it was

constitutionally adequate." *Revell v. Port Authority of New York, New Jersey,* 598 F.3d 128, 138 (3d Cir. 2010) (citing *Zinermon v. Burch,* 494 U.S. 113, 126 (1990). "This inquiry ... examine[s] the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law." *Id.* Although a pre-deprivation hearing is generally required before a state seizes a person's property, "[i]n some circumstances ... the Court has held that a statutory provision for a post-deprivation hearing, or a common-law tort remedy for erroneous deprivation, satisfies due process." *Id.*

The Supreme Court held in *Parratt* that a state tort claim was an adequate remedy for a prisoner aggrieved by prison officials' negligent loss of his property, and in *Hudson* the Court held the same with respect to a prisoner whose property was intentionally destroyed by a prison guard. *Revell, 589 F.3d at 138* (citing *Hudson v. Palmer,* 468 U.S. 517, 533 (1984); *Parratt v. Taylor,* 451 U.S. 527, 543 (1981), *overruled in part on other grounds, Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) (overruling *Parratt* to the extent it suggested that a constitutional injury could be established based on negligence)).

Similar to the Plaintiff in *Revell*, Plaintiff alleges that his personal property, articles of clothing, were never returned to him after the search of his car. *Plaintiff's Amd. Complaint, ECF 39, ¶54. Revell, 589 F.3d at 138.* And, similar to the holding in *Revell*, Plaintiff also cannot prevail on his due process claim where the state's post-deprivation procedures, including state tort remedies, are adequate. *Id.* (citing *Case v. Eslinger,* 555 F.3d 1317, 1331 (11th Cir.2009) ("We have recognized that a civil cause of action for wrongful conversion of personal property under state law is a sufficient post-deprivation remedy when it extends to unauthorized seizures of personal property by state officers." (internal quotations omitted)). For

these reasons, Plaintiff's claim for a deprivation of due process of his personal property, contained in Count V of Plaintiff's Amended Complaint, fails as a matter of law.

### c. No Due Process Claim For Alleged Fabrication of Evidence

Although Plaintiff makes a claim of due process for what he qualifies as a "fabrication of evidence," his claim is premised on his Fourth Amendment claim of malicious prosecution. Courts in the Third Circuit have dismissed procedural due process claims where, as here, "the graveman [sic] of [the plaintiff's] lawsuit is so clearly premised on a ... Fourth Amendment violation." *Morgan v. Borough of Fanwood,* Civil Action No. 11–7513(ES), 2015 WL 4112135, *fn4 (D.N.J. Jul 7,2015); *Wilson v. City of Cherry Hill,* No. 10–3866, 2011 WL 3651274, at *8 n. 12 (D.N.J. Aug.18, 2011) (internal quotation marks omitted); *Regan v. Upper Darby Twp.,* No. 06–1686, 2009 WU 650377, at * * * 15 n. 19 (E.D.Pa. Mar. 11, 2009) (dismissing procedural due process claim because "Plaintiff clearly base[d] her claim on alleged Fourth Amendment violations and arrest without probable cause"); *see also Bostrom v. N.J. Div. of Youth & Family Servs.,* 969 F.Supp.2d 393, 415 (D.N.J.2013) ("Plaintiffs have not alleged that they were deprived [of] a liberty or property interest which is not already addressed by Plaintiffs' ... Fourth Amendment claims. If the court were to find that the Plaintiffs have established a deprivation of liberty on these facts, then all unreasonable searches would constitute procedural due process constitute procedural due process claims. This would be impractical and duplicative."). Similarly, Plaintiff's claim of due process in connection with the alleged misrepresentation also fails as a matter of law. *Morgan v. Borough of Fanwood,* Civil Action No. 11–7513(ES), 2015 WL 4112135, *fn4 (D.N.J. Jul 7,2015). Plaintiff's claim that there were "false pretenses utilized pertaining to the issuance of the search warrant" begins and end there. *Plaintiff's Amd. Complaint, ECF 39, ¶58.* The analysis contained above, in response to

Plaintiff's Count for malicious prosecution, establishes probable cause, which negates Plaintiff's

duplicative claim for "fabrication of evidence" in Count VI of Plaintiff's Amended Complaint.

### d.  No Due Process Violation for Alleged Wrongful Extradition

The Supreme Court denied habeas corpus relief holding that the petitioner's conviction

did not violate the due process clause where petitioner challenged his conviction by a Michigan

court on the ground that he had been "forcibly seized, handcuffed, blackjacked" and taken by

Michigan officers from Illinois to Michigan for trial in violation of the Federal Kidnapping Act.

*Shack v. Attorney General of State of Pennsylvania,* 776 F.2d. 1170, 1172 (3d Cir. 1985) (citing

*Frisbie v. Collins,* 342 U.S. 519 (1951)).  In *Frisbie,* the Court explained:

> This Court has never departed from the rule announced in *Ker v. Illinois,* 119 U.S. 436, 444, 7 S.Ct. 225, 229, 30 L.Ed. 421, that the power of a court to try a person for crime is not impaired by the fact that he had been brought within the court's jurisdiction by reason of a "forcible abduction." No persuasive reasons are now presented to justify overruling this line of cases. They rest on the sound basis that **due process** of law is satisfied when one present in court is convicted of crime after having been fairly apprised of the charges against him and after a fair trial in accordance with constitutional procedural safeguards. There is nothing in the Constitution that requires a court to permit a guilty person rightfully convicted to escape justice because he was brought to trial against his will.

*Shack,* 776 F.2d. at 1172 (citing *Frisbie*, 342 U.S. at 522).

It follows that the existence of a procedural defect in Plaintiff's extradition proceedings

did not impair Pennsylvania's power to try him and that his confinement does not violate due

process. *Shack* 776 F.2d. at 1172 (citing *United States ex rel. Huntt v. Russell,* 285 F.Supp. 765,

767 (E.D.Pa.1968)).  For these reasons, Plaintiff's claim of a violation of due process based upon

wrongful extradition, contained in Count X of Plaintiff's Amended Complaint, fails as a matter

of law.

### 3. Plaintiff Has Not Sufficiently Alleged A Violation of Abuse of Process

The gist of an action for **abuse of process** is the improper use of process after it has been issued, that is, a perversion of it. *Bristow v. Clevenger,* 80 F.Supp.2d 421, 430 (M.D. Pa. 2000) (citing *McGee v. Feege,* 535 A.2d 1023 (1987) (quoting *Publix Drug Co. v. Breyer Ice Cream Co.,* 347 Pa. 346 (1943)) . This can be compared with with malicious prosecution, which has to do with the wrongful initiation of such process, while abuse of civil process is concerned with a perversion of a process after it is issued. *Id.* Thus, "a section 1983 claim for malicious abuse of process lies where 'prosecution is initiated legitimately and thereafter is used for a purpose other than that intended by the law.' " *Id.* at 431 (citing *Rose v. Bartle,* 871 F.2d 331, 350 (3d Cir.1989); *Jennings v. Shuman,* 567 F.2d 1213, 1217 (3d Cir.1977)). "To establish a claim for abuse of process, there must be some proof of a 'definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process.' " *Id.* (citing *Williams v. Fedor,* 69 F.Supp.2d 649, 673 (M.D.Pa.1999) (quoting *Feldman,* No. CIV.A.93–1260, 1993 WL 300136, at *4).

In the instant action, Plaintiff does not allege facts that support a claim for abuse of process. Plaintiff does not allege that the criminal action against him was initiated legitimately and then "perverted." Plaintiff has not produced any evidence that Commonwealth Defendants desired or demanded anything other than the action's authorized conclusion—criminal conviction. "[T]here is no cause of action for abuse of process if the claimant, even with bad intentions, merely carries out the process to its authorized conclusion." *Cameron v. Graphic Management Assoc., Inc.,* 817 F.Supp. 19, 21 (E.D.Pa.1992). Therefore, Plaintiff cannot maintain a claim for abuse of process as alleged in Count IV of Plaintiff's Amended Complaint.

## 4. Eighth Amendment "Supervisory Liability" for Deliberate Indifference and "Failure to Intervene" Fails to State A Claim

### a. "Lumped Together" Claims Against "Supervisory Defendants" Not Enough To Constitute a Constitutional Claim

Generally speaking, "a complaint should not be dismissed 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.' *Agreste v. City of Phila*, 694 F.Supp. 117, 119 (E.D.Pa. 1988) (citing *Conley v. Gibson,* 355 U.S. 41, 45–46 (1957)." However, "[w]hen it comes to complaints arising from civil rights statutes…a higher degree of specificity has been required by the Third Circuit. *Agreste*, 694 F.Supp. at 119-20. "Vague and conclusory allegations in a civil rights complaint will not survive a motion to dismiss." *Agreste*, 694 F.Supp. at 120 (citing *Hall v. Pennsylvania State Police,* 570 F.2d 86, 89 (3d Cir.1978)). Where all defendants are "simply lumped together," a complaint fails to provide an underlying factual basis for the allegations brought against any one of the individual defendants and is not sufficient to state a claim. *Id.* (citing *Shirey v. Bensalem Township,* 501 F.Supp. 1138 (E.D.Pa.1980), *appeal dismissed,* 663 F.2d 472 (3d Cir.1981)).

Plaintiff's Amended Complaint lumps an unknown group of "PSP Supervisors" to assert in Counts VIII (repeated twice) a claim for "supervisory liability" for the deliberate indifference to for "failure to properly train and/or supervise" their subordinates and a claim for "failure to intervene." *Plaintiff's Amd. Complaint, ECF No. 39, ¶¶66-67, 81.* Plaintiff does not allege which PSP Supervisors were supposed to be training or supervising, or which PSP employees they were supposed to be training or supervising. Plaintiff does not allege which defendant had a duty to disclose the alleged lack of probable cause or to what other defendant he was supposed to disclose the information.

Plaintiff's allegations are impermissibly vague, conclusory, and lump defendants together so that it is impossible to tell with specificity which defendants are responsible for which acts." *Agreste*, 694 F.Supp. at 120. Vague and conclusory allegations in a civil rights complaint will not withstand a motion to dismiss. *Agreste*, 694 F.Supp. at 121 (citing *Iseley v. Bucks County,* 549 F.Supp. 160 (E.D. 1982)). In *Negrich v. Hohn,* 379 F.2d 213 (3d Cir.1967), the Third Circuit affirmed the district court's dismissal of a prisoner's action under 42 U.S.C. § 1983 because the complaint had alleged that all defendants—individuals ranging from the warden to a specifically named prison guard—had inflicted such injustices upon the plaintiff as putting him on bread and water for thirty days, repeatedly beating him and forcing him to sign a statement, denying him the right to see his attorney and placing false charges against him. *Agreste*, 694 F.Supp. at 121. The Third Circuit found those allegations to be "broad and conclusory…Its insufficiency lies in its failure to state facts in support of its conclusions. The charges of beatings and cruel and unusual punishment are made against the defendants generally and not against any particular defendant." *Id.*

Plaintiff's allegations contained in Counts VIII (repeated twice) suffer from the same deficiencies as *Agreste* and *Negrich*, and, as such, Plaintiff does not sufficiently state a claim for "supervisory liability" or "failure to intervene."

### b. Claims Of Respondeat Superior Not Enough To Sustain Constitutional Claim

A claim cannot be based on mere *respondeat superior* or vicarious liability. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Plaintiffs "mere restatements of the elements of [a] supervisory liability claim [is] not entitled to the assumption of truth." *Santiago v. Warminster Twp.*, 629 F.3d 121, 132 (3d Cir. 2010). Liability can only be imposed on a supervisor if that official played an "affirmative part" in the complained-of

misconduct. *Chinchello v. Fenton,* 805 F.2d 126, 133 (3d Cir.1986). Although a supervisor cannot encourage constitutional violations, a supervisor has "no affirmative constitutional duty to train, supervise or discipline so as to prevent such conduct." *Beale,* No. 1:13–cv–00015–TFM–SPB (ERIE) at *5 *(quoting Brown v. Grabowski,* 922 F.2d 1097, 1120 (3d Cir.1990)). Plaintiff made no allegation of any affirmative action, aside from failing to train and supervise, which are not constitutional violations, against "PSP Supervisors." *Chinchello v. Fenton,* 805 F.2d 126, 133 (3d Cir.1986) (requiring claims of affirmative conduct). Based upon Plaintiff's lack of any personal involvement alleged against "PSP Supervisors," Plaintiff cannot maintain his claims contained in Count VIII of his Amended Complaint.

### c. Plaintiff's Claim of Failure To Intervene Insufficient To State a Claim

To establish a Fourth Amendment violation for failure to intervene, a plaintiff must establish that: (1) the police officer failed or refused to intervene when a constitutional violation took place in his or her presence or with his or her knowledge; and (2) there was a "realistic and reasonable opportunity to intervene." *Lora-Pena v. Denney*, 760 F.Supp.2d 458 (D.Del. 2011) (citing *Smith v. Mensinger,* 293 F.3d 641, 650–51 (3d Cir.2002); *Fernandez v. Stack,* No. 03–4846(JAP), 2006 WL 777033, at *12 n. 8 (D.N.J. Mar. 27, 2006).

For the same reasons establishing probable cause for Commonwealth Defendants' search of Plaintiff's vehicle, Plaintiff fails to allege that a constitutional violation took place in front of any of the Commonwealth Defendants and his claims contained in Count VIII, fail as a matter of law.

### 5. Plaintiff's Claim of Equal Protection Fails To State A Claim

To make an equal protection claim in the profiling context, Plaintiff is required to prove that the actions of Commonwealth Defendants (1) had a discriminatory effect and (2) were

motivated by a discriminatory purpose. *Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 264–66 (1977) (race discrimination); *Washington v. Davis*, 426 U.S. 229, 239–42 (1976) (race discrimination).  Plaintiff's Complaint is void of any of these allegations.

To allege discriminatory effect, Plaintiff will be required to show that he is a member of a protected class and that he was treated differently from similarly situated individuals in an unprotected class.  *Bradley v. U.S.,* 299 F.3d 197, 206 (3d Cir. 2002) (citing *Chavez v. Illinois State Police*, 251 F.3d 612, 635–36 (7th Cir.2001) (racial profiling) ; *see also United States v. Armstrong,* 517 U.S. 456, 469 (1996); *Andrews v. City of Philadelphia,* 895 F.2d 1469, 1478 (3d Cir.1990).

Plaintiff does not allege that he is a member of a protected class.  Furthermore, Plaintiff has not alleged any claims that Commonwealth Defendants treated him differently from similarly situated members of an unprotected class.  In fact, by Plaintiff's own allegations, Plaintiff was the only person in his situation when he was pulled over on February 20, 2013. Therefore, there is no comparator.

Without having alleged a claim for Equal Protection, Plaintiff cannot sustain this claim contained in Count IX of Plaintiff's Amended Complaint.

### 6. Plaintiff Cannot Sustain A Claim For Conspiracy Because There Is No Underlying Tort and Lacks Specificity

As a preliminary but essential note, if Counts I, III, IV, V, VI, VIII, IX, X are dismissed, then there can be no conspiracy claim as a matter of law because there will be no predicate tort upon which a conspiracy can be found. *See Muhammad v. Dempsey*, 531 Fed. Appx. 216, 219 (3d Cir. 2013) ("A civil conspiracy claim requires a valid underlying tort claim . . . and § 1983 does not provide an independent cause of action") (citing *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 313 (3d Cir.2003); *Boyanowski v. Capital Area Intermediate Unit*,

215 F.3d 396, 407 (3d Cir. 2000)); *see also Rink v. Ne. Educ. Intermediate Unit 19*, 717 Fed. Appx. 126, 141 (3d Cir. 2017) ("There can be no civil conspiracy to commit an unlawful act under § 1983 where the plaintiff has not proven a deprivation of a constitutional or federal statutory right or privilege.").

A civil conspiracy, which is an intentional tort, requires an agreement of two or more persons to do an unlawful or criminal act or to do a lawful act by unlawful means or for an unlawful purpose. *Ammlung v. City of Chester*, 494 F.2d 811, 814 (3d Cir. 1974).  Put another way, the parties must have a "conspiratorial agreement." *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010). A conspiracy, at its heart, requires showing that the co-conspirators had "a meeting of the minds" to violate the plaintiff's rights. *Mikhail v. Kahn*, 991 F.Supp.2d 596, 645 (E.D. Pa. 2014) (citing *Startzell v. City of Phila.*, 533 F.3d 183, 205 (3d Cir. 2008)) (additional citations omitted).

In the present case, Count VII of the Amended Complaint alleges a conspiracy to: search Plaintiff without probable cause; prosecute Plaintiff beyond the time prescribed by Rule 600; and racially profile Plaintiff on February 20, 2013, at the time that he was pulled over.  *Plaintiff's Amd. Complaint, ¶61*.   To begin with, Plaintiff does not identify what Defendants he is referring to or to whom they conspired with.  Because all the defendants are "simply lumped together," Plaintiff's Amended Complaint fails to provide an underlying factual basis for the allegations brought against any one of the individual defendants and is not sufficient to state a claim. *Agreste*, 694 F.Supp. at 119.

Plaintiff's lack of identification of defendants aside, Plaintiff cannot proceed with such a claim because: *first*, there are no allegations, beyond bare legal conclusions, that the Commonwealth Defendants acted in concert to unreasonably search and seize, maliciously

prosecute or racially profile; and, *second*, under Pennsylvania law, "[a] single entity cannot conspire with itself and, similarly, agents of a single entity cannot conspire among themselves." *Grose v. Procter & Gamble Paper Prods.*, 866 A.2d 437, 441 (Pa. Super. Ct. 2005); *see also Shingara v. Skiles,* 274 Fed.Appx. 164, fn 2 (3d Cir. 2008) (holding that "[a]s agents of the State Police, the District Court determined that Defendants could not be liable for civil conspiracy because a single entity cannot conspire with itself.")

Plaintiff has not established, or even attempted to establish, how, when, where – or even who – had a requisite "meeting of the minds" between any of the Commonwealth Defendants. "To withstand a motion to dismiss, a complaint alleging a civil rights conspiracy should identify with particularity the conduct violating plaintiffs' rights, the time and place of these actions, and the people responsible therefor." *Rosembert v. Borough of East Landsowne*, 14 F.Supp.3d 631, 648 (E.D. Pa. 2014) (citing *DeJohn v. Temple University,* 2006 WL 2623274, at *5 (E.D.Pa. Sept. 11, 2006) (quoting *Boddorff v. Publicker Indus., Inc.,* 488 F.Supp. 1107, 1112 (E.D.Pa.1980)). Specific allegations of an agreement to carry out the alleged chain of events are essential in stating a claim for conspiracy. *Id.* (citing *Spencer v. Steinman,* 968 F.Supp. 1011, 1020 (E.D.Pa.1997)). It is not enough that the end result of the parties' independent conduct caused plaintiff harm or even that the alleged perpetrators of the harm acted in conscious parallelism." *Id.*

With no specific allegations regarding a meeting of the minds to achieve the objectives of the alleged conspiracy, or even more basically, whom the conspiracy was between, Plaintiff cannot sufficiently state a claim for Conspiracy as alleged in Count VII of Plaintiff's Amended Complaint.

### 7. Eleventh Amendment Immunity: Official Capacity Claims

To the extent that Plaintiff has sued any of the Commonwealth Defendants in their official capacities, federal courts cannot consider suits by private parties against states and their agencies unless the state has consented to the filing of such a suit. See *Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89 (1984); *Christy v. Pa. Turnpike Comm'n*, 54 F.3d 1140 (3d Cir. 1995), *cert. denied*, 516 U.S. 932 (1995). The Eleventh Amendment bars claims for monetary damages sought against a state official acting in his or her official capacity absent a valid abrogation by Congress or consent of the State. See *Kentucky v. Graham*, 473 U.S. 159,169 (1985) (holding that "absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court"). Congress did not validly abrogate or purport to abrogate the States' sovereign immunity against damages claims under section 1983, and the Commonwealth of Pennsylvania has not waived its Eleventh Amendment immunity. See *Hafer v. Melo*, 502 U.S. 21, 25–27 (1991) (suits against state officials acting in their official capacities are suits against the employing government agency, and as such, are barred by the Eleventh Amendment); 42 Pa. Cons. Stat. Ann. § 8521–22.

Thus, Plaintiff cannot recover monetary damages against Commonwealth Defendants in their official capacities, as such, those claims are barred by the Eleventh Amendment.

### 8. No Personal Involvement Alleged Against Defendants Cpl. Goldsmith, Cpl. Julius, Lt. Emery, Tpr. Konopka

Plaintiff must aver personal involvement by each defendant in the alleged wrong. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Personal involvement in the alleged wrong "can be shown through allegations of personal direction or of actual knowledge and acquiescence," but "must be made with appropriate *particularity*." *Simonton*, 437 Fed. Appx. at 62, citing *Rode*, 845 F.2d at 1207. In the instant matter, Plaintiff has not alleged any claims at all

against Cpl. Goldsmith, Cpl. Julius, Lt. Emery, Tpr. Konopka. With no substantive allegations in the Complaint that allege any conduct that violated Plaintiff's constitutional rights, Cpl. Goldsmith, Cpl. Julius, Lt. Emery, Tpr. Konopka request that this Court dismiss Plaintiff's Amended Complaint against them.

### 9. Qualified Immunity Bars Plaintiff's Constitutional Claims

Each of the claims in Plaintiff's Amended Complaint involves state officials acting within the scope of their duties to perform a core state investigative and prosecutorial function. Consequently, the claims together invoke qualified immunity.

The defense of qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v.* Fitzgerald, 457 U.S. 800, 818 (1982). When an officer's actions give rise to a § 1983 claim, the privilege of qualified immunity, in certain circumstances, can serve as a shield from suit. *Wright v. City of* Phila., 409 F.3d at 599-600. See *Hunter v. Bryant,* 502 U.S. 224, 227, 116 L.Ed.2d 589 (1991). Qualified immunity requires the Court to consider two issues: (1) whether the plaintiff has shown a violation of a federal right, and (2) whether that right was "clearly established" at the time of the alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The court may consider these issues in any order, and the Plaintiff's failure to establish either element entitles a defendant to immunity from liability and from the burdens of litigation. *Pearson v. Callahan*, 555 U.S. 223, 232-36 (2009).[1]

---

[1] Qualified immunity offers an "***immunity from suit*** rather than a mere defense to liability." *Wyatt v. Cole*, 504 U.S. 158, 166 (1992) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)) (emphasis added in *Wyatt*). To that end, it is long established that, once qualified immunity has been asserted, "[u]ntil this threshold immunity question is resolved, discovery should not be allowed." *Harlow v. Fitzgerald*, 475 U.S. 800, 818 (1982); *see also Mitchell*, 472 U.S. at 526 ("[A] defendant pleading qualified immunity is entitled to dismissal before the commencement

Under the Supreme Court's repeated guidance, determining whether a right has been clearly established is a two-step process. First, the court must identify the violated right "in light of the specific context of the case, not as a broad general proposition." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)). The right must be identified with a "high degree of specificity" so that it is 'clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *D.C. v. Wesby*, 138 S.Ct. 577, 590 (2018) (quoting *Saucier v. Katz,* 533 U.S. 194, 202, (2001)). Second, once the right has been sufficiently defined, the court must find that the defendant violated a rule of "settled law" based in "then-existing precedent." *Id.* at 589. There does not have to be a case "directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Although there may be rare "obvious cases" where determining the unlawfulness of the official's conduct does not require relevant case law, the court must usually identify a "controlling authority" or "a robust" consensus of cases of persuasive authority" that held other officials to have violated the right under similar circumstances. *Wesby*, 138 S.Ct. at 590.

The privilege of qualified immunity can only be overcome when state officials violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* (citing *Harlow,* 457 U.S. at 818). If no constitutional violation is found, a court need not address whether a reasonable officer would have known he or she was violating a clearly established right. *Id.* at 600. As exhibited above, Commonwealth Defendants are

---

of discovery.") "The immunity is intended to protect officials from the potential consequences of suit, including distraction from official duties, inhibition of discretionary action, and deterrence of able people from public service." *Thomas v. Independence Twp.*, 463 F.3d 285, 291 (3d Cir. 2006).

entitled to qualified immunity because Plaintiff fails to establish any of the elements of his claims, beyond mere legal conclusion, for malicious prosecution, abuse of process, violation of due process, conspiracy, deliberate indifference, violation of equal protection, or wrongful extradition without the requisite degree of probable cause, and further fails to show the violation of any clearly established right. Because there is no constitutional violation, the qualified immunity inquiry concludes at the first step. *Haefner v. City of Phila.*, 2005 WL 525404, at *2 (E.D. Pa. Mar. 4, 2005).

### E. Plaintiff's Amended Complaint Fails to Allege Plausible Claims For A Violation of State Law

#### 1. Plaintiff Fails To Allege Intentional Infliction of Emotional Distress

To recover for intentional infliction of emotional distress, a plaintiff must demonstrate conduct by a defendant of " 'an extreme and outrageous type.' " *Sloan v. U.S.* 603 F.Supp.2d 798, 806 (E.D.Pa. 2009) (citing *Cox v. Keystone Carbon Co.,* 861 F.2d 390, 395 (3d Cir.1988) (quoting *Rinehimer v. Luzerne County Cmty. Coll.,* 539 A.2d 1298, 1305 (Pa.Super. 1988)); *accord Barclay v. Keystone Shipping Co.,* 128 F.Supp.2d 237, 244 (E.D.Pa.2001). Our Supreme Court has held that " '[t]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.' " *Hoy,* 544 Pa. at 151, 720 A.2d at 754 (quoting *Buczek,* 366 Pa.Super. at 558, 531 A.2d at 1125)).

In connection with these claims, Plaintiff asserts the following alleged conduct as the basis for his claim of intentional infliction of emotional distress: pulling Plaintiff over on February 20, 2013, without valid basis; using a K-9 sniffing dog without valid basis; searching Plaintiff's car pursuant to warrant; prosecution of Plaintiff beyond the time limit prescribed by Rule 600. *Plaintiff's Amd. Complaint, ¶38.*

The action of Commonwealth Defendants carrying out their jobs, which resulted in the recovery of drugs in Plaintiff's vehicle, does not connote atrocious or utterly intolerable behavior. *Sease v. Dobish*, No. 1968 MDA 2011, 2013 WL 11282811, *10 (Pa. Super. Feb.21,2013). Second, Plaintiff alleges no actual physical injury. While Plaintiff vaguely refers to emotional distress in the Amended Complaint, Plaintiff fails to specifically indicate what, if any, harm he actually suffered. *Id.* Plaintiff must provide something more substantial than a vague allegation. *Id.*

For these reasons, Plaintiff's claim of intentional infliction of emotional distress contained in Count II of Plaintiff's Amended Complaint, fail as a matter of law.

### 2. Sovereign Immunity Bars Plaintiff's State Law Claims

Under Pennsylvania law, "the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity." 1 Pa.C.S. §2310. Liability may not be imposed upon a governmental agency or official where breach of the duty is not coincidental with an exception to immunity. *Wolfe v. Stroudsburg Area Schl. Dist.*, 688 A.2d 1245 (Cmwlth. Ct. 1997); 1 Pa.C.S. §2310.

A claim involving an intentional tort performed by a "Commonwealth party" which the PSP Defendants are, does not fall within any of the exceptions to sovereign immunity. *Milhoff v. Benson,* No. 09–1679, 2011 WL 1044663,*5 (W.D.Pa. February 24, 2011) (citing *Faust v. Department of Revenue,* 140 Pa.Cmwlth. 389, 592 (Pa.Cmwlth.1991), *allocatur den.,* 530 Pa. 647, 607 A.2d 257 (1992). Because the PSP Defendants constitute a "commonwealth party" who are immune from suit unless an exception applies and because the State tort law claim of intentional infliction of emotional distress constitutes an intentional

tort and there is no exception to immunity for intentional torts, Plaintiff fails to state a claim upon which relief can be granted as to the PSP Defendants. *Id. See, e.g., McGrath v. Johnson,* 67 F.Supp.2d 499, 511 (E.D.Pa.1999) ("In addition, Commonwealth employees are immune from liability even for intentional torts."), *afd,* 35 F.App'x 357 (3d Cir.2002). Hence, the intentional infliction of emotional distress claim must be dismissed as to the PSP Defendants.

## VI.    CONCLUSION

Based on the foregoing, Commonwealth Defendant respectfully requests that this Court grant the Commonwealth Defendant's Motion to Dismiss Plaintiff's Amended Complaint, and all claims against Commonwealth Defendants are dismissed, with prejudice, accordingly.


Respectfully submitted,




JOSH SHAPIRO
Attorney General


By:      s/ Sarina Kaplan_____
                                    Sarina Kaplan
Office of Attorney General          Deputy Attorney General
1600 Arch St., Suite 300            Attorney I.D. No. 209738
Philadelphia, PA 19103
Phone: (267) 768-3964               Karen M. Romano
Fax:    (717) 772-4526              Chief Deputy Attorney General
skaplan@attorneygeneral.gov         Civil Litigation Section

## CERTIFICATE OF SERVICE

I, Sarina M. Kaplan, Deputy Attorney General for the Commonwealth of Pennsylvania, Office of Attorney General, hereby certify that on March 22, 2022, a true and correct copy of the foregoing Motion to Dismiss Plaintiff's Amended Complaint, and memorandum of law in support, has been filed electronically and is available for viewing and downloading from the Court's Electronic Case Filing System. I further certify that a true and correct copy of this document was mailed on March 22, 2022 by first class mail, postage prepaid to:

Antoine Poteat
435 Merchant Walk Square
Suite 300-541
Charlottesville, VA  22902
*Pro Se Plaintiff*

By:     s/ Sarina Kaplan
_____

Sarina Kaplan
Deputy Attorney General
Attorney I.D. No. 209738

Office of Attorney General
1600 Arch St., Suite 300
Philadelphia, PA 19103
Phone: (267) 768-3964
Fax:    (717) 772-4526
skaplan@attorneygeneral.gov

Karen M. Romano
Chief Deputy Attorney General
Civil Litigation Section