**1**
## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| ANTOINE POTEAT, | : CIVIL ACTION<br>: Plaintiff, |
| v. | : No. 21-cv-3117-JFL |
| GERALD LYDON, et al.,<br>Defendants. | : REC'D OCT - 3 2024 |

### PLAINTIFF'S, ANTOINE POTEAT'S, RULE 60 (b) (6) MOTION FOR RELIEF

1.      Pro Se Plaintiff, Antoine Poteat, is the moving party.

2.      Said above-caption Defendants, are the responding party.

3.      This case is a civil action in which plaintiff seeks money damages arising from his arrest, prosecution, wrongful imprisonment, and release from prison. Plaintiff was released due to a speedy trial violation by the Lehigh County District Attorney. It was an injustice that Plaintiff was imprisoned after the time ran out to legally try him.

4.      Plaintiff seeks vacatur of the order and judgment against him, resulting from defendants' dismissal motions. Plaintiff also seeks reinstatement of his case and other relief depending on whether his motion is granted.

5.      Plaintiff seeks relief pursuant to Fed. R. Civ. P. 60 (b) (6).

6.      Plaintiff filed a complaint on or about July 7, 2021 (and docketed on or about July 12, 2021) stating federal statutory and state common law causes of action, including a claim pursuant to 42 USC Section 1983 and torts such as malicious prosecution.

2

7.    All defendants filed motions to dismiss, for failure to state a claim, on or about September 20, 2024 and September 24, 2021.

8.    The motions to dismiss were granted by the Court on or about January 7, 2022.

9.    As for the claims that were dismissed without prejudice, the Court granted leave to amend.

10.    Plaintiff filed his first amended complaint on or about February 28, 2022 (and docketed on or about March 8, 2022).

11.    All defendants filed motions to dismiss the first amended complaint, for failure to state a claim, on or about March 21, 2022 and March 22, 2022.

12.    The Court granted the motions to dismiss the first amended complaint, with prejudice, in their entirety, and dismissed the case, on or about May 20, 2022.

13.    Plaintiff appealed on or about June 13, 2022.

14.    Plaintiff also moved for reconsideration on or about June 13, 2022.

15.    The Court granted plaintiff's motion for reconsideration as to the malicious prosecution claim, on or about August 9, 2022, and upon reconsideration, still dismissed the action.

16.    The Court of Appeals affirmed on October 11, 2023.

17.    Plaintiff filed a petition for a rehearing on or about October 25, 2023.

18.    The Court of Appeals denied the rehearing petition on or about November 8, 2023.

**3**

19.    Plaintiff now moves for relief pursuant to Rule 60 (b) (6), seeking relief from the dismissal motion order, relief from the judgment, reinstatement of his case, and additional relief should the motion be granted.

20.    Relief should be granted for the following reasons.

21.    The main reason that relief is justified is a change in the controlling law.

22.    A change in the law does not fall within the scope of the Rule 60 (b) (1) through (b) (5) bases for relief, and, accordingly, plaintiff seeks relief based upon the wider latitude of Rule 60 (b) (6).

23.    Generally, Rule 60 (b) (6) relief requires the existence of extraordinary circumstances.

24.    A change in the law has been held to be extraordinary circumstances by the Supreme Court.

25.    A Rule 60 (b) (6) motion must be made within a reasonable time. There are no strict time requirements, such as Rule 60 (b) (1), (2) or (3) motions that must be made within one year.

26.    However, Rule 60 (c) (1) requires that the motion be made within a reasonable time.

27.    Plaintiff's motion is being made within a reasonable time because it is being filed within one year of the Court of Appeals denial of his rehearing petition (November 8, 2023), and within approximately 96 days of the decision changing the law, *Chiaverini et al. v. City of*

4

*Napoleon, Ohio* (June 20, 2024). Previously, the United States Court of Appeals for the Third Circuit, has held that a Rule 60 motion "filed …roughly ninety days after" the change-in-law decision is a motion filed within a reasonable time; *Cox v. Horn*, 757 F.3d 113 (2014).

28.    As for the substantive reasons, plaintiff seeks to have the judgment reopened, and the order upon which the judgment is based, because of extraordinary circumstances.

29.    The extraordinary circumstances are a change in the controlling law, *Chiaverini v City of Napoleon,* ___US___, 144 S Ct 1745 (2024) and *Roberts v. Lau*, 90 F.4th 618 (3rd Cir. 2024).

30.    First, the law of probable cause has changed by *Chiaverini*. This significant change in law, after defendants' motions to dismiss were granted and after the appellate court affirmed, justifies relief.

31.    For Fourth Amendment wrongful seizure cases, the Supreme Court held in *Chiaverini*  To prevail on a malicious prosecution claim, he had to show (among other things) that the officers brought criminal charges against him without probable cause.

32.    The court went further in the opinion for the court and also held that a detention, while lawful at first, may later become wrongful. "And even when a detention is justified at the outset, it may become unreasonably prolonged if the reason for it lapses." *Chiaverini v City of Napoleon,* ___US___ , ___, 144 S Ct 1745, 1750 (2024).

33.    In light of the new law, the initiation of criminal chargers and plaintiff's continuing detention was wrongful. Even assuming probable cause existed at first (which plaintiff does not concede), probable cause ceased to exist because of the Commonwealth's failure to speedily try the case, under Pa. R. Crim. P. 600. After the time to speedily, and

5

lawfully, try the plaintiff expired, any continuing detention was a wrongful seizure. By that time, the probable cause that had previously existed, if any, no longer existed; the probable cause, if any, for the original arrest and detention was erased by the speedy justice violation, which nullified any rights and powers to detain, prosecute, try, convict, and punish.

34.     The District Court and Court of Appeals decisions for this matter hold that there was probable cause for plaintiff's arrest. Accordingly, the Court found that any detention was lawful. But, in light of prosecution rights and powers ending upon the failure to speedily go to trial under Rule 600, the continuing imprisonment of plaintiff lacked authority. The Commonwealth lacked authority at that point; plaintiff could not have ever been found to have been timely prosecuted and tried afterward. Accordingly, plaintiff had an absolute defense as a matter of law. Keeping plaintiff in prison, therefore, was wrongful; there was no right or authority to detain because the probable cause to detain had elapsed after the clock ran out.

35.     Second, the law of absolute immunity for prosecutors has changed by *Roberts v. Lau.*

36.     In applying the nature-of-the-function test, under *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997), the *Roberts* court held that identifying and tracking down a suspect is not a prosecutorial function; these tasks are investigatory. Accordingly, Baer, the Assistant District Attorney, was not entitled to absolute immunity.

37.     Applying *Roberts* here, first of all, it was too early for Plaintiff case to be dismissed; discovery was required. At the motion-to-dismiss stage, it is far too uncertain what roles the prosecutor was taking on.

**6**

38. Next, there are three reasons that the Assistant District Attorney was performing investigatory and tracking-down tasks, and doing so wrongfully.

39. The first reason is that plaintiff was beyond the scope of the "Surrounding State Only" extradition code. He was a resident of Virginia and that was clearly known to the prosecutor's office.

40. The second reason is that plaintiff was extradited to Pennsylvania on a criminal complaint, and not an arrest warrant.

41. When plaintiff was about to be released from a Virginia jail, Lehigh County Assistant District Attorney Joseph Stauffer faxed the Pennsylvania criminal complaint with a handwritten note, "Use as a detainer", to the local jail in Virginia. That information from ADA Stauffer was used to make an arrest without a warrant and cause extradition to Pennsylvania, all while there was already a Rule 600/speedy-justice violation.

This incident occurred when plaintiff was posting bail and just about to be released. A CLEAN/NCIC check performed at that time revealed a Pennsylvania warrant. However, the Pennsylvania State Police advised that they would not extradite Plaintiff after Virginia officials contacted them. Consequently, ADA Stauffer deemed Plaintiff a fugitive of justice for extradition without a warrant, and, in fact, the document states "fugitive of justice without a warrant".

42. The third reason was that Assistant District Attorney Gallagher reviewed the arrest warrant submitted by Officer Lydon which also is a tracking down function. Plaintiff set forth facts as to this task and the overly broad warrant in his complaint at paragraphs 38 and 39.

43.    Therefore, the tracking down and seizure of plaintiff was without immunity. The reasonable inference to be drawn was that the prosecutor had a role in those tasks. The court should have made those inferences as it must on a Rule 12 (b) (6) motion.

44.    It was not so clear that the Assistant District Attorney was acting solely as a prosecutor, such that defendants met their burden of proof on their motion to dismiss. Discovery should have been allowed to explore the prosecutor's role at these material times of arrest and extradition.

45.    Also, the principal error of the prosecutor was to not timely prosecute and try plaintiff,. Failing to perform a task is neither a prosecutor role nor an investigator role. Immunity should not attach to the act of doing nothing, in the same was that taking a class but failing it does not result in credit hours being awarded, merely for showing up.

46.    Finally, in the event that this motion is granted, the Court should order plaintiff to file a motion for leave of court to file a second amended complaint. Amending is a recognized right within Rule 60 case law.

WHEREFORE, plaintiff, Antoine Poteat, respectfully requests that his motion be granted; that the decision in favor of defendants, and against him, on defendants' motion to dismiss be vacated; that the judgment in favor of defendants, and against him be vacated; that the above-captioned civil action be reinstated; that a motion for leave to amend which includes a proposed, second amended complaint, be filed by him within thirty (30) days of the date of this order.

8

The above statements and allegations are true and correct to the best of my knowledge, information and belief. I make this motion under penalty of perjury, and subject to the penalties for falsification to authorities.

Dated: September 30,, 2024

Antoine Poteat
435 Merchant Walk Square
Suit 300-541
Charlottesville, Va 22901
*Poteatlaw@gmail.com*
*(434)-424-3266*
*Pro se*

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| ANTOINE POTEAT, | : | CIVIL ACTION |
|  | : Plaintiff, |  |
|  | : |  |
| v. | : | No. 21-cv-3117-JFL |
|  | : |  |
|  | : |  |
| GERALD LYDON, et al., | : |  |
| Defendants. | : |  |
|  | : |  |

## <u>MEMORANDUM OF LAW IN SUPPORT OF MOTION</u>

## <u>INTRODUCTION</u>

After his conviction for drug offenses and imprisonment, plaintiff Antoine Poteat, filed a Pro Se Post Conviction Relief Act motion which was granted by the Court of Common Pleas, Lehigh County. Plaintiff was not timely tried, resulting in his prolonged and wrongful incarceration.

Plaintiff filed the above civil case for money damages in the District Court, claiming that his arrest, prosecution and imprisonment were wrongful pursuant to state and federal causes of action.

Plaintiff's case was dismissed and on appeal, the Court of Appeals affirmed.

Plaintiff now moves for relief from the Court's order and judgment, pursuant to Fed. R. Civ. P. 60 (b) (6) and a change in law. It is in the interests of justice to open the judgment and allow the case to be reinstated. There are extraordinary circumstances to open the judgment, based on a change in the substantive law of probable cause and absolute immunity.

2

## FACTS

On or about February 20, 2013, Plaintiff, Antoine Poteat, was stopped by Pennsylvania State Police (*PSP*) Trooper Gerald Lydon while driving. The reason for the stop was an alleged traffic violation. During the course of the stop, Lydon claimed to detect an alleged smell of marijuana coming from the vehicle (which was never stated during the traffic stop at all but hand. written on a computerized incident report). Despite this, Lydon did not initially conduct a search of the vehicle and instead issued Plaintiff a warning for the traffic violation printed the same time he activated his lights to conduct an traffic stop, compare.  At this point, Plaintiff asked is that all and do Plaintiff need to sign anything before leaving, Lydon informed Plaintiff the traffic stop was completed and that he was free to leave.

After issuing the warning, however, Lydon re-engaged with Plaintiff without probable cause asked Plaintiff if there was anything illegal in the car. Plaintiff stated there was not. Lydon then requested Plaintiff's consent to search the vehicle, which Plaintiff declined. In response to Plaintiffs' refusal, Lydon told Plaintiff if he would not consent to a search he is going to bring the canine to conduct a search and still search any way, where then after Plaintiff stood and remained silent. Trooper Lydon, then proceeded by telling Plaintiff I take that as a no and to step aside while Trooper Labour (who looked around the vehicle through the windows and asked me what was in a ensure drink bottle and for me to grab it and open it so he can see the contains and asked me what it was and to discard of it on the highway right before deploying dog) take a canine unit to conduct an exterior search of the vehicle.

According to Lydon (30- 45 minutes after the traffic stop was already completed and Plaintiff was told he was free to leave) the canine "allegedly alerted" to the presence of illegal substances

**3**

in the vehicle that Plaintiff disputed on scene. Based on this alleged alert, Lydon informed

Plaintiff that his car would be towed to the PSP barracks, where a search warrant would be

obtained. Plaintiff was asked to accompany the officers to the barracks while his car was

impounded.

While hand cuffed in the back of Trooper Goldsmith vehicle, Plaintiff observed, at the scene-of

the stop, an Trooper Labour get fully seated in the open the armrest and take items out moving it

to the passenger seat of the vehicle (later stated in application for a search warrant items was in

plain view and was put into evidence, NYC parking ticket with the date on it before the search

warrant got approved, multiple 2 cell phones in the vehicle... but in the criminal compliant

affidavit of probable cause for an arrest warrant Trooper lydon, stated the NYC parking ticket

and 1 phone was located in center console, after applying for a search warrant and searching

vehicle and placing them in evidence) This caused Plaintiff to become suspicious that evidence

was being tampered with or fabricated before a formal search could take place.

Once at the barracks, the PSP officers obtained a search warrant for Plaintiff's vehicle. Upon

executing the warrant, Lydon and the other officers claimed to have discovered bags of suspected

cocaine and marijuana in the vehicle and did not collect any fingerprints or analysis from

Plaintiff or the alleged drugs seized from the rental car linking any probable cause to support a

warrant or criminal chargers..

On February 26, 2013, Lydon filed criminal charges against Plaintiff, leading to an arrest

warrant. Despite Plaintiff residing in Virginia at the time, to included the extradition code "SSO"

(Surrounding States Only) on the warrant, limiting the geographical scope of any extradition

efforts. This decision, which Plaintiff believes was arbitrary and capricious, created confusion

4

and delay in Plaintiff's subsequent legal proceedings.Plaintiff saw an officer taking things from

the car console and placing them on the seat (which supported his claim of fabrication of

evidence).

Accordingly, an arrest warrant was issued on or about February 26, 2013. While the warrant was

limited to surrounding states only, plaintiff resided in Virginia, a fact known to the state police..

Plaintiff was arrested in Maryland and Defendants was alerted by Maryland Authorities that

Plaintiff was being held in a surrounding state May 2014,Pennsylvania Authorities failed to act

and then Plaintiff was then brought before a Maryland State District Judge only on the Virginia

charges and extradited to Virginia. and then when in Virginia that is when Defendants attempt to

extradited to Pennsylvania in July 2014.

Plaintiff was extradited to Pennsylvania on a criminal complaint, and not an arrest warrant.

Assistant District Attorney Joseph Stuffer faxed the Pennsylvania criminal complaint with a

handwritten note, "Use as a detainer", to the local jail in Virginia because the Pennsylvania State

Police would not extradite. ADA Stuffer deemed Plaintiff a fugitive of justice for extradition

without a warrant, when the actual problem was the limits of the surrounding states only warrant

caused solely by the Commonwealth. After a prolonged period in custody, Plaintiff was

eventually extradited to Pennsylvania in July 2014,.

During Plaintiff's trial, he raised concerns regarding the handling of evidence and the search of

his vehicle, and ADA Stauffer withheld and suppressed material evidence that would have help

vindicate Plaintiff innocence, by only playing parts of the dash cam from traffic stop (which had

missing parts of audio recording as well,  but these concerns were dismissed by the court. On

September 21, 2015, Plaintiff was convicted of drug-related offenses in a nonjury trial and

5

sentenced to 5 to 10 years in prison. Plaintiff's conviction was affirmed on appeal by the Pennsylvania Superior Court.

His subsequent petitions for review by the Pennsylvania Supreme Court and the United States Supreme Court were both denied. In September 2018, Plaintiff filed a Post Conviction Relief Act (PCRA) petition, alleging that his right to a speedy trial had been violated under Rule 600 of the Pennsylvania Rules of Criminal Procedure. Rule 600 requires that a defendant be brought to trial within a specific period, and Plaintiff argued that the delay in his case, particularly due to the erroneous extradition process and the extended period between his arrest and trial, constituted a violation of this rule The PCRA court agreed with Plaintiff's Rule 600 argument. On July 8, 2019, Plaintiff's conviction was vacated, and all charges against him were dismissed. The court found that the delay in Plaintiff's prosecution, coupled with the lack of any valid legal basis for the prolonged extradition and detention, violated Plaintiff's constitutional rights. Plaintiff was released from jail on July 9, 2019.

## PROCEDURAL HISTORY

Plaintiff filed a complaint on or about July 7, 2021 (and docketed on or about July 12, 2021) stating federal statutory and state common law causes of action, such as an action pursuant to 42 USC Section 1983 and torts such as malicious prosecution.

Defendants filed motions to dismiss, for failure to state a claim, on or about September 20, 2024 and September 24, 2021. The motions to dismiss were granted by the Court on or about January 7, 2022.

6

As for the claims that were dismissed without prejudice, the Court granted leave to amend. Plaintiff filed his first amended complaint on or about February 28, 2022 (and docketed on or about March 8, 2022).

Defendants filed motions to dismiss the first amended complaint, for failure to state a claim, on or about March 21, 2022 and March 22, 2022. The Court granted the motions to dismiss the first amended complaint, with prejudice, in their entirety, and dismissed the case, on or about May 20, 2022.

Plaintiff appealed on or about June 13, 2022. Plaintiff also moved for reconsideration on or about June 13, 2022.

The Court granted plaintiff's motion for reconsideration as to the malicious prosecution claim, on or about August 9, 2022, and upon reconsideration, still dismissed the action.

The Court of Appeals affirmed on October 11, 2023.

Plaintiff filed a petition for a rehearing on or about October 25, 2023. The Court of Appeals denied the rehearing petition on or about November 8, 2023.


**STANDARD OF REVIEW**

Fed. R. of Civ. P. 60 (b) (6) provides authority for granting relief from a judgment or order: "(b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: …(6) any other reason that justifies relief."

7

Granting relief pursuant to Rule 60 is a discretionary matter "The decision to grant or deny relief pursuant to Rule 60(b) lies in the 'sound discretion of the trial court guided by accepted legal principles applied in light of all the relevant circumstances.'" *United States v. Hernandez,* 158 F. Supp. 2d 388,392 (D. Del. 2001) (quoting *Ross v. Meaean,* 638 F.2d 646, 648 (3d Cir. 1981).

A Rule 60 (b) (6) motion must be made within a reasonable time. "(1) Timing. A motion under Rule 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60.

### ARGUMENT

I. **"MALICIOUS PROSECUTION CLAIM". INITIATED WITHOUT PROBABLE CAUSE AND THE POSITION THAT PROBABLE CAUSE CEASED TO EXIST. THEREFORE, ANY CONTINUING DETENTION WAS WITHOUT AUTHORITY.**

The law of probable cause has changed by *Chiaverini v City of Napoleon,* ___US___ , ___, 144 S Ct 1745 (2024).

This significant change in law justifies relief. A change in law is an extraordinary circumstance required for a 60 (b) (6) motion.

**8**

> First, I join the Court's opinion with the understanding that nothing in it casts doubt on the availability of Rule 60(b)(6) to reopen a judgment in extraordinary circumstances, including a change in controlling law. See, e.g., Buck v. Davis, 580 U. S. 100, 126, 128, 137 S. Ct. 759, 197 L. Ed. 2d 1 (2017) (concluding that the petitioner was "entitle[d] to relief under Rule 60(b)(6)" because of a change in law and intervening developments of fact); Gonzalez v. Crosby, 545 U. S. 524, 531, 125 S. Ct. 2641, 162 L. Ed. 2d 480 (2005) ("[A] motion might contend that a subsequent change in substantive law is a 'reason justifying relief,' Fed. Rule Civ. Proc. 60(b)(6), from the previous denial of a claim"); Polites v. United States, 364 U. S. 426, 433, 81 S. Ct. 202, 5 L. Ed. 2d 173 (1960) (leaving open that a "clear and authoritative change" in the law governing judgment in a case may present extraordinary circumstances). Today's decision does not purport to disturb these settled precedents.

*Kemp v United States*, 596 US 528, 540 (2022).

For Fourth Amendment wrongful seizure cases, the Supreme Court has held in *Chiaverini* To Prevail on a malicious prosecution claim, he had to show (amongst other things) that the officer brought criminal chargers against him without probable cause. The court went further in the opinion for the court and held a detention, while lawful at first, may later become wrongful. "And even when a detention is justified at the outset, it may become unreasonably prolonged if the reason for it lapses." *Chiaverini v City of Napoleon,* ___US___ , ___, 144 S Ct 1745, 1750 (2024).

In light of the new law, plaintiff's continuing detention was wrongful. Even assuming that probable cause existed at first (which plaintiff does not concede), probable cause ceased to exist because of the Commonwealth's failure to comply with speedy trial rights, under Pa. R. Crim. P. 600. After the time to speedily, and lawfully, try the plaintiff had expired, any continuing detention was a wrongful seizure. By that time, the probable cause that had previously existed, if any, no longer existed; the probable cause, if any, for the original arrest and detention was

9

negated by the speedy justice violation, which nullified any rights and powers to detain, prosecute, and punish.

"So if an invalid charge—say, one fabricated by police officers—causes a detention either to start or to continue, then the Fourth Amendment is violated. And that is so even when a valid charge has also been brought (although, as soon noted, that charge may well complicate the causation issue, see infra, at 7)." *Chiaverini v City of Napoleon*, ___US___ , ___, 144 S Ct 1745, 1751 (2024).

The District Court and Court of Appeals decisions for this matter held that there was probable cause for plaintiff's arrest. Accordingly, the Court found that any detention was lawful. But, in light of prosecution rights and powers ending upon the failure to speedily try the plaintiff in time under Rule 600, the continuing confinement of plaintiff lacked authority. The Commonwealth lacked authority at that point, and thereafter; plaintiff could not have ever been found to have been timely prosecuted after the last day to timely try the case. Accordingly, plaintiff had an absolute defense as a matter of law, in an instant. Keeping plaintiff in prison, therefore, was wrongful; there was no right or authority to detain because the probable cause to detain elapsed after the clock ran out.

Without a right to try, detain or imprison, there was no probable cause. Therefore, with probable cause lacking, a Fourth Amendment violation occurred.

## II.     A PROSECUTOR'S ROLES CANNOT BE ASCERTAINED AT THE MOTION-TO-DISMISS STAGE. THEREFORE, DISMISSAL BASED ON ABSOLUTE IMMUNITY WAS PREMATURE.

The law of absolute immunity for prosecutors has changed by *Roberts v. Lau*, 90 F.4th 618 (3rd Cir. 2024).

**10**

First of all, under *Roberts,* it was too early for Mr. Poteat's case to be dismissed; discovery was required. At the motion-to-dismiss stage, it is far too uncertain what roles the prosecutor was taking on.

> Taking the complaint's well-pleaded factual allegations as true, which we must do at the motion-to-dismiss stage, Baer engaged in quintessential "police investigative work" when he affirmatively searched for and approached a new witness to establish motive. Id. at 274 n.5. Discovery may reveal that these allegations are false and that Baer's role was limited to interviewing a witness in preparation for trial. If so, he may yet be entitled to absolute immunity. But those are not things that we can say at this early stage of the proceedings when we must accept the well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of Roberts.

*Roberts v. Lau,* 90 F.4th 618 (3rd Cir. 2024).

Plaintiff, Antoine Poteat, should have been given the benefit, as a motion to dismiss requires that the Court view the facts and make the reasonable inferences in a light favorable to the respondent. Without an answer having been filed or depositions taken, it was an error to summarily conclude that absolute immunity applied. Discovery should have been allowed to explore the prosecutor's role at these material times of arrest and extradition.

**III.    TRACKING DOWN AND EXTRADITING DEFENDANT ON A SURROUNDING STATES ONLY WARRANT IS AN INVESTIGATORY FUNCTION TO WHICH PROSECUTORIAL IMMUNITY DOES NOT ATTACH.**

In applying the nature-of-the-function test, under *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997), the *Roberts* court held that identifying and tracking down a suspect is not a prosecutorial function; these tasks are investigatory. Accordingly, Baer, the Assistant District Attorney, was not entitled to absolute immunity.

11

There are several reasons that the Lehigh County Assistant District Attorney was performing investigatory and tracking-down tasks, and doing so wrongfully. One, plaintiff was beyond the scope of the "Surrounding State Only" extradition code. He was a resident of Virginia and that was clearly known to the prosecutor's office. Two, plaintiff was extradited to Pennsylvania on a criminal complaint, and not an arrest warrant. Therefore, the tracking down and seizure of plaintiff was without authority.

"Baer engaged in 'police investigative work' when he allegedly embarked on a postcharge search for a new witness to plug a hole in the prosecution's case. See *Buckley*, 509 U.S. at 274 n.5. Thus, Baer is not entitled to absolute immunity at the motion-to dismiss stage because his alleged conduct served an investigative function." *Roberts v. Lau,* 90 F.4th 618 (3rd Cir. 2024).

The reasonable inference to be drawn was that the prosecutor had a role in the tasks of faxing the criminal complaint that had a handwritten note, "Use as a detainer" to Virginia, and deeming Mr. Poteat a fugitive of justice. The court should have made those inferences as it must on a Rule 12 (b) (6) motion. It was not so clear that the Assistant District Attorney was acting solely as a prosecutor, such that defendants met their burden of proof on their motion to dismiss.

IV.    **PROSECUTORIAL IMMUNITY DOES NOT ATTACH TO A NONPROSECUTORIAL FUNCTION SUCH AS FAILING TO SPEEDILY TRY A DEFENDANT. MISSING THE DEADLINE IS NEITHER INVESTIGATORY NOR PROSECUTORIAL; IT IS THE ACT OF DOING NOTHING, DESERVING OF NO IMMUNITY.**

**12**

Also, the principal error of the prosecutor was to not timely try the plaintiff, Antoine

Poteat. Failing to perform a task is neither a prosecutor role nor an investigator role. Immunity

should not attach to the act of doing nothing, in the same was that taking a class but failing it

does not result in credit hours being awarded, merely for showing up.

A conscious decision to not prosecute will not be a basis for a damages suit. "[A]bsolute

protection from a damages suit for not prosecuting is warranted." *Schloss v. Bouse*, 876 F.2d 287,

290 (2d Cir. 1989).

However, not performing a task that should be performed, out of inattentiveness rather

than rational decision making, should not be deserving of absolute immunity. Rewarding a

prosecutor who does not honor the Constitutional right to a speedy trial is an injustice. Absolute

immunity is not warranted or appropriate, especially when it causes a citizen to be confined to a

prison cell.

V.      **THE RIGHT TO AMEND THE COMPLAINT SHOULD BE GRANTED IF
        THE ORDER AND JUDGEMNDET ARE VACATED AS IT IS A ROUTINE
        FORM OR RELEIF IN A RULE 60 MOTION.**

Finally, plaintiff seeks leave of court to file a second amended complaint. Amending is a

recognized right within Rule 60 case law. A true and correct copy of the second amended

complaint is attached hereto. See Exhibit A.

13

## CONCLUSION AND RELIEF SOUGHT

For the above reasons, it is apparent that there are extraordinary and exceptional circumstances supporting a Rule 60 (b) (6) motion, and that changes in law are those circumstances. In light in the new law, Plaintiff complaint states claims of wrongful detention and imprisonment, and malicious prosecution. It was an injustice that Plaintiff spent 5 years of his life in a prison. The interests of justice require that the order and judgment be vacated and that this case proceed.

Accordingly, plaintiff, Antoine Poteat, respectfully requests that his motion be granted; that the decision in favor of defendants,, and against him, on defendants' motion to dismiss be vacated; that the judgment in favor of defendants, and against him be vacated; that the above-captioned civil action be reinstated; that a motion for leave to amend which includes a proposed, second amended complaint, be filed by him within thirty (30) days of the date of this order.

Respectfully submitted by,

ANTOINE POTEAT
435 Merchant Walk Square
Suit 300-541
Charlottesville, Va 22901
*Poteatlaw@gmail.com*
*(434)-424-3266*
*Pro Se*

14

## CERTIFICATE OF SERVICE

I, Antoine Poteat,, certify that I served a true and correct copy of plaintiff's motion on defendants/counsel.

I certify the attorney for DA defendants J. Holaska do not consent. And attorney for PSP defendants, C. Tesoro has retired with vacancy in the office.

The above statement is true and correct to the best of my knowledge, information and belief. I verify that this Certificate of Service is made under penalty of perjury, and subject to the penalties for falsification to authorities.

Dated: September 30, 2024

Antoine Poteat
435 Merchant Walk Square
Suit 300-541
Charlottesville, Va 22901
*Poteatlaw@gmail.com*
*(434)-424-3266*
*Pro Se*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTOINE POTEAT | : |
| PLAINTIFF, | : |
| VS. | : |
| GERALD LYDON (INDIVIDUAL AND | : CASE NO: 5:21-CV-03117 |
| OFFICIAL CAPACITY), CHAD LABOUR | : |
| (INDIVIDUAL AND OFFICIAL CAPACITY) | : |
| NICHOLAS GOLDSMITH (INDIVIDUAL | : |
| AND OFFICIAL CAPACITY), JUSTIN | : |
| JULIUS (INDIVIDUAL AND OFFICIAL | : |
| CAPACITY), GREGORY EMERY | : |
| (INDIVIDUAL AND OFFICIAL CAPACITY) | : |
| BRIAN KONOPKA (INDIVIDUAL AND | : |
| OFFICIAL CAPACITY), HEATHER | : |
| GALLAGUER (INDIVIDUAL AND OFFICIAL | : |
| CAPACITY), BETHANY ZAMPOGNA | : |
| (INDIVIDUAL AND OFFICIAL CAPACITY) | : |
| BETHANY ZAMPOGNA (INDIVIDUAL AND | : |
| OFFICIAL CAPACITY), JOSEPH STAUFFER | : |
| (INDIVIDUAL AND OFFICIAL CAPACITY) | : |
| JAMES MARTIN (INDIVIDUAL AND | : |
| OFFICIAL CAPACITY), JARED HANNA | : |
| (INDIVIDUAL AND OFFICIAL CAPACITY), | : |
| EDWARD RESSLER (INDIVIDUAL AND | : |
| OFFICIAL CAPACITY), | : |
| DEFENDANTS. | : |

## PROPOSED AMENDED COMPLAINT

AND NOW, comes the Plaintiff, **Antoine Poteat**, by and through himself, *pro se*, and hereby

files this proposed Second Amended Complaint, stating the following in support thereof:

## NATURE OF THE ACTION

1. This is a civil rights action brought under 42 U.S.C. § 1983 for violations of the Plaintiff's

Fourth, Fifth, and Fourteenth Amendment rights, including but not limited to malicious

2

prosecution, violations of due process, abuse of process, wrongful extradition, and intentional infliction of emotional distress, as well as related state tort claims. Plaintiff was wrongfully prosecuted, imprisoned, and denied his right to a speedy trial under Pennsylvania Rule of Criminal Procedure 600.

2. As a result of the actions of the Defendants, particularly the Lehigh County District Attorney's Office and the named individuals within the office, Plaintiff was subjected to nearly 5 years of wrongful imprisonment and was denied basic procedural safeguards guaranteed by the Constitution.

## JURISDICTION AND VENUE

3. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States. The Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

4. Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391(b) because the events or omissions giving rise to this action occurred in this judicial district.

## PARTIES

5. Plaintiff **Antoine Poteat** is an adult resident of the Commonwealth of Virginia.

6. Defendant **Gerald Lydon** is an individual employed by the Pennsylvania State Police, acting in both his individual and official capacities. At all relevant times, he acted under color of state law.

7. Defendants **Chad Labour, Nicholas Goldsmith, Justin Julius, Gregory Emery, Brian Konopka** are Pennsylvania State Police officers, sued in their individual and official capacities. At all relevant times, acted under color of state law.

3

8. Defendant **James Martin** is the District Attorney for Lehigh County and is sued in both his individual and official capacities. At all relevant times, he acted under color of state law.

9. Defendants **Heather Gallaguer, Bethany Zampogna, Joseph Stauffer, Jared Hanna,** are Assistant District Attorneys for Lehigh County,acting in their individual and official capacities under color of state law. **Edward Ressler** is a Lehigh County Detective and is sued in both his individual and official capacities. At all relevant times, he acted under color of state law.

## FACTUAL ALLEGATIONS

10. On or about February 20, 2013, Plaintiff, Antoine Poteat was stopped by Pennsylvania State Police ("PSP") Trooper Gerald Lydon while driving. The reason for the stop was an alleged traffic violation. During the course of the stop, Lydon claimed to detect an alleged smell of marijuana coming from the vehicle (which was never stated during the traffic stop at all but hand written on a computerized incident report See Exhibit A). Despite this, Lydon did not initially conduct a search of the vehicle and instead issued Plaintiff a warning for the traffic violation (See Exhibit B. printed the same time he activated his lights to conduct an traffic stop, compare Exhibit C). At this point, Plaintiff asked is that all and do Plaintiff need to sign anything before leaving, Lydon informed Plaintiff the traffic stop was completed and that he was free to leave.

11. After issuing the warning, however, Lydon re-engaged with Plaintiff without probable cause asked Plaintiff if there was anything illegal in the car. Plaintiff stated there was not. Lydon then requested Plaintiff's consent to search the vehicle, which Plaintiff declined. In response to Plaintiff's refusal, Lydon told Plaintiff if he would not consent to a search he is going to bring the canine to conduct a search and still search any way, where there after Plaintiff stood and

**4**

remained silent. Trooper Lydon, then proceeded by telling Plaintiff I take that as a no and to step aside while Trooper Labour (who looked around the vehicle through the windows and asked me what was in a ensure drink bottle and for me to grab it and open it so he can see the contains and asked me what it was and to discard of it on the highway right before deploying dog) take a canine unit to conduct an exterior search of the vehicle.

12. According to Lydon, (30- 45 minutes after the traffic stop was already completed and Plaintiff was told he was free to leave) the canine "allegedly alerted" to the presence of illegal substances in the vehicle that Plaintiff disputed on scene. Based on this alleged alert, Lydon informed Plaintiff that his car would be towed to the PSP barracks, where a search warrant (See Exhibit C.) would be obtained. Plaintiff was asked to accompany the officers to the barracks while his car was impounded.

13. While hand cuffed in the back of Trooper Goldsmith vehicle, Plaintiff observed, at the scene of the stop, an Trooper Labour get fully seated in the open the armrest and take items out moving it to the passenger seat of the vehicle (later stated in application for a search warrant items was in plain view and was put into evidence, NYC parking ticket with the date on it before the search warrant got approved, multiple 2 cell phones in the vehicle… but in the criminal compliant affidavit of probable cause for an arrest warrant Trooper lydon stated the NYC parking ticket and 1 phone was located in center console, after applying for a search warrant and searching vehicle and placing them in evidence) This caused Plaintiff to become suspicious that evidence was being tampered with or fabricated before a formal search could take place.

14. Once at the barracks, the PSP officers obtained a search warrant for Plaintiff's vehicle. Upon executing the warrant, Lydon and the other officers claimed to have discovered bags of

5

suspected cocaine and marijuana in the vehicle and did not collect any fingerprints or analysis from Plaintiff (See Exhibit D) or the alleged drugs seized from the rental car linking any probable cause to support a warrant or criminal chargers.

15. On February 26, 2013, Lydon filed criminal charges against Plaintiff, leading to an arrest warrant. Despite Plaintiff residing in Virginia at the time, Lydon included the extradition code "SSO" (Surrounding States Only) on the warrant, limiting the geographical scope of any extradition efforts. This decision, which Plaintiff believes was arbitrary and capricious, created confusion and delay in Plaintiff's subsequent legal proceedings.

16. Plaintiff saw an officer taking things from the car console and placing them on the seat (which supported his claim of fabrication of evidence). Accordingly, an arrest warrant was issued on or about February 26, 2013. While the warrant was limited to surrounding states only, plaintiff resided in Virginia, a fact known to the state police.

17. Plaintiff was arrested in Maryland and Defendants was alerted by Maryland Authorities that Plaintiff was being held in a surrounding state May 2014 (See Exhibit E), Pennsylvania Authorities failed to act and then Plaintiff was then brought before a Maryland State District Judge only on the Virginia charges and extradited to Virginia. and then when in Virginia that is when Defendants attempt to extradited to Pennsylvania in July 2014. Plaintiff was extradited to Pennsylvania on a criminal complaint, and not an arrest warrant. Assistant District Attorney Joseph Stuffer faxed the Pennsylvania criminal complaint with a handwritten note, "Use as a detainer", to the local jail in Virginia because the Pennsylvania State Police would not extradite. ADA Stauffer deemed Plaintiff a fugitive of justice for extradition without a warrant (See Exhibit F.), when the actual problem was the limits of the surrounding states only warrant (See

**6**

Exhibit G.), caused solely by the Commonwealth. After a prolonged period in custody, Plaintiff was eventually extradited to Pennsylvania in July 2014.

18. During Plaintiff's trial, he raised concerns regarding the handling of evidence and the search of his vehicle, and ADA Stauffer withheld and suppressed material evidence that would have help vindicate Plaintiff innocence, by only playing parts of the dash cam from traffic stop (which had missing parts of audio recording as well, but these concerns were dismissed by the court. On September 21, 2015, Plaintiff was convicted of drug-related offenses in a nonjury trial and sentenced to 5 to 10 years in prison.

19. Plaintiff's conviction was affirmed on appeal by the Pennsylvania Superior Court. His subsequent petitions for review by the Pennsylvania Supreme Court and the United States Supreme Court were both denied.

20. In September 2018, Plaintiff filed a Post Conviction Relief Act (PCRA) petition, alleging that his right to a speedy trial had been violated under Rule 600 of the Pennsylvania Rules of Criminal Procedure. Rule 600 requires that a defendant be brought to trial within a specific period, and Plaintiff argued that the delay in his case, particularly due to the erroneous extradition process and the extended period between his arrest and trial, constituted a violation of this rule.

21. The PCRA court agreed with Plaintiff's Rule 600 argument. On July 8, 2019, Plaintiff's conviction was vacated, and all charges against him were dismissed. The court found that the delay in Plaintiff's prosecution, coupled with the lack of any valid legal basis for the prolonged extradition and detention, violated Plaintiff's constitutional rights.

7

22. Plaintiff was released from prison on July 9, 2019, after having served nearly 5 years for a conviction that was ultimately dismissed due to the violation of his right to a speedy trial.

23. Plaintiff asserts that the Lehigh County District Attorney's Office, including Defendants Heather Gallaguer, Bethany Zampogna, Joseph Stauffer, James Martin, Jared Hanna, and Edward Ressler Lehigh County Detective played a significant role in his wrongful prosecution and the deprivation of his constitutional rights. These individuals, in their official and individual capacities, were responsible for overseeing the prosecution of Plaintiff's case and failed to ensure that his rights were protected, particularly with regard to the timely prosecution required under Rule 600.

24. Plaintiff alleges that these Defendants engaged in malicious prosecution by knowingly allowing his case to proceed despite the clear violation of his right to a speedy trial. Further, Plaintiff contends that the Defendants fabricated evidence, or allowed fabricated evidence to be used against him, and pursued criminal charges without probable cause, leading to his wrongful conviction and imprisonment.

25. In addition to the malicious prosecution, Plaintiff asserts that Defendants conspired to deprive him of his constitutional rights, including his right to a fair trial, by failing to investigate and address the tampering of evidence during the traffic stop and search of his vehicle which initiated and continued the prosecution, Plaintiff's repeated attempts to raise these issues were disregarded by both the PSP officers involved and the prosecuting attorneys, resulting in a wrongful conviction based on false evidence.

26. Plaintiff further alleges that the actions of the PSP officers, including Lydon, and the prosecutors from the Lehigh County District Attorney's Office, were taken in bad faith and with

**8**

reckless disregard for his constitutional rights, including his Fourth and Fourteenth Amendment rights.

27. The wrongful initiation and continued prosecution, conviction, and nearly 5 years of wrongful imprisonment have caused Plaintiff significant emotional and psychological distress, physical harm, loss of liberty,

and damage to his reputation. Plaintiff's family relationships, career, and personal life have been irreparably harmed as a result of the Defendants' unlawful conduct.

## COUNT I

### Malicious Prosecution (Fourth Amendment via 42 U.S.C. § 1983)

### (Against All Defendants in Their Individual and Official Capacities)

28. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

29. Defendants, acting under color of state law, initiated and continued a criminal prosecution against Plaintiff Antoine Poteat without probable cause, in violation of Plaintiff's Fourth Amendment rights, as incorporated through the Fourteenth Amendment, which protects against unreasonable seizures.

30. Defendants initiated the prosecution of Plaintiff based on evidence that was fabricated, false, or unlawfully obtained. Specifically, Defendants relied on evidence from the traffic stop and search of Plaintiff's vehicle, which was conducted without proper legal basis, as the search was initiated after Plaintiff had already been informed the traffic stop was complete and he was free to leave. Despite Plaintiff's refusal to consent to a search of the vehicle, the police sought a canine unit and ultimately claimed to have discovered drugs—claims Plaintiff contends were the result of tampering with evidence, which Defendants failed to investigate or rectify.

9

31. At the time of initiating and continuing the prosecution, Defendants knew or should have known that there was insufficient evidence to establish probable cause for Plaintiff's arrest, charging, and subsequent prosecution. The search of Plaintiff's vehicle, upon which the charges were based, was conducted in violation of the Fourth Amendment, as it was predicated on fabricated claims of the canine alert and improper handling of the search warrant process.

32. Defendants, including the prosecutors from the Lehigh County District Attorney's Office, deliberately or recklessly disregarded this lack of probable cause and proceeded with the prosecution, resulting in Plaintiff being charged, detained, and eventually wrongfully convicted. Despite Plaintiff's objections and attempts to raise concerns about the misconduct during the traffic stop and subsequent search, Defendants ignored these concerns and continued to pursue the charges.

33. Plaintiff's prosecution and continued imprisonment were based on fabricated evidence, and Defendants failed in their duty to ensure that Plaintiff's constitutional rights were not violated. The evidence used against Plaintiff was unreliable, and no reasonable prosecutor or law enforcement officer would have pursued the case given the circumstances of the illegal search and the failure to establish probable cause.

34. Further, Defendants engaged in conduct that exhibited malice and deliberate indifference to Plaintiff's constitutional rights. The prosecution of Plaintiff was not merely the result of a negligent or accidental oversight but was the product of malicious intent to secure a conviction by any means necessary. Defendants pursued charges and continued prosecution despite knowing or having reason to know that Plaintiff was innocent or that the evidence against him was fabricated or illegally obtained.

10

35. As a direct and proximate result of Defendants' malicious prosecution, Plaintiff was wrongfully detained and imprisoned for nearly 5 years, suffering extensive harm. This harm includes, but is not limited to:

- Loss of liberty;
- Emotional distress;
- Mental anguish;
- Physical harm due to incarceration;
- Damage to Plaintiff's reputation and standing in the community;
- Loss of employment and career opportunities;
- Destruction of family relationships and personal life.

36. Plaintiff's conviction was ultimately vacated, and all charges against him were dismissed, confirming the lack of probable cause that existed at the time of his arrest and prosecution. The dismissal of the charges demonstrates that Defendants wrongfully subjected Plaintiff to prosecution and imprisonment without proper legal grounds, in violation of his constitutional rights.

37. Defendants, acting individually and in concert with one another, directly and proximately caused the violation of Plaintiff's Fourth Amendment right to be free from unlawful seizure and malicious prosecution through their reckless and willful disregard for the truth and Plaintiff's rights.

38. Defendants' actions were undertaken with deliberate indifference to Plaintiff's constitutional rights and in bad faith, thus entitling Plaintiff to recover compensatory damages, including for

11

emotional distress, pain and suffering, lost wages, and other damages stemming from his wrongful imprisonment and prosecution.

39. In addition, Defendants' conduct was so egregious, malicious, and in reckless disregard of Plaintiff's rights that punitive damages should be awarded to deter such conduct in the future and to punish Defendants for their intentional misconduct.

40. Plaintiff brings this cause of action pursuant to 42 U.S.C. § 1983, which provides a remedy for individuals whose constitutional rights have been violated by state actors. Defendants, acting under the color of state law, deprived Plaintiff of his clearly established Fourth Amendment rights, and as such, are liable under § 1983.

41. Plaintiff seeks compensatory damages in an amount to be determined at trial, punitive damages, attorney's fees, and costs pursuant to 42 U.S.C. § 1988, and such other relief as this Court deems just and proper.

## COUNT II

### Violation of Procedural Due Process (Fourteenth Amendment via 42 U.S.C. § 1983)

### (Against All Defendants in Their Individual and Official Capacities)

42. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

43. The Fourteenth Amendment to the United States Constitution guarantees that no person shall be deprived of life, liberty, or property without due process of law. This protection includes the right to procedural due process, which requires fair and proper procedures when the government seeks to deprive a person of a constitutionally protected interest, including liberty.

12

44. Plaintiff had a clearly established constitutional right to be free from criminal charges, detention, and imprisonment without the proper and lawful procedural protections guaranteed by the Due Process Clause of the Fourteenth Amendment.

45. Defendants, acting under color of state law, willfully, recklessly, and maliciously deprived Plaintiff of his liberty by initiating, pursuing, and continuing criminal proceedings against him without affording him the necessary procedural safeguards. This included:

- Failing to provide Plaintiff with a fair opportunity to contest the fabricated and unlawfully obtained evidence;

- Suppressing exculpatory evidence that could have demonstrated Plaintiff's innocence;

- Relying on falsified or unreliable evidence obtained through unlawful searches and procedures;

- Denying Plaintiff a fair hearing to challenge the legality of his arrest and the validity of the charges brought against him.

46. Specifically, Defendants' actions in **relation** to the traffic stop and subsequent search of Plaintiff's vehicle were conducted in violation of the Fourth Amendment, and the manner in which the search warrant was obtained and executed further violated Plaintiff's procedural due process rights. Defendants failed to adhere to basic procedural requirements, such as:

- Providing a legitimate basis for the search warrant;

- Ensuring that the evidence used against Plaintiff was not tainted or fabricated;

- Allowing Plaintiff to meaningfully challenge the legality of the search and seizure in court proceedings.

13

47. Defendants, including the prosecuting attorneys, also failed to disclose key exculpatory evidence that could have exonerated Plaintiff or significantly undermined the credibility of the case against him. Defendants had a duty to turn over such evidence, as required by **Brady v. Maryland**, yet they willfully or recklessly withheld it, thereby violating Plaintiff's due process rights.

48. Defendants' actions throughout the criminal proceedings exhibited a clear disregard for Plaintiff's constitutional right to procedural fairness. This includes, but is not limited to:

- Falsifying or misrepresenting evidence to support the charges against Plaintiff;

- Failing to correct known falsehoods or errors in the record, even after becoming aware of them;

- Deliberately ignoring Plaintiff's efforts to raise concerns regarding the improper and illegal nature of the search and seizure;

- Continuing to prosecute Plaintiff despite the lack of probable cause and speedy trial violation, thereby subjecting him to unjustified detention and trial.

49. Plaintiff was deprived of his liberty for nearly 5 years, during which he remained incarcerated due to the Defendants' intentional and reckless violations of his due process rights. During this period, Plaintiff was denied fundamental protections that should have been afforded to him under the Constitution, including the opportunity to meaningfully challenge the legal basis for his prosecution and detention.

50. The legal procedures leading to Plaintiff's wrongful conviction were fundamentally flawed, as they were based on fabricated and unlawfully obtained evidence. Defendants, acting

14

individually and in concert, manipulated the legal process to ensure that Plaintiff would be convicted, despite the absence of lawful justification for the charges brought against him.

51. As a direct and proximate result of Defendants' violation of Plaintiff's procedural due process rights, Plaintiff suffered significant harm, including:

- Unlawful imprisonment for nearly 5 years;

- Emotional and psychological distress from being wrongfully detained and prosecuted;

- Loss of liberty, including the inability to enjoy a normal life or maintain employment;

- Damage to Plaintiff's reputation, character, and standing in his community;

- Financial losses, including lost wages and legal fees incurred in defense of his wrongful prosecution.

52. Plaintiff's conviction was ultimately vacated, and all charges against him were dismissed, but only after he had endured years of wrongful imprisonment. The dismissal of the charges, along with the vacatur of his conviction, demonstrates the fundamentally unfair nature of the proceedings against him, which were initiated and continued in violation of Plaintiff's procedural due process rights.

53. Defendants acted with malice, deliberate indifference, and reckless disregard for Plaintiff's constitutional rights, knowing that they were depriving Plaintiff of his liberty without proper legal justification. Their conduct, including the falsification of evidence, the suppression of exculpatory materials, and the manipulation of the judicial process, amounted to a clear violation of Plaintiff's procedural due process rights.

15

54. Defendants' conduct was so egregious and outrageous that it shocks the conscience, further entitling Plaintiff to relief under 42 U.S.C. § 1983. Defendants' actions were not merely negligent but constituted a willful and deliberate violation of Plaintiff's constitutional rights.

55. Plaintiff is entitled to compensatory damages for the significant harm and suffering caused by Defendants' violation of his procedural due process rights, including damages for emotional distress, loss of liberty, and financial harm. Plaintiff also seeks punitive damages, given Defendants' egregious and malicious conduct, to deter such violations in the future.

56. Plaintiff further seeks attorney's fees and costs associated with this action pursuant to 42 U.S.C. § 1988, and any other relief this Court deems just and proper.

## COUNT III

### Abuse of Process (State Law Claim)

### (Against All Defendants in Their Individual and Official Capacities)

57. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

58. Abuse of process is a state law tort that occurs when a legal process is used for an improper, ulterior purpose, and not for the genuine resolution of a legitimate legal dispute. The key element of this claim is that Defendants, while ostensibly using legal processes, pursued objectives that were not related to the legal merits of the case but were instead motivated by malicious or personal reasons.

59. The Defendants, acting individually and in concert with each other, abused the legal process by initiating, continuing, and manipulating criminal proceedings against Plaintiff for a purpose other than securing a proper adjudication of a legitimate criminal matter.

60. Specifically, Defendants used the legal process to:

16

- Coerce and intimidate Plaintiff into making concessions or admissions that were unrelated to the merits of the criminal case;

- Conceal their own wrongdoing, including misconduct in gathering evidence, fabricating charges, and carrying out an unlawful arrest and search;

- Inflict emotional distress, humiliation, and financial hardship on Plaintiff as a form of retaliation or punishment, without any legal or factual basis to support such treatment;

- Gain leverage over Plaintiff in a manner that was personal, political, or otherwise unrelated to the legitimate purpose of pursuing justice in the criminal case.

61. From the initiation of the criminal case, Defendants had an ulterior motive in prosecuting Plaintiff, which was to protect themselves from accountability for their misconduct, and not to legitimately prosecute Plaintiff for a criminal offense. In fact, Defendants' actions were designed to advance their own interests, shield their professional reputations, and maintain control over a legal narrative that would obscure their abuse of power.

62. Defendants misused legal procedures at various stages, including:

- **The wrongful arrest of Plaintiff**: Defendants initiated criminal charges against Plaintiff without probable cause, intending to use the criminal justice system to falsely implicate Plaintiff and suppress evidence of their own misconduct.

- **The manipulation of the search warrant process**: Defendants intentionally misrepresented facts in the warrant application process to secure an unlawful search warrant for Plaintiff's vehicle and property, knowing that the evidence they sought to use against him was improperly obtained or fabricated.

17

- **The deliberate delay and prolongation of the criminal proceedings**: Defendants intentionally extended the duration of the prosecution without justification, causing

- Plaintiff undue suffering and financial harm, with the goal of pressuring Plaintiff into a plea deal or forcing him to give up his defense due to emotional and financial exhaustion.

- **The use of fabricated evidence**: Defendants knowingly introduced false or unreliable evidence into the criminal process, not to prosecute Plaintiff for a legitimate offense, but to further their own ends, including covering up their initial illegal conduct.

63. Defendants' abuse of process was not aimed at any proper or lawful objective of the legal process. Instead, it was used as a tool to harass, intimidate, and injure Plaintiff, who was forced to endure years of unjust legal proceedings. Defendants pursued the criminal charges against Plaintiff with knowledge of their illegitimacy, for the sole purpose of inflicting harm and furthering their own interests, which is a classic example of an abuse of process.

64. The improper use of the legal process by Defendants caused Plaintiff significant harm, including:

- Nearly 5 years of wrongful imprisonment;

- Severe emotional distress, including anxiety, depression, and humiliation from being wrongfully accused and imprisoned;

- Financial hardship from legal fees, loss of employment, and the inability to maintain a livelihood while unjustly incarcerated;

- Damage to Plaintiff's reputation in his community, as well as irreparable harm to his personal relationships and social standing.

18

65. Defendants' conduct demonstrates a clear pattern of willful abuse of the legal system. They acted with malice and reckless disregard for the consequences of their actions, knowing full well that Plaintiff was being subjected to an unjust and improper criminal process.

66. As a direct and proximate result of Defendants' abuse of process, Plaintiff suffered actual damages, including but not limited to financial losses, severe emotional distress, damage to his reputation, and loss of liberty.

67. In addition to compensatory damages, Plaintiff is entitled to punitive damages, as Defendants' conduct was intentional, egregious, and designed to cause harm. The abuse of process engaged in by Defendants constitutes an extreme and outrageous violation of Plaintiff's legal rights, warranting a strong punitive response to deter similar future conduct.

68. Plaintiff seeks relief for these damages in an amount to be determined at trial, as well as attorney's fees, costs of litigation, and any other relief the Court deems just and proper.

## COUNT IV

### Intentional Infliction of Emotional Distress (State Law Claim)

### (Against All Defendants in Their Individual and Official Capacities)

69. Plaintiff incorporates by reference all **preceding** paragraphs as if fully set forth herein.

70. The tort of intentional infliction of emotional distress ("IIED") under state law occurs when a defendant, through extreme and outrageous conduct, intentionally or recklessly causes severe emotional distress to another.

71. Defendants, acting individually and in concert, engaged in conduct that was so extreme, outrageous, and beyond the bounds of decency that it is considered intolerable in a civilized society. This conduct was calculated to and did cause Plaintiff severe emotional distress.

19

72. Specifically, Defendants initiated and pursued a malicious and unfounded criminal prosecution against Plaintiff, subjected him to wrongful arrest, detention, and prosecution, fabricated evidence, and misused legal processes, all while knowing that Plaintiff was innocent of the charges brought against him.

73. Defendants' actions were extreme and outrageous because:

- **They falsely accused Plaintiff of serious criminal charges** without any legitimate basis or probable cause, knowing that such accusations would devastate Plaintiff's life, reputation, and well-being.

- **They intentionally fabricated evidence** and engaged in a wrongful prosecution to cover up their own misconduct, with full knowledge that Plaintiff would be subjected to the indignities of criminal prosecution, imprisonment, and societal stigma.

- **They unlawfully detained Plaintiff for nearly 5 years**—a significant portion of Plaintiff's life—during which time he was separated from his family, deprived of his freedom, and subjected to the harsh conditions of incarceration, all without legitimate cause.

- **They subjected Plaintiff to public humiliation and degradation**, causing him to be seen as a criminal by his community, family, and friends, which led to the permanent tarnishing of his personal and professional reputation.

- **They knowingly prolonged the prosecution and manipulated legal proceedings**, forcing Plaintiff to suffer prolonged anxiety, uncertainty, and fear

20

regarding his future. Plaintiff was repeatedly subjected to the mental strain of fighting for his innocence against a criminal justice system being maliciously weaponized by Defendants.

74. Defendants knew, or reasonably should have known, that their actions would cause Plaintiff severe emotional distress. Their conduct was willful, deliberate, and done with the specific intent of inflicting emotional harm or, at the very least, with reckless disregard of the near certainty that Plaintiff would suffer severe emotional distress as a result.

75. As a direct and proximate result of Defendants' intentional infliction of emotional distress, Plaintiff suffered:

- **Severe emotional and psychological trauma**, including but not limited to anxiety, depression, feelings of helplessness, fear, and hopelessness caused by the false accusations, prolonged incarceration, and Defendants' ongoing efforts to persecute him.

- **Ongoing mental anguish** from the realization that the justice system, a system meant to protect the innocent, was being used to punish him without cause. Plaintiff was forced to endure this mental torment day after day during the length of his wrongful imprisonment.

- **Physical symptoms and ailments related to the emotional distress**, including insomnia, loss of appetite, headaches, and other stress-related health conditions.

- **Strain on personal relationships** with his family, friends, and loved ones due to his wrongful incarceration and the mental toll it took on his well-being and capacity to engage meaningfully with others.

21

- **Permanent damage to his emotional well-being**, as the trauma of nearly 5 years of wrongful imprisonment continues to affect Plaintiff's ability to trust, feel secure, or engage fully in his community and personal life.

76. The severity of the emotional distress inflicted upon Plaintiff is evidenced by the following:

- Plaintiff was deprived of nearly 5 years of his life due to false charges and wrongful incarceration, leaving him traumatized, fearful, and anxious about his future and personal safety.

- The ongoing fear and stigma attached to being wrongfully branded as a criminal has left Plaintiff socially isolated, unable to regain the personal and professional reputation he once had, and emotionally distraught.

- Plaintiff experienced and continues to experience profound mental anguish, nightmares, panic attacks, and emotional instability as a result of Defendants' prolonged campaign of abuse, lies, and manipulation.

77. Defendants' conduct went far beyond mere negligence or legal error; it was a calculated and malicious series of actions intended to ruin Plaintiff's life by subjecting him to unjust and traumatizing legal proceedings. No reasonable person in a civilized society would tolerate or accept the treatment Defendants inflicted on Plaintiff.

78. The acts of Defendants, as described above, were done with intentional malice or, at the very least, with reckless disregard for the severe emotional harm they were certain to cause.

22

Defendants, as law enforcement officers and legal professionals, were in positions of trust and authority and abused that trust with their deliberate actions to harm Plaintiff.

79. As a direct and proximate result of Defendants' extreme and outrageous conduct, Plaintiff suffered and continues to suffer severe emotional distress, mental suffering, and psychological injury.

80. Plaintiff seeks compensatory damages for the severe emotional distress and suffering caused by Defendants' conduct, including damages for medical and psychological treatment costs, emotional pain and suffering, and other related losses, in an amount to be determined at trial.

81. In addition to compensatory damages, Plaintiff seeks punitive damages as Defendants' conduct was willful, malicious, and in reckless disregard of Plaintiff's emotional well-being. The egregious nature of their actions justifies an award of punitive damages to punish Defendants and deter similar conduct in the future.

82. Plaintiff also seeks attorney's fees, costs of litigation, and any other relief the Court deems just and proper.

## COUNT IV

### Denial Of Fair Trial

### (Against All Defendants in Their Individual and Official Capacities)

83. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein. To prevail on a denial of fair trial claim, a plaintiff must show that "an (1) investigating official (2) fabricates evidence (3) that is likely to influence a jury's decision, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of liberty as a result."

23

84. Defendants, acting under color of state law, initiated and continued a criminal prosecution against Plaintiff Antoine Poteat without probable cause, in violation of Plaintiff's Fourth Amendment rights, as incorporated through the Fourteenth Amendment, which protects against unreasonable seizures.

85. Defendants initiated the prosecution of Plaintiff based on evidence that was fabricated, false, or unlawfully obtained. Specifically, Defendants relied on evidence from the traffic stop and search of Plaintiff's vehicle, which was conducted without proper legal basis, as the search was initiated after Plaintiff had already been informed the traffic stop was complete and he was free to leave. Despite Plaintiff's refusal to consent to a search of the vehicle, the police sought a canine unit and ultimately claimed to have discovered drugs—claims Plaintiff contends were the result of tampering with evidence, which Defendants failed to investigate or rectify.

86. At the time of initiating and continuing the prosecution, Defendants knew or should have known that there was insufficient evidence to establish probable cause for Plaintiff's arrest, charging, and subsequent prosecution. The search of Plaintiff's vehicle, upon which the charges were based, was conducted in violation of the Fourth Amendment, as it was predicated on fabricated claims of the canine alert and improper handling of the search warrant process.

87. Defendants, including the prosecutors from the Lehigh County District Attorney's Office, deliberately or recklessly disregarded this lack of probable cause and proceeded with the prosecution, resulting in Plaintiff being charged, detained, and eventually wrongfully convicted. Despite Plaintiff's objections and attempts to raise concerns about the misconduct during the traffic stop and subsequent search, Defendants ignored these concerns and continued to pursue the charges.

24

88. Plaintiff's prosecution and continued imprisonment were based on fabricated evidence, and Defendants failed in their duty to ensure that Plaintiff's constitutional rights were not violated. The evidence used against Plaintiff was unreliable, and no reasonable prosecutor or law enforcement officer would have pursued the case given the circumstances of the illegal search and the failure to establish probable cause.

89. Further, Defendants engaged in conduct that exhibited malice and deliberate indifference to Plaintiff's constitutional rights. The prosecution of Plaintiff was not merely the result of a negligent or accidental oversight but was the product of malicious intent to secure a conviction by any means necessary. Defendants pursued charges and continued prosecution despite knowing or having reason to know that Plaintiff was innocent or that the evidence against him was fabricated or illegally obtained.

90. As a direct and proximate result of Defendants' malicious prosecution, Plaintiff was wrongfully detained and imprisoned for nearly 5 years, suffering extensive harm. This harm includes, but is not limited to:

- Loss of liberty;

- Emotional distress;

- Mental anguish;

- Physical harm due to incarceration;

- Damage to Plaintiff's reputation and standing in the community;

- Loss of employment and career opportunities;

- Destruction of family relationships and personal life.

25

91. Plaintiff's conviction was ultimately vacated, and all charges against him were dismissed, confirming the lack of probable cause that existed at the time of his arrest and prosecution. The dismissal of the charges demonstrates that Defendants wrongfully subjected Plaintiff to prosecution and imprisonment without proper legal grounds, in violation of his constitutional rights.

92. Defendants, acting individually and in concert with one another, directly and proximately caused the violation of Plaintiff's Fourth Amendment right to be free from unlawful seizure and malicious prosecution through their reckless and willful disregard for the truth and Plaintiff's rights.

93. Defendants' actions were undertaken with deliberate indifference to Plaintiff's constitutional rights and in bad faith, thus entitling Plaintiff to recover compensatory damages, including for emotional distress, pain and suffering, lost wages, and other damages stemming from his wrongful imprisonment and prosecution.

94. In addition, Defendants' conduct was so egregious, malicious, and in reckless disregard of Plaintiff's rights that punitive damages should be awarded to deter such conduct in the future and to punish Defendants for their intentional misconduct.

95. Plaintiff brings this cause of action pursuant to 42 U.S.C. § 1983, which provides a remedy for individuals whose constitutional rights have been violated by state actors. Defendants, acting under the color of state law, deprived Plaintiff of his clearly established Fourth Amendment rights, and as such, are liable under § 1983.

26

## COUNT V

### Supervisory Liability

### (Against All Defendants in Their Individual and Official Capacities)

96. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

97. The "Supervisory Defendants" exercised supervisory authority over the Defendants in the instant matter and their subordinates.

98. As such, each is liable for the Constitutional harms and injuries suffered by Plaintiff which are a direct result of the Supervisory Defendants failure to properly train and / or supervise their subordinate Defendants and the Supervisory Defendants concurrent deliberate indifference to the Constitutional rights of persons like the Plaintiff, with whom the untrained Defendants came into contact.

99. The Supervisory Defendants had personal knowledge of the Constitutional risks associated with their failure to properly train and / or supervise their subordinates, like the Defendants in the instant matter, regarding the Constitutional harms likely to be inflicted by and through their racially discriminatory stops, arrests, and prosecutions, as well as their implementation of searches resulting in the unlawful arrest, prosecution, and imprisonment of citizens like the Plaintiff in the instant matter.

100. Furthermore, these risks were obvious to all Defendants.

27

101. The Supervisory Defendants also each had advance personal knowledge that the past policies, regulations and practices, including those related to training and discipline, all of which they were personally responsible for promulgating, monitoring, enforcing and if needed, modifying, were deficient to the point that they had allowed, if not caused (and were likely to allow and / or cause in the indeterminate future, Constitutional harms precisely like those which were suffered by the Plaintiff here).

102. Further, in their supervising capacities, each of Defendant had the obligations to inter alia: (1) see to it that racial discrimination, including racial profiling did not occur, (2) to review departmental records on a regular basis to identify complaints of racial discrimination to fully investigate such complaints and records reflecting potential racial discrimination and to take appropriate action to discipline, deter and end same, (3) see to it that Troopers and other members base searches upon probable cause, (4) discontinue any prosecution where the rules of criminal procedure pertaining to speedy trials clearly showed that time had expired, (5) properly train subordinates like the Defendants in the instant matter regarding discrimination avoidance and its legal ramifications as well as in the use of, the accurate reporting of, the honest disclosure of, and the obvious legal ramifications of failing to discontinue prosecutions with unlawful searches and seizures as well as violations of rights (6) establish protocols insuring non-discriminatory stops, arrests, and prosecutions, as well as protocols limiting the engagement in unlawful searches and seizures, so as to avoid the false arrest, unlawful search, prosecution and false imprisonment of a citizen such as the Plaintiff, (7) establish protocols which were capable of identifying those instances where discrimination may have occured by requiring such things as full reporting of all circumstances concerning minority stops, arrests, and prosecutions, (8)

28

require such instance of alleged discrimination as well as each instance of prosecuting on the basis of unlawful search and seizure as well as in violation of the right to speedy trial to be fully investigated, reported, and appropriately acted upon as to minimize, if not eliminate, all consequent Constitutional harm to a citizen, (9) to identify and promptly and fully respond to patterns of discriminatory acts and / or patterns of negative unlawful searches and seizures, especially those which are followed by continued prosecution, (10) to promptly and openly discipline those members who are found to have acted discriminatorily as well as those who have engaged in unlawful searches and seizures, especially those which are multiple or intentional, (11) to impose remedial training where needed, (12) to establish, enforce, and discipline violations of appropriate rules, regulations, and policies regarding the foregoing, so as to avoid Constitutional violations of citizens' rights; (13) to create a workable policy where citizens who are subject to violations of their Constitutional rights are encouraged to report those violations in a prompt, simple, effective, and non-retaliatory manner, where they are promptly and fully responded to and, where the citizen is advised of the disciplinary and / or remedial results of their Complaint.

103. The Supervisory Defendants, one and / or all of them, were deliberately indifferent to these known obligations and failed to satisfy them, leading directly and inevitably to the Constitutional harms suffered by the Plaintiff in this matter.

104. The Supervisory Defendants, tolerated, acquiesced in, condoned and ratified a pattern of racial discrimination, as well as, prosecutions based upon unlawful searches and seizures as well as violations of the right to speedy trial which have become a widespread custom.

29

105. The Supervisory Defendants failed to establish, promulgate, recommend, monitor and/or enforce appropriate rules, regulations and / or policies directed at eliminating racially discriminatory pracices as well as avoiding prosecution on unlawful searches of seizures and in violation of the right to speedy trial which they either knew or should have known and failed to ensure that their Constitutional violations here and, in other instances, were the proper subject of investigation, discipline, retrianing and, otherwise remediated, including but the modification of the aforesaid rules, regulations and or policies, as needed.

106. The Supervisory Defendants are liable to the Plaintiff, jointly and severally under well-established Section 1983 supervisory liability jurisprudence because they, inter alia: failed to act in the manner described above.

107. The Supervisory Defendants were the moving force behind the Constitutional violation of their subordinates because their failed conduct, as described herein, exhibited deliberate indifference to the plight of the Plaintiff and all other similarly situated citizens, and their individual and collective Constitutional rights.

108. The Supervisory Defendants' existing custom or practice, without the specific supervisory practices or procedures enunciated herein, created an unreasonable risk that persons like Plaintiff would be a victim of false arrest, false imprisonment, and malicious prosecution under the circumstances presented.

109. The Supervisory Defendants were aware that this unreasonable risk existed prior to the time of the Plaintiff's Constitutional deprivations.

30

110. The Plaintiff's harm described herein, directly resulted from the Supervisory Defendants' failure to employ the subject supervisory practices or procedures.

111. Accordingly, because the Supervisory Defendants established and maintained a policy, practice or custom which directly caused the Constitutional harms alleged by the Plaintiff, because there existed a prior pattern of incidents similar to that which occurred here, and were condoned by the Supervisory Defendants who were deliberately indifferent to the same, because they failed to adopt and / or enforce rules, regulations, policies, discipline and or more training when the need same was was both great and obvious, and, because they acted as the persons in charge who had knowledge of, and acquiesced in their subordinates, Defendants violations, as indicated, they are liable to Plaintiff for the damages claimed herein.

## COUNT VI

### Failure To Intervene

### Against All Defendants in Their Individual and Official Capacities)

112. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

113. It is alleged in that the Defendants should have intervened in the unconstitutional actions engaged in against the Plaintiff initially effected and / or promoted by the other lead Defendants who executed, under oath, bot the Criminal Complaint and Probable Cause Affidavit which contained known falsehoods.

114. Said intervention could reasonable have taken the form of oral communications and / or authoring of a truthful official report concerning the lack of probable cause of the Plaintiff's vehicle stop, arrest, and prosecution.

31

115. Defendant had a like duty to disclose, ab initiate, the lack of probable cause to which the Plaintiff was subjected an unlawful search as result thereof, but did not, even to his superior and / or the independent judiciary.

116. Defendants' failure to intervene given the realistic and reasonable opportunities made available to them substantially increase the risk of, if not induced, the violation of the Plaintiff's Constitutional rights complained of herein.

117. Defendants' failure to intervene renders them jointly and severally liable with Defendants for each and all of the harms and damages supported by Plaintiff as alleged herein, including the Plaintiff's false arrest, false imprisonment and malicious and unlawful prosecution.

## COUNT VII

### Conspiracy To Violate Civil Rights

### (Against All Defendants in Their Individual and Official Capacities)

118. The Plaintiff hereby references and incorporates Paragraphs 1 through 41 as though set forth fully at length.

119. To make out a conspiracy to violate one's civil rights under § 1983, a plaintiff must show "(1) the existence of a conspiracy involving state action; and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy." See Rosembert v. Borough of East

32

Lansdowne, 14 F. Supp. 3d 631, 647 (E.D. Pa. 2014) (quoting Gale v. Storti, 608 F. Supp. 2d 629, 635 (E.D. Pa. 2009)). "A plaintiff must allege that there was an agreement or meeting of the minds to violate his constitutional rights." Id.

120. In the instant matter, a jury can determine via a preponderance of the evidence as follows: The Defendants conspired to deprive the Plaintiff out of their civil rights by fabricating evidence for support to make out an affidavit of probable cause for a search warrant that was overbroad violating plaintiff rights and initiating a criminal prosecution from fabricated evidence without probable cause.

121. The Defendants conspired to prosecute the Plaintiff knowing that Rule 600 protections had expired assuming that the Plaintiff would unlikely be able to do anything about it (and succeed on subsequent proceedings vacating the sentence due to Rule 600 violations)

122. A reasonable jury can determine via a preponderance of the evidence that more likely than not there was mutual agreement between the parties in the instant matter to deprive the Plaintiff out of their civil rights and therefore the Plaintiff brings forth the instant conspiracy claim.

123. Based on the foregoing, the Plaintiff is pleading the instant conspiracy to deprive another of their fundamental civil rights claim for compensatory and punitive damages to be determined in a trial by jury.

33

## JURY TRIAL DEMANDED

124. Plaintiff hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, jointly and severally, and grant him the following relief:

1. **Compensatory Damages** in an amount to be determined/amended at trial, for the physical, emotional, psychological, and economic harm suffered by Plaintiff as a result of Defendants' unlawful conduct, including but not limited to:

    o Physical injuries and mental anguish.

    o Pain and suffering.

    o Loss of liberty and enjoyment of life.

    o Loss of earnings, earning capacity, and other economic damages.

    o Reputational harm.

2. **Punitive Damages** in an amount sufficient to punish Defendants for their willful, malicious, and reckless conduct, and to deter similar conduct in the future.

3. **Attorneys' Fees and Costs** pursuant to 42 U.S.C. § 1988, and any other applicable law, for all reasonable attorneys' fees, costs, and expenses incurred in prosecuting this action.

4. **Pre-Judgment and Post-Judgment Interest** on any award of damages, as permitted by law.

34

5. **Injunctive Relief** prohibiting Defendants from engaging in similar conduct in the future, and requiring them to take corrective actions to prevent such abuses.

6. **Any Other Relief** that the Court deems just, proper, and equitable under the circumstances, including such additional or alternative relief as the interests of justice may require.

DATED: September 30, 2024                    Respectfully Submitted,

Antoine Poteat
435 Merchant Walk Square
Suite 300-541
Charlottesville, Va 22901
*Poteatlaw@gmail.com*
*(434)-424-3266*
*Pro Se*

# EXHIBIT "A"

| SP 7-0050 (12-2011) **PENNSYLVANIA STATE POLICE** **INCIDENT REPORT** UCR | REPORT TYPE ☐ INITIAL ☐ CONTINUATION ☐ SUPPLEMENTAL | DATE(S)/DAY(S) OF INCIDENT 02/20/13 / WED | INCIDENT NO. M05-14▇ |
|---|---|---|---|
| | | TIME(S) OF INCIDENT 1333 Hours | JUVENILE ☐ / DOMESTIC VIOLENCE ☐ |

**ATTACHMENTS:**
☐ INTOXICATION WORK SHEET
☐ FELONY CRIMES AGAINST THE PERSON
☐ VICTIM/WITNESS ASSISTANCE GUIDE RECEIPT
☒ PROPERTY RECORD
☐ OTHER
☐ MISSING PERSON CHECKLIST
☐ STATEMENT FORM(S)
☐ RIGHTS WARNING AND WAIVER
☒ PRESS RELEASE

DISP.: ☒ CLEARED BY ARREST ☐ UNFOUNDED ☐ EXCEPTIONALLY CLEARED- DATE
A ☐ DEATH OF ACTOR          D ☐ VICTIM REFUSED TO COOPERATE
B ☐ PROSECUTION DECLINED    E ☐ JUVENILE/NO CUSTODY
C ☐ EXTRADITION DENIED      N ☐ NOT APPLICABLE     ☐ MULTIPLE CLEAR-UP

| 1. ORI/STATION PAPSP2900/Fogelsville | 2. LOCATION I-78 west at W. Rock Rd. | | ZONE 30 |
|---|---|---|---|
| 3. CITY/TWP/BORO Salisbury Twp. | CODE 101 | 4. COUNTY Lehigh | CODE 39 |

| 5. VICTIM NO. 1 NAME Society | ADDRESS | HOME TELEPHONE NO. - |
|---|---|---|
| 6. EMPLOYER NAME | ADDRESS | WORK TELEPHONE NO. - |

| 7. RACE/ETHY. / | 8. SEX | 9. DOB | 10. AGE | 11. RES. STAT. R | 12. REL. TO OFFENDER(S) RU | 13. TYPE INJ. | 14. CIRC. 1 | 15. CON. TO OFF. | 16. TYPE VICT. S | 17. OFF. NO. REL. 1 |
|---|---|---|---|---|---|---|---|---|---|---|

| 5. VICTIM NO. 2 NAME | ADDRESS | HOME TELEPHONE NO. |
|---|---|---|
| 6. EMPLOYER NAME | ADDRESS | WORK TELEPHONE NO. - |

| 7. RACE/ETHY. / | 8. SEX | 9. DOB | 10. AGE | 11. RES. STAT. | 12. REL. TO OFFENDER(S) | 13. TYPE INJ. | 14. CIRC. | 15. CON. TO OFF. | 16. TYPE VICT. | 17. OFF. NO. REL. |
|---|---|---|---|---|---|---|---|---|---|---|

**18. OFFENSE**

SIMPLE ASSAULT   CRIMINAL MISCHIEF   TERRORISTIC THREATS   THEFT BY UNLAWFUL TAKING OR DISPOSITION
BURGLARY   MISSING PERSON   HARASSMENT   01 CONTROLLED SUB., DRUG, DEVICE & COSMETIC ACT
ESCAPE   AGGRAVATED ASSAULT   ARSON AND RELATED OFF.   DRIVING UNDER INFLUENCE OF ALCOHOL/CONTROLLED SUB.
OTHER

| 19. NO. | 20. STATUTE | 21. SECTION NO. | 22. UCR | 23. HATE/BIAS | 24. OFF. USED | 25. OFF. LOC. | 26. ETY. METH | NO. | 27. ACTY. TYPE | 28. WPN/FC | A |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 01 | CS | 780-113 | 18A | 88 | D | 13 | | | P | | |
| | | | | | | | | | | J | |

| 29. VEHICLE: | ☐ STOLEN | ☐ RECOVERED | ☒ SUSPECT | ☐ OTHER | | | | |
|---|---|---|---|---|---|---|---|---|
| 30. LIC WXH4142 | 31. LIS VA | 32. LIY 06/13 | 33. LIT PC | 34. VIN 4T1BF1FK5CU587892 | | 35. VYR 2012 | 36. VMA Toyota | |
| 37. VMO Camry | 38. VST SDN | 39. VCO Gray | 40. DOT | 41. MIS | | | | 42. MILEAGE |

| 43. NO. | 44. PROPERTY DESCRIPTION | 45. PRO. DESC. | 46. TYPE LOSS | 47. QTY. | 48. VALUE | 49. DATE REC. |
|---|---|---|---|---|---|---|
| | See Attached Narrative | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| 50. | | YES | NO | | YES | NO |
|---|---|---|---|---|---|---|
| | INCIDENT PROMPTLY REPORTED BY VICTIM | ☒ | ☐ | NEIGHBORHOOD/AREA CANVAS | ☐ | ☒ |
| | CAN A SUSPECT BE NAMED | ☒ | ☐ | ANY WITNESSES LOCATED | ☐ | ☒ |
| | EVIDENCE AT SCENE TO LINK OFFENDER | ☒ | ☐ | OFFENDER INFORMATION AVAILABLE | ☒ | ☐ |
| | CAN A VEHICLE BE IDENTIFIED WITH CRIME | ☒ | ☐ | IDENTIFIABLE/TRACEABLE PROPERTY | ☒ | ☐ |
| | SCENE PROCESSED FOR LATENT PRINTS | ☐ | ☒ | UNIQUE/UNUSUAL METHOD OF OPERATION | ☐ | ☒ |
| | LATENT PRINTS DISCOVERED | ☐ | ☒ | THOUGHT TO BE CONNECTED WITH KNOWN CRIME PATTERN | ☐ | ☒ |
| | SCENE CHECKED FOR WITNESSES | ☐ | ☒ | CLEAN MESSAGE/NCIC ENTRY | | |

| 61. DATE/TIME OFFICER ARRIVED 02/20/13 / 1333 | 62. DATE/TIME OFFICER DEPARTED 02/20/13 / 2100 | 63. DATE OF REPORT 02/26/13 | 64. PART ONE ONLY ☐ | 65. LCE NOTIFIED ☐ YES ☒ NO | 66. SUPV. UNIT/BADGE NO. |
|---|---|---|---|---|---|
| 67. OFFICER'S NAME/SIGNATURE Tpr. Gerald P. LYDON | | | BADGE NO. 1072 | 68. INVES. RECM. ☒ CONT. ☐ TERM. | 69. ☐ CONCUR ☐ NONCONCUR / 60. PAGE 1 |

STATION

| SP 7-0050A (12-2011) **PENNSYLVANIA STATE POLICE** **INCIDENT REPORT – PART II** | REPORT TYPE ☒ INITIAL ☐ CONTINUATION ☐ SUPPLEMENTAL | DATE(S)/DAY(S) OF INCIDENT 02/20/13 / WED | | INCIDENT NO. M05-14▓ |
|---|---|---|---|---|
| | | TIME(S) OF INCIDENT 1333 Hours | JUVENILE ☐ | DOMESTIC VIOLENCE ☐ |

**ATTACHMENTS:**
- ☐ INTOXICATION WORK SHEET
- ☐ FELONY CRIMES AGAINST THE PERSON
- ☐ VICTIM/WITNESS ASSISTANCE GUIDE RECEIPT
- ☒ PROPERTY RECORD
- ☐ OTHER
- ☐ MISSING PERSON CHECKLIST
- ☐ STATEMENT FORM(S)
- ☐ RIGHTS WARNING AND WAIVER
- ☒ PRESS RELEASE

DISP.: ☒ CLEARED BY ARREST ☐ UNFOUNDED ☐ EXCEPTIONALLY CLEARED–DATE
- A ☐ DEATH OF ACTOR
- B ☐ PROSECUTION DECLINED
- C ☐ EXTRADITION DENIED
- D ☐ VICTIM REFUSED TO COOPERATE
- E ☐ JUVENILE/NO CUSTODY
- N ☐ NOT APPLICABLE
- ☐ MULTIPLE CLEAR-UP

| 61. ORI/STATION PAPSP2900/Fogelsville | 62. DATE OF REPORT 02/26/13 | 63. OFFENSE C.S.D.D.C.A. |
|---|---|---|

| 84. ☒ ACCUSED ☐ SUSPECT | 65. OFFENDER NO. 1 NAME Antoine Moses POTEAT | | | | 66. ADDRESS ▓▓▓▓▓ | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 67. HOME TELEPHONE NO. 347-▓▓▓ | 68. NICKNAMES/ALIAS | | | 69. HEIGHT 506 | 70. WEIGHT 135 | 71. HAIR BLK | 72. EYES BRO | 73. MARITAL STATUS Unknown | A |
| 74. RACE/ETHY. B / N | 75. SEX M | 76. DOB 06/07/89 | 77. AGE 23 | 78. RES. STAT. N | 79. OFF. CODE 18F | 80. TYPE ARREST S | 81. DATE OF ARREST 02/26/13 | 82. ARMED WITH 01 | 83. OTN/NON-TRAFFIC CIT. NO. T2▓▓▓ STATE VA |
| 84. FINGERPRINTED ☐ YES ☒ NO | 85. PHOTOGRAPHED ☐ YES ☒ NO | 86. DISP. UNDER 18 | 87. VIC. NO. REL. 1 | 88. SSN ▓▓▓ | | 89. OLN A▓▓ | | | 92. MISC. NO. |
| 90. BIRTHPLACE New York | | 91. EMPLOYER/SCHOOL Unknown | | | | | | | |

| 84. ☐ ACCUSED ☐ SUSPECT | 65. OFFENDER NO. 2 NAME | | | | 66. ADDRESS | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 67. HOME TELEPHONE NO. | 68. NICKNAMES/ALIAS | | | 69. HEIGHT | 70. WEIGHT | 71. HAIR | 72. EYES | 73. MARITAL STATUS | A |
| 74. RACE/ETHY. / | 75. SEX | 76. DOB | 77. AGE | 78. RES. STAT. | 79. OFF. CODE | 80. TYPE ARREST | 81. DATE OF ARREST | 82. ARMED WITH | 83. OTN/NON-TRAFFIC CIT. NO. STATE |
| 84. FINGERPRINTED ☐ YES ☐ NO | 85. PHOTOGRAPHED ☐ YES ☐ NO | 86. DISP. UNDER 18 | 87. VIC. NO. REL. | 88. SSN | | 89. OLN | | | 92. MISC. NO. |
| 90. BIRTHPLACE | | 91. EMPLOYER/SCHOOL | | | | | | | |

**DOMESTIC VIOLENCE/PFA CHECKLIST** | 93. PREVIOUS EVENTS ☐ YES ☒ NO (EXPLAIN IN NARRATIVE)

| 94. COMPLAINANT NAME (LAST, FIRST, MIDDLE) | VICTIM IS COMPLAINANT ☐ | R/S/A |
|---|---|---|
| 95. ADDRESS | | TELEPHONE NO. - |
| 96. CONTACT PERSON NAME (LAST, FIRST, MIDDLE) | VICTIM'S TEMPORARY ADDRESS ☐ | R/S/A |
| 97. ADDRESS | | TELEPHONE NO. - |

98. VICTIM'S INJURIES (OBSERVED)

99. VICTIM'S INJURIES (REPORTED)

| 100. INJURIES PHOTOGRAPHED ☐ YES ☐ NO | 101. VICTIM INTERVIEWED ☐ YES ☐ NO | 102. STATEMENT ☐ SIGNED WRITTEN ☐ TAPED | 103. VICTIM IS ALSO AN ACTOR (EXPLAIN IN NARRATIVE) ☐ YES ☐ NO ☐ ARRESTED |
|---|---|---|---|
| 104. ARRAIGNED ☐ YES ☐ NO DATE/TIME | 105. VICTIM INFORMED OF ARREST/BAIL ☐ YES ☐ NO DATE/TIME | | 106. WEAPONS USED/THREATENED (INCLUDE DETAILS IN NARRATIVE) ☐ YES ☐ NO |

107. LIST ALL CHILDREN'S NAMES, R/S/A, ADDRESS(ES), TELEPHONE NUMBER(S), AND TEMPORARY ADDRESS(ES) (LIST ADDITIONAL CHILDREN IN NARRATIVE).

108. ACTOR'S INJURIES (OBSERVED)

109. ACTOR'S INJURIES (REPORTED)

| 110. INJURIES PHOTOGRAPHED ☐ YES ☐ NO | 111. ACTOR INTERVIEWED ☐ YES ☐ NO | 112. STATEMENT ☐ SIGNED WRITTEN ☐ TAPED | 113. ACTOR IS ALSO A VICTIM (EXPLAIN IN NARRATIVE) ☐ YES ☐ NO ☐ ARRESTED |
|---|---|---|---|
| 114. ARRAIGNED ☐ YES ☐ NO DATE/TIME | 115. VICTIM INFORMED OF ARREST/BAIL ☐ YES ☐ NO DATE/TIME | | 116. WEAPONS USED/THREATENED (INCLUDE DETAILS IN NARRATIVE) ☐ YES ☐ NO |

| 117. OFFICER'S NAME/SIGNATURE Tpr. Gerald P. LYDON | BADGE NO. 11072 | 118. INVES. RECM. ☒ CONT. ☐ TERM. | 119. SUPV. INIT./BADGE NO. ▓ 7304 | 120. ☐ CONCUR ☐ NONCONCUR | 121. PAGE 2 |
|---|---|---|---|---|---|

STATION

| SP 7-0051 (12-2011) | REPORT TYPE | DATE(S)/DAY(S) OF INCIDENT | INCIDENT NO. |
|---|---|---|---|
| **PENNSYLVANIA STATE POLICE** | ☒ INCIDENT | 02/20/13 / WED | M05-14⬛ |
| CONTINUATION SHEET ☒ | ☐ OTHER | | |
| SUPPLEMENTAL INVESTIGATION REPORT ☐ | | TIME(S) OF INCIDENT | JUVENILE | DOMESTIC VIOLENCE |
| | | 1333 Hours | ☐ | ☐ |

**ATTACHMENTS:**
- ☐ INTOXICATION WORK SHEET
- ☐ FELONY CRIMES AGAINST THE PERSON
- ☐ VICTIM/WITNESS ASSISTANCE GUIDE RECEIPT
- ☒ PROPERTY RECORD
- ☐ OTHER
- ☐ MISSING PERSON CHECKLIST
- ☐ STATEMENT FORM(S)
- ☐ RIGHTS WARNING AND WAIVER
- ☒ PRESS RELEASE

**DISP.:** ☒ CLEARED BY ARREST ☐ UNFOUNDED ☐ EXCEPTIONALLY CLEARED- DATE
- A ☐ DEATH OF ACTOR
- B ☐ PROSECUTION DECLINED
- C ☐ EXTRADITION DENIED
- D ☐ VICTIM REFUSED TO COOPERATE
- E ☐ JUVENILE/NO CUSTODY
- N ☐ NOT APPLICABLE
- ☐ MULTIPLE CLEAR-UP

| 1. ORI/STATION | 2. DATE OF REPORT |
|---|---|
| PAPSP2900/Fogelsville | 02/26/13 |

| 3. OFFENSE | 4. VICTIM |
|---|---|
| C.S.D.D.C.A. | Society |

**5. NARRATIVE**

**COORIDNATES:**
- Latitude:        40 33:51.47
- Longitude:      -75 28:11.15

**REASON FOR STOP:**
PAVC 3310 – Following Too Closely.

**INDICATORS OBSERVED:**
Source origin/destination (New York City to Charlottesville, VA); inconsistencies in operator's story; driving a rental vehicle; operator appeared overly nervous while speaking with me; multiple scent masking agents in plain view (air fresheners, perfume and laundry sheets) and multiple cell phones observed in plain view. – ODOR OF MARIJUANA

**OCCUPANT INFORMATION:**
Operator- Antoine Moses POTEAT B/N-M-23 DOB-06/07/89, ⬛⬛⬛ Charlottesville, VA 22901, ⬛⬛⬛

**VEHICLE INFORMATION:**
Color: Gray  Year:2012  Make: Toyota  Model: Camry  Type: 4D  Registration:WXH4142  State:VA  Owner:EAN Holdings

**ORIGIN/DESTINATION/TRIP PURPOSE:**
Operator related that he was coming from Allentown City (operator was first observed traveling westbound in area of Northampton Co. Line). Related he was on his way back to Charlottesville, VA. POTEAT later changed his story and related he just came from shopping but couldn't tell me the name of the mall.

**TYPE OF SEARCH:**
Search Warrant.

**AMOUNT/TYPE OF CONTRABAND FOUND/LOCATION:**
Approximately 1 kilogram of cocaine and approximately 5 ounces of marijuana located in the center console in a natural void underneath the gear shifter.

**HIDDEN COMPARTMENTS LOCATED:**
A natural void underneath the gear shifter in the center console.

**CANINE UNIT UTILIZED:**
Tpr. Chad LABOUR and K-9 'Dano'.

**CRIMINAL HISTORY:**
03/2010- PWI, Marijuana; 09/2011-Possession of Marijuana.

**PACIC CHECK:**
Multiple drug arrests.

**CONTINUED**

| 6. OFFICER'S NAME/SIGNATURE | BADGE NO. | 7. INVEST. RECM. | 8. SDPV. UNIT/BADGE NO. | 9. ☒ CONCUR | 10. PAGE |
|---|---|---|---|---|---|
| Tpr. Gerald P. LYDON | 11072 | ☒ CONT. ☐ TERM. | 57304 | ☐ NONCONCUR | 3 |

☒ STATION    ☐ DEPARTMENT HEADQUARTERS

| SP 7-0051 (12-2011) | REPORT TYPE | DATE(S)/DAY(S) OF INCIDENT | | INCIDENT NO. |
|---|---|---|---|---|
| **PENNSYLVANIA STATE POLICE** | ☒ INCIDENT | 02/20/13 / WED | | M05-1▬ |
| CONTINUATION SHEET ☒ | ☐ OTHER | TIME(S) OF INCIDENT | JUVENILE | DOMESTIC VIOLENCE |
| SUPPLEMENTAL INVESTIGATION REPORT ☐ | | 1333 Hours | ☐ | ☐ |

| ATTACHMENTS: | | DISP.: ☒ CLEARED BY ARREST  ☐ UNFOUNDED  ☐ EXCEPTIONALLY CLEARED- DATE |
|---|---|---|
| ☐ INTOXICATION WORK SHEET | ☐ MISSING PERSON CHECKLIST | A ☐ DEATH OF ACTOR ...... D ☐ VICTIM REFUSED TO COOPERATE |
| ☐ FELONY CRIMES AGAINST THE PERSON | ☐ STATEMENT FORM(S) | |
| ☐ VICTIM/WITNESS ASSISTANCE GUIDE RECEIPT | ☐ RIGHTS WARNING AND WAIVER | B ☐ PROSECUTION DECLINED  E ☐ JUVENILE/NO CUSTODY |
| ☐ PROPERTY RECORD | ☐ PRESS RELEASE | |
| ☐ OTHER | | C ☐ EXTRADITION DENIED  N ☐ NOT APPLICABLE  ☐ MULTIPLE CLEAR-UP |

| 1. OR/STATION: | 2. DATE OF REPORT |
|---|---|
| PAPSP2900/Fogelsville | 02/26/13 |

| 3. OFFENSE | 4. VICTIM |
|---|---|
| C.S.D.D.C.A. | Society |

**5. NARRATIVE**

**LOCATION:**
- Location of violation(s): - I-78 west in the area of W. Rock Rd., Salisbury Twp., Lehigh Co.
- Location of stop:          - I-78 west at mile marker 58.4., Allentown City, Lehigh Co.

**SYNOPSIS/DETAILS:**
- On above date and time I observed a gray 2012 Toyota Camry Sedan bearing VA Registration – WXH4142 traveling west on I-78 west in the area of W. Rock Rd. The aforementioned vehicle was following a tractor trailer at a distance of approximately one vehicle length. The vehicle was traveling approximately 65 MPH. This was closer than was reasonable and prudent for existing conditions. I activated my emergency lights and sirens and conducted a traffic stop on the vehicle. Upon my initial approach I made contact with POTEAT who was operating the vehicle. He was identified by VA DL # A▬▬ I advised POTEAT that the traffic stop was being audibly and visually recorded and the reason he was being stopped.

- While speaking to POTEAT I observed several indicators of criminal activity. He had numerous air fresheners in original packaging on the passengers seat. There were several more hanging from the turn signal lever on the steering column of the vehicle. There was also a bottle of perfume and an open pack of laundry sheets on the passenger seat. I observed 2 cell phones in plain view in the vehicle (1 iPhone and 1 Trac Phone). The phones rang numerous times throughout the course of the stop. I was also able to smell an odor of marijuana emitting from the vehicle despite all the scent masking agents. Through my training and experience I know the above are indicators of the transportation of narcotics.

- At this point POTEAT was interviewed further (See Below).

- Following the interview with POTEAT and observing the above indicators of criminal activity I prepared a warning notice for POTEAT. I also contacted PSP K-9 Unit 52 (Tpr. Chad LABOUR and 'Dano') and requested they respond to the scene.

- The warning notice (W1ZR7N43DD3) was issued to POTEAT and he was advised he was free to leave. As POTEAT walked back to his vehicle I asked him if I could ask him a few more questions. He willingly consented. I asked follow up questions and the asked if he had anything illegal in the vehicle. At this point POTEAT became confrontational and stated "no". I requested permission to search his vehicle. He denied a consent search and asked if he was free to leave. I advised him he was free to go but I was going to run a K-9 on his vehicle.

- At approx. 1410 hours, TFC Chad LABOUR and K-9 'Dano' conducted an exterior check of the suspect's vehicle. I was informed by TFC LABOUR that 'Dano' alerted on the vehicle. See attached Supplemental Investigation Report by TFC LABOUR.

- Based on the above information the vehicle was towed by Sacks Towing to PSP Fogelsville Barracks pending approval and service of a search warrant. Tpr. LABOUR followed the vehicle back to PSP Fogelsville Barracks where it was entered into evidence under property number M5-9929 (pending service of the search warrant). POTEAT was provided a courtesy transport to PSP Fogelsville Barracks by Tpr. Nicholas GOLDSMITH where he waited in the lobby. Shortly after arriving on station POTEAT departed on foot. At approximately 1545 I received approval for a search warrant from ADA Heather GALLAGHER via e-mail.

**CONTINUED...**

| 6. OFFICER'S NAME/SIGNATURE | BADGE NO. | 7. INVEST. RECM. | 8. SUPV. INIT./BADGE NO. | 9. ☒ CONCUR | 10. PAGE |
|---|---|---|---|---|---|
| Tpr. Gerald P. LYDON | 11072 | ☒ CONT. ☐ TERM | 67304 | ☐ NONCONCUR | 4 |

☒ STATION    ☐ DEPARTMENT HEADQUARTERS

| SP 7-0051 (12-2011) | REPORT TYPE | DATE(S)/DAY(S) OF INCIDENT | | INCIDENT NO. |
|---|---|---|---|---|
| **PENNSYLVANIA STATE POLICE** | ☒ INCIDENT | 02/20/13 / WED | | M05-14█████ |
| CONTINUATION SHEET ☐ | ☐ OTHER | TIME(S) OF INCIDENT | JUVENILE | DOMESTIC VIOLENCE |
| SUPPLEMENTAL INVESTIGATION REPORT ☐ | | 1333 Hours | ☐ | ☐ |

**ATTACHMENTS:**

| | | DISP.: ☒ CLEARED BY ARREST ☐ UNFOUNDED ☐ EXCEPTIONALLY CLEARED- DATE |
|---|---|---|
| ☐ INTOXICATION WORK SHEET | ☐ MISSING PERSON CHECKLIST | A ☐ DEATH OF ACTOR    D ☐ VICTIM REFUSED TO COOPERATE |
| ☐ FELONY CRIMES AGAINST THE PERSON | ☐ STATEMENT FORM(S) | |
| ☐ VICTIM/WITNESS ASSISTANCE GUIDE RECEIPT | ☐ RIGHTS WARNING AND WAIVER | B ☐ PROSECUTION DECLINED    E ☐ JUVENILE/NO CUSTODY |
| ☐ PROPERTY RECORD | ☐ PRESS RELEASE | C ☐ EXTRADITION DENIED    N ☐ NOT APPLICABLE    ☐ MULTIPLE CLEAR-UP |
| ☐ OTHER | | |

| 1. OR/STATION | 2. DATE OF REPORT |
|---|---|
| PAPSP2900/Fogelsville | 02/26/13 |

| 3. OFFENSE | 4. VICTIM |
|---|---|
| C.S.D.D.C.A. | Society |

**136. NARRATIVE**

**SYNOPSIS/DETAILS (Continued):**

- At approximately 1635 hours the search warrant was approved and signed by Magistrate David M. HOWELLS Jr.

- At approximately 1705 hours the search warrant was served on the suspect vehicle. Troopers Justin JULIUS and LABOUR assisted in the service of the warrant. During a systematic search of the vehicle the following items were located in the vehicle and seized:
    1. Two clear plastic bags containing suspected cocaine (located in center console under gear shifter panel, combined field weight of approximately 1100 grams).
    2. Two clear vacuum sealed bags containing suspected marijuana (located in center console under gear shifter panel, combined field weight of approximately 5 ounces).
    3. Receipt from Versace store in Center Valley, NY dated 02/20/13 (located in shopping bag in trunk of vehicle).
    4. New York City Parking Ticket #773222540-5 dated 02/18/13 (located in center console of vehicle)
    5. Samsung SCH-U365 Cell Phone located in center console of vehicle.
    6. Black iPhone 5 located on driver seat of vehicle.

- A copy of the search warrant and receipt of seized property were left in the vehicle following the search. The original search warrant was returned to Magistrate HOWELLS. A third copy is attached to this report.

- These items placed into evidence under property number M5-9929(A). On 02/26/13 a request for forensic analysis was sent to PSP Bethlehem lab to identify and weigh items 1 & 2. Prior to entering the items a NIK Test was conducted on items 1 and 2. At 2000 hours a sample from item 2 was placed in Test Kit E and tested positive for marijuana. At 2005 hours a sample from item 1 was placed in Test Kit G and tested positive for cocaine.

- On 02/21/13 personnel from Enterprise Rent-a-Car (Emmaus, PA) were notified of the incident and advised that the car could be picked up by a representative from their company after the tow bill had been paid.

- Sgt. KEMP (BCI) was notified of this investigation the evening of the stop by Tpr. LABOUR.

- On 02/22/13 ADA Bethany ZAMPOGNA approved the attached charges for POTEAT. On 02/26/13 charges were filed in District Court 31-1-08. (See attached Criminal Complaint)

**INTERVIEWS:**
Antoine Moses POTEAT

- On 02/20/13 at approximately 1335 hours POTEAT was interviewed at the scene of the incident. He related he was coming from Allentown. I began to advise POTEAT of why he was being stopped and before I could finish he stated "it was because I was following too close to him". POTEAT continued to present his driver's license and vehicle information. He advised the vehicle was a rental but he did not have the rental contract on him. When I asked again where he was coming from since his original story did not coincide with where he was traveling he stated that he went shopping. When asked where he was shopping he was unable to provide the name of the mall or what town it was in.
- I issued POTEAT a warning notice for following another vehicle to closely and ended the stop. When POTEAT went back to his vehicle I asked him if I could ask him another question. He willing consented. At this point I asked POTEAT if there was anything illegal in the vehicle. He stated there was not. He became confrontational and insisted he wished to leave. I advised him he was free to go and would be given a ride off the interstated but his vehicle was not free to go. He kept repeating "you can't do this".

**CONTINUED...**

| 6. OFFICER'S NAME/SIGNATURE | BADGE NO. | 7. INVEST./RECM. | 8. SUPV. INIT./BADGE NO. | 9. ☒ CONCUR | 10. PAGE |
|---|---|---|---|---|---|
| Tpr. Gerald P. LYDON | 11072 | ☒ CONT. ☐ TERM | | ☐ NONCONCUR | 5 |

☒ STATION    ☐ DEPARTMENT HEADQUARTERS

| SP 7-0081 (12-2011) | REPORT TYPE | DATE(S)/DAY(S) OF INCIDENT | | INCIDENT NO. |
|---|---|---|---|---|
| **PENNSYLVANIA STATE POLICE** | ☒ INCIDENT | 02/20/13 / WED | | M05-14 |
| CONTINUATION SHEET ☐ | ☐ OTHER | TIME(S) OF INCIDENT | JUVENILE | DOMESTIC VIOLENCE |
| SUPPLEMENTAL INVESTIGATION REPORT ☒ | | 1333 Hours | ☐ | ☐ |

**ATTACHMENTS:**

| ☐ INTOXICATION WORK SHEET | ☐ MISSING PERSON CHECKLIST | DISP.: ☒ CLEARED BY ARREST ☐ UNFOUNDED ☐ EXCEPTIONALLY CLEARED- DATE |
|---|---|---|
| ☐ FELONY CRIMES AGAINST THE PERSON | ☐ STATEMENT FORM(S) | A ☐ DEATH OF ACTOR    D ☐ VICTIM REFUSED TO COOPERATE |
| ☐ VICTIM/WITNESS ASSISTANCE GUIDE RECEIPT | ☐ RIGHTS WARNING AND WAIVER | B ☐ PROSECUTION DECLINED    E ☐ JUVENILE/NO CUSTODY |
| ☐ PROPERTY RECORD | ☐ PRESS RELEASE | C ☐ EXTRADITION DENIED    N ☐ NOT APPLICABLE    ☐ MULTIPLE CLEAR-UP |
| ☐ OTHER | | |

| 1. ORI/STATION | 2. DATE OF REPORT |
|---|---|
| PAPSP2900/Fogelsville | 02/26/13 |

| 3. OFFENSE | 4. VICTIM |
|---|---|
| C.S.D.D.C.A. | Society |

**5. NARRATIVE**

**ATTACHMENTS:**
1. Criminal History for POTEAT.
2. Statistical Narcotic Report.
3. PaCIC Biographical Data Sheet for POTEAT.
4. Criminal Complaint.
5. Warning Notice – W1ZR7N43DD3.
6. Property Records M5-9929 and M5-9929(A).
7. Copy of search warrant served on suspect vehicle.

**CONCLUSION:**
- I respectfully request this investigation remain open pending disposition of court.

| 6. OFFICER'S NAME/SIGNATURE | BADGE NO. | 7. INVEST. RECM. | 8. SUPV. INIT./BADGE NO. | 9. ☒ CONCUR | 10. PAGE |
|---|---|---|---|---|---|
| Tpr. Gerald P. LYDON | 11072 | ☒ CONT. ☐ TERM. | 7304 | ☐ NONCONCUR | 6 |

☒ STATION    ☐ DEPARTMENT HEADQUARTERS

EXHIBIT "B"





# Police Warning Notice

Issued Date 02/20/2013    Issued Time 13:33

| | | Offense - Other . | | |
|---|---|---|---|---|
| **Reason:** TRAFFIC VIOLATION | **Nature of Offense** FOLLOWING TOO CLOSELY | | **Sticker Year** | **Sticker Month** |
| **Item Requiring Repair, Replacement or Re-Inspection** | | | **Suffix** | **Gender** M |

| **Issued To** DRIVER | **First Name** ANTOINE | **Middle Name** MOSES | **Last Name** POTEAT | | **State** VA | **Zip Code** 22901 |
|---|---|---|---|---|---|---|
| **Address Street** 2301 SHELBY DR | | **City** CHARLOTTESVILLE (USA) | | | | |

| **Date of Birth** 06/07/1989 | **License Number** A61206352 | **License State** VA | **Lic. Exp. Date** 06/07/2020 | **Class** C | **Restriction** | **CDL NO** | **Primary Phone Number** | **2nd Telephone Number** | |
|---|---|---|---|---|---|---|---|---|---|

| **Owner /Leasee or Carrier Name** EAN HOLDINGS LLC | **Owner First Name** | **Owner Middle Name** | **Suffix** |
|---|---|---|---|

| | **City** TULSA (USA) | **State** OK | **Zip Code** 74117 |
|---|---|---|---|

| **Owner Address Street** 6929 N LAKEWOOD AVE STE 100 | | **Vehicle Color** GRAY |
|---|---|---|

| **Vehicle Model** | **Vehicle Type** SEDAN, 4-DOOR, AUTO | |
|---|---|---|

| **Vehicle Yr.** 2012 | **Plate No.** WXH4142 | **State** VA | **Vehicle Make** TOYOTA |
|---|---|---|---|

| **VIN** 4T1BF1FK5CU587892 | **Location** ON I-78 W AT ITS INTERSECTION WITH W ROCK RD | **Related Citation/Warning #** | **Zone** 30 |
|---|---|---|---|

| **Comm. Veh.** NO | **Hazmat** | **County** LEHIGH | **Municipality** SALISBURY TWP | |
|---|---|---|---|---|

**Comments**

| | **Badge Number** 11072 | **Agency** PA STATE POLICE - FOGELSVILLE | PAPSP2900 |
|---|---|---|---|
| **Police Officer** TPR    LYDON | | | |

○ No Further Action Required

○ You must correct the equipment problem(s) shown above or produce the above document and have any Trooper/Police Officer verify that it has been corrected or document was produced. Verification must be done within 5 days of the date of this warning. Mail or deliver the bottom section, properly verified to insure cancellation of the complaint. Failure to do so will bring penalties as prescribed by law.

○ You must ... ... ... ... inspected by an official State Inspection Station. The Inspection Station will certify that it inspected this vehicle by filling out the section below. Certification must be ... ... within 5 days of this warning. Mail or deliver the bottom section, properly certified to insure cancellation of the complaint. Failure to comply will bring penalties as prescribed by law.

*Please make a copy of this entire document, for your records,  if having to return lower portion.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

*Cut across dotted line after Certification/Verification completed*

## Certification - Official Inspection Station

... ...bed herein has been corrected and/or repaired and restored to a safe operating condition and upon this date ... ... a Vehicle Code and Department of Transportation's regulations.

○ I certify that the equipme... complies with the requir...

Name of Official Ins.

Address

Inspection Station No.    Phone No.    Date    Time

Cert. Mech. No.

Signed

*Misstatement of fact may result in suspension of your inspection privileges

## Verification by Trooper/Officer

○ I verify that the document has been produced or faulty equipment has been corrected.

Signature of Trooper/Officer    Badge No.

Print Last Name    Date

Agency Name

Address    Phone No.

Phone No.

Policy No.

**EXHIBIT "C"**

# Commonwealth of Pennsylvania

## COUNTY OF LEHIGH



# APPLICATION FOR
# SEARCH WARRANT
## AND AUTHORIZATION

| Docket Number<br>(Issuing Authority): MD-21-13 | Police Incident<br>Number: M05-1▒▒▒▒ | Warrant Control<br>Number: |
|---|---|---|

| Tpr. Gerald LYDON | PSP-Troop M, Fogelsville | 610-395-1438 | 02/20/13 |
|---|---|---|---|
| *AFFIANT NAME* | *AGENCY* | *PHONE NUMBER* | *DATE OF APPLICATION* |

**IDENTIFY ITEMS TO BE SEARCHED FOR AND SEIZED** *(Be as specific as possible):*

Illegally possessed firearms / Prohibited offensive weapons, Drugs / Drug Paraphernalia, Money, Illegally possessed or Stolen property and Instruments / Fruits of crime, any items obtained illegally.

**SPECIFIC DESCRIPTION OF PREMISES AND/OR PERSON TO BE SEARCHED** *(Street and No., Apt. No., Vehicle, Safe Deposit Box, etc.):*

A gray 2012 Toyota Camry sedan bearing VA Reg-WXH4142 (VIN-4T1BF1FK5CU587892).

**NAME OF OWNER, OCCUPANT OR POSSESSOR OF SAID PREMISES TO BE SEARCHED** *(If proper name is unknown, give alias and/or description):*

Antoine Moses POTEAT▒▒▒▒▒▒▒▒▒▒ Charlottesville, VA 22901)

| **VIOLATION OF** *(Describe conduct or specify statute):*<br>C.S.D.D.C.A. Title 35 | DATE(S) OF VIOLATION:<br>02/20/13 |
|---|---|

**x Warrant Application Approved by District Attorney – DA File No.** ADA. HEATHER GALLAGHER
*(If DA approval required per Pa.R.Crim.P. 202A with assigned File No. per Pa.R.Crim.P. 507)*

☐ **Additional Pages Attached (Other than Affidavit of Probable Cause)**

x **Probable Cause Affidavit(s) MUST be attached (unless sealed below)** *Total number of pages: 2*

TOTAL NUMBER OF PAGES IS SUM OF ALL APPLICATION, PROBABLE CAUSE AND CONTINUATION PAGES EVEN IF ANY OF THE PAGES ARE SEALED

The below named Affiant, being duly sworn (or affirmed) before the Issuing Authority according to law, deposes and says that there is probable cause to believe that certain property is evidence of or the fruit of a crime or is contraband or is unlawfully possessed or is otherwise subject to seizure, and is located at the particular premises or in the possession of the particular person as described above.

| *Signature of Affiant* | PA State Police Troop M Fogelsville<br>*Agency or Address if private Affiant* | 11072<br>*Badge Number* |
|---|---|---|

Sworn to and subscribed before me this 20th day of February 20 13. Mag. Dist. No. 31-1-04

| *Signature of Issuing Authority* | 1501 Lehigh St. Allentown<br>*Office Address* | (SEAL) |
|---|---|---|

## SEARCH WARRANT
## TO LAW ENFORCEMENT
## OFFICER:

WHEREAS, facts have been sworn to or affirmed before me by written affidavit(s) attached hereto from which I have found probable cause, I do authorize you to search the premises or person described, and to seize, secure, inventory and make return according to the Pennsylvania Rules of Criminal Procedure.

☒ This Warrant shall be served as soon as practicable and shall be served only between the hours of 6AM to 10PM but in no event later than:*

☐ This Warrant shall be served as soon as practicable and may be served any time during the day or night but in no event later than:**

4:35 P M, o'clock 22 Feb 2013 20_____.

*  The issuing authority should specify a date not later than two (2) days after issuance. Pa.R.Crim.P. 205(4).
** If the issuing authority finds reasonable cause for issuing a nighttime warrant on the basis of additional reasonable cause set forth in the accompanying affidavit(s) and wishes to issue a nighttime warrant, then this block shall be checked. Pa.R.Crim.P. 206(7).

Issued under my hand this 20th day of February 2013 at 4:35 P M, o'clock.

| *Signature of Issuing Authority* | 31-1-04<br>*Mag. Dist. or Judicial Dist. No.* | Jan 2018<br>*Date Commission Expires* | (SEAL) |
|---|---|---|---|

Title of Issuing Authority: ☒ District Justice ☐ Common Pleas Judge ☐ _____

☐ *For good cause stated in the affidavits(s) the Search Warrant Affidavit(s) are sealed for _____ days by my certification and signature. (Pa.R.Crim.P. 211)*

_____   _____
                                                    (Date)    (SEAL)

*Signature of Issuing Authority (Judge of the Court of Common Pleas...*

ORIGINAL

TO BE COMPLETED BY THE ISSUING AUTHORITY

# Commonwealth of Pennsylvania

**COUNTY OF LEHIGH**



# AFFIDAVIT OF PROBABLE CAUSE

| Docket Number | Police Incident | Warrant Control |
|---|---|---|
| (Issuing Authority): | Number: M05-14████ | Number: |

**PROBABLE CAUSE BELIEF IS BASED UPON THE FOLLOWING FACTS AND CIRCUMSTANCES:**

1. Your affiant is a Trooper with the Pennsylvania State Police, currently stationed at Troop M – Fogelsville Barracks. I have been employed by the Pennsylvania State Police for over 3 years.

2. On 02/20/13 I was assigned to routine patrol in Lehigh Co. I was riding in unmarked patrol unit M5-23. I was in full uniform and working from 0700-1500 hours.

3. At approximately 1333 hours I observed a gray Toyota Camry Sedan bearing VA registration WXH4142 driving west on Interstate 78 in the area of the W. Rock Rd. overpass, Salisbury Twp., Lehigh Co. The aforementioned vehicle was following a tractor trailer with approximately one vehicle length separating it from the tractor trailer in front of the said vehicle. The vehicle was traveling at approximately 65 MPH while following the tractor trailer The distance was closer than reasonable and prudent for the existing conditions.

4. I activated my vehicles emergency lights and sirens and conducted a traffic stop on the vehicle on Interstate 78 westbound at mile marker 58.4, Allentown City, Lehigh County.

5. Upon approach to the vehicle, I made contact with the operator of the vehicle, who was identified as Antoine Moses POTEAT by VA Driver's License # - ████████ I advised him that the traffic stop was audibly and visually recorded. I advised him why he was being stopped. He advised he was coming from Allentown City. POTEAT appeared to be extremely nervous and was visibly shaking. While speaking to POTEAT I smelled an odor of marijuana coming from the vehicle. I also observed multiple air fresheners and dryer sheets throughout the vehicle. Through my training and experience these indicators are often used as a masking agent to facilitate the transportation of narcotics. I also observed multiple cellular phones in the vehicle. During the course of the traffic stop, POTEAT received multiple cellular phone calls. A NYC Parking Authority citation was observed in plain view. When asked about the ticket he advised he lent his friend the vehicle and he received the ticket. The ticket was dated 02/19/13. An NCIC check of the DEFENDANT'S criminal history showed two prior drug arrests in Virginia including simple possession of marijuana and possession of marijuana with intent to deliver.

6. A warning notice was prepared for the violation of PAVC-3310, Following Too Closely. At this point POTEAT was asked to exit the vehicle. I explained the warning notice to him and advised him he was free to leave. I asked POTEAT if he would mind answering a few more of my questions. He related he would. When asked if there was anything illegally possessed in the vehicle, he stated there was not. He continued to display nervous behavior while speaking to him. When asked for permission to search the vehicle he stated he didn't have time and would not consent to a search. POTEAT continued to display behavior that he was trying to leave and attempted to walk back to the vehicle even after being advised that he was free to leave.

**CONTINUED...**

I, Tpr. Gerald P. LYDON, BEING DULY SWORN ACCORDING TO LAW, DEPOSE AND SAY THAT THE FACTS SET FORTH IN THIS AFFIDAVIT ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.

| Affiant Signature | Date 02/20/13 | Issuing Authority Signature | Date 2/20/13 |
|---|---|---|---|

Page 1 of 2 Pages

 

**Commonwe...th of Pennsylvania**

**COUNTY OF LEHIGH**

**AFFIDAVIT OF PROBABLE CAUSE**

| Docket Number (Issuing Authority): | Police Incident Number: M05-14█ | Warrant Control Number: |
|---|---|---|

**PROBABLE CAUSE BELIEF IS BASED UPON THE FOLLOWING FACTS AND CIRCUMSTANCES:**

7. On 02/20/13 at approx. 1410 hours, Tfc. Chad LABOUR, Bureau of Emergency & Special Operations, Canine Section, deployed State Police drug detection canine "DANO" to conduct an exterior only search of the vehicle. During the search, "DANO" displayed alert behavior followed by indication, by stopping and staring at the rear driver's side corner of the vehicle. "DANO" then continued to work the odor and squared his body toward the vehicle, where he sat and stared at the area between the driver's side rear door and the wheel well of the vehicle, which is consistent with his training. "DANO" was verbally praised off the area, but refused to leave the area, which completed the search. Canine Team # 52, Trooper Chad LABOUR and State Police Drug Detection Canine "DANO" have been certified annually in the detection of the following controlled substances, since December 7th & 8th 2011, with the most recent certification occurring on November 14th 2012 : Marijuana / Hashish, Cocaine Hydrochloride / Cocaine base, Heroin Hydrochloride &D, I – Methamphetamine Hydrochloride.

8. POTEAT was provided with a courtesy transport back to PSP Fogelsville Barracks by Tpr. Nicholas GOLDSMITH. He advised he wished to wait in the lobby until a search warrant could be completed and served.

9. Based on the above information, I request a search warrant be issued for the POTEAT's vehicle and all items contained within.

I, Tpr. Gerald P. LYDON, BEING DULY SWORN ACCORDING TO LAW, DEPOSE AND SAY THAT THE FACTS SET FORTH IN THE AFFIDAVIT ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.

| Affiant Signature | Date 02/20/13 | Issuing Authority Signature | Date 2/20/13 |
|---|---|---|---|

Page 2 of 2 Pages

**Commonwealth of Pennsylvania**

**COUNTY OF LEHIGH**

**APPLICATION FOR SEARCH WARRANT AND AUTHORIZATION**

| Docket Number (Issuing Authority): | Police Incident Number: M05-1~~_____~~ | Warrant Control Number: |
|---|---|---|

| Tpr. Gerald LYDON | PSP-Troop R, Blooming Grove | 570-226-5718 | 08/05/15 |
|---|---|---|---|
| AFFIANT NAME | AGENCY | PHONE NUMBER | DATE OF APPLICATION |

**IDENTIFY ITEMS TO BE SEARCHED FOR AND SEIZED** (Be as specific as possible):
All user generated data stored on the handset and/or SIM card – including user information, image files, video files, ring tones, audio files, e-mails, websites visited, all call logs (incoming & outgoing), contact list and/or phonebook information, Short message services (SMS) – including deleted messages, and Multi-media services (MMS). All data stored on a flash memory card from within the handset.

**SPECIFIC DESCRIPTION OF PREMISES AND/OR PERSON TO BE SEARCHED** (Street and No., Apt. No., Vehicle, Safe Deposit Box, etc.):

1. Black iPhone 5 smart phone (MEID-A0000030E172D3) belonging to Antoine Moses POTEAT

2. Samsung SCH-U365 cell phone (S/N-DNQJQ0JCF8GH) belonging to Antoine Moses POTEAT
   a. Model Number MD656LL/A

**NAME OF OWNER, OCCUPANT OR POSSESSOR OF SAID PREMISES TO BE SEARCHED** (If proper name is unknown, give alias and/or description):
Antoine Moses POTEAT ~~_____~~., Charlottesville, VA 22901)

| VIOLATION OF (Describe conduct or specify statute): C.S.D.D.C.A. Title 35 | DATE(S) OF VIOLATION: 02/20/13 |
|---|---|

x **Warrant Application Approved by District Attorney** – DA File No. ADA JOSEPH STAUFFER
(If DA approval required per Pa.R.Crim.P. 202A with assigned File No. per Pa.R.Crim.P. 507)

☐ **Additional Pages Attached** (Other than Affidavit of Probable Cause)

x **Probable Cause Affidavit(s) MUST be attached** (unless sealed below)   Total number of pages: 2

**TOTAL NUMBER OF PAGES IS SUM OF ALL APPLICATION, PROBABLE CAUSE AND CONTINUATION PAGES EVEN IF ANY OF THE PAGES ARE SEALED**
The below named Affiant, being duly sworn (or affirmed) before the Issuing Authority according to law, deposes and says that there is probable cause to believe that certain property is evidence of or the fruit of a crime or is contraband or is unlawfully possessed or is otherwise subject to seizure, and is located at the particular premises or in the possession of the particular person as described above.

| _(signature)_ | PA State Police Troop R Blooming Grove | 11072 |
|---|---|---|
| Signature of Affiant | Agency or Address if private Affiant | Badge Number |

Sworn to and subscribed before me this __5__ day of __August__ 20_15_. Mag. Dist. No. __31-2-02__

_(signature)_ 3404 Hamilton Blvd Allentown, PA-18103 (SEAL)

Signature of Issuing Authority    Office Address

**SEARCH WARRANT**
TO LAW ENFORCEMENT OFFICER:

WHEREAS, facts have been sworn to or affirmed before me by written affidavit(s) attached hereto from which I have found probable cause, I do authorize you to search the premises or person described, and to seize, secure, inventory and make return according to the Pennsylvania Rules of Criminal Procedure.

☒ This Warrant shall be served as soon as practicable and shall be served only between the hours of 6AM to 10PM but in no event later than:*

☐ This Warrant shall be served as soon as practicable and may be served any time during the day or night but in no event later than: **

__1:00 A__ M, o'clock __August 7__ 20_15_.

* The issuing authority should specify a date not later than two (2) days after issuance. Pa.R.Crim.P. 205(4).
** If the issuing authority finds reasonable cause for issuing a nighttime warrant on the basis of additional reasonable cause set forth in the accompanying affidavit(s) and wishes to issue a nighttime warrant, then this block shall be checked. Pa.R.Crim.P. 206(7).

Issued under my hand this __5__ day of __August__ 20_15_ at __1:00 p__ M, o'clock.

| _(signature)_ | 31-2-02 | 2020 | (SEAL) |
|---|---|---|---|
| Signature of Issuing Authority | Mag. Dist. or Judicial Dist. No. | Date Commission Expires: | |

Title of Issuing Authority: ☒ District Justice ☐ Common Pleas Judge ☐ _____

☐ **For good cause stated in the affidavits(s) the Search Warrant Affidavit(s) are sealed for _____ days by my certification and signature.** (Pa.R.Crim.P. 211)

_____ (Date) (SEAL)

TO BE COMPLETED BY THE ISSUING AUTHORITY

# Commonwealth of Pennsylvania



## AFFIDAVIT OF PROBABLE CAUSE

### COUNTY OF LEHIGH

| Docket Number (Issuing Authority): | Police Incident Number: M05-1453342 | Warrant Control Number: |
|---|---|---|

**PROBABLE CAUSE BELIEF IS BASED UPON THE FOLLOWING FACTS AND CIRCUMSTANCES:**

7. On 02/20/13 at approx. 1410 hours, Tfc. Chad LABOUR, Bureau of Emergency & Special Operations, Canine Section, deployed State Police drug detection canine "DANO" to conduct an exterior only search of the vehicle. During the search, "DANO" displayed alert behavior followed by indication, by stopping and staring at the rear driver's side corner of the vehicle. "DANO" then continued to work the odor and squared his body toward the vehicle, where he sat and stared at the area between the driver's side rear door and the wheel well of the vehicle, which is consistent with his training. "DANO" was verbally praised off the area, but refused to leave the area, which completed the search. Canine Team # 52, Trooper Chad LABOUR and State Police Drug Detection Canine "DANO" have been certified annually in the detection of the following controlled substances, since December 7th & 8th 2011, with the most recent certification occurring on November 14th 2012 : Marijuana / Hashish, Cocaine Hydrochloride / Cocaine base, Heroin Hydrochloride &D, I – Methamphetamine Hydrochloride.

8. POTEAT was provided with a courtesy transport back to PSP Fogelsville Barracks by Tpr. Nicholas GOLDSMITH. He advised he wished to wait in the lobby until a search warrant could be completed and served.

9. A search warrant was obtained for the suspect vehicle on 02/20/15 at 1635 hours from Magistrate HOWELLS. At approximately 1705 hours the search warrant was served on the suspect vehicle. Troopers Justin JULIUS and LABOUR assisted in the service of the warrant. During a systematic search of the vehicle the following items were located in the vehicle and seized. They were subsequently placed in PSP Fogelsville Evidence Room under property number M5-9929(a):

    1. Two clear plastic bags containing suspected cocaine (located in center console under gear shifter panel, combined field weight of approximately 1100 grams).
    2. Two clear vacuum sealed bags containing suspected marijuana (located in center console under gear shifter panel, combined field weight of approximately 5 ounces).
    3. Receipt from Versace store in Center Valley, NY dated 02/20/13 (located in shopping bag in trunk of vehicle).
    4. New York City Parking Ticket #773222540-5 dated 02/18/13 (located in center console of vehicle)
    5. Samsung SCH-U365 Cell Phone located in center console of vehicle.
    6. Black iPhone 5 located on driver seat of vehicle.

10. The suspected cocaine and marijuana were sent to PSP Bethlehem Lab to undergo drug identification analysis. On March 28, 2013 I received the lab report showing that the items seized were 1.003 kilograms of cocaine and 90.2 grams marijuana.

11. Due to the large amount of cocaine and marijuana seized, this affiant is requesting a search warrant to conduct a physical exam of the cellular devices possessed by POTEAT. Through training and experience I know cell phones often contain information regarding the sale of illegal controlled substances, the contacts of parties to which this cocaine and marijuana was to be delivered and any other further information pertaining to contacts or distribution points which would be useful in furthering this investigation.

I, Tpr. Gerald P. LYDON, BEING DULY SWORN ACCORDING TO LAW, DEPOSE AND SAY THAT THE FACTS SET FORTH IN THE AFFIDAVIT ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.

| Affiant Signature | Date 03/05/15 | Issuing Authority Signature | Date 8-5-15 (SEAL) |
|---|---|---|---|

Page 2 of 2 Pages

# EXHIBIT "D"

# Magisterial District Judge 31-1-08

## DOCKET

Docket Number: MJ-31108-CR-0000036-2013

### Criminal Docket

Commonwealth of Pennsylvania

v.

Antoine Moses Poteat

Page 1 of 2

### CASE INFORMATION

| | | | |
|---|---|---|---|
| Judge Assigned: | Michael Joseph Pochron | Issue Date: | 02/28/2013 |
| OTN: | T 297524-3 | File Date: | 02/28/2013 |
| Arresting Agency: | Fogelsville PSP | Arrest Date: | |
| Complaint/Incident #: | M051453342 | Disposition: | |
| County: | Lehigh | Disposition Date: | |
| Township: | Salisbury Township | Case Status: | Inactive |

### STATUS INFORMATION

| Case Status | Status Date | Processing Status |
|---|---|---|
| Inactive | 02/28/2013 | Awaiting Preliminary Hearing |

### DEFENDANT INFORMATION

| | | | |
|---|---|---|---|
| Name: | Poteat, Antoine Moses | Sex: | Male |
| Date of Birth: | 06/07/1989 | Race: | Black |
| Address(es): | | | |

**Home**
Charlottesville, VA 22901

| | |
|---|---|
| Advised of His Right to Apply for Assignment of Counsel? | No |
| Public Defender Requested by the Defendant? | No |
| Application Provided for Appointment of Public Defender? | No |
| Has the Defendant Been Fingerprinted? | No |

### CASE PARTICIPANTS

| Participant Type | Participant Name |
|---|---|
| Arresting Officer | Lydon, Gerald P |
| Defendant | Poteat, Antoine Moses |

### CHARGES

| # Charge | Grade | Description | Offense Dt. | Disposition |
|---|---|---|---|---|
| 1 35 § 780-113 §§ A30 | F | Manufacture, Delivery, or Possession With Intent to Manufacture or Deliver | 02/20/2013 | |
| 2 35 § 780-113 §§ A30 | F | Manufacture, Delivery, or Possession With Intent to Manufacture or Deliver | 02/20/2013 | |
| 3 35 § 780-113 §§ A31I | M | Marijuana-Small Amt Personal Use | 02/20/2013 | |

MDJS 1200

Printed: 06/12/2014  11:33 am

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assumes any liability for inaccurate or delayed data, errors or omissions on these docket sheets. Docket sheet information should not be used in place of a criminal history background check, which can only be provided by the Pennsylvania State Police. Employers who do not comply with the provisions of the Criminal History Record Information Act (18 Pa.C.S. Section 9101 et seq.) may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# EXHIBIT "E"

SP 6-401 (7-2004)

*KCNd 12/21/18*

## Pennsylvania St․ ᐧ Police
## Due Diligence of Warra… Service Report

| 1. TYPE OF WARRANT | | 2. ORIGINATING STATION/LOCATION | CODE | TELEPHONE NUMBER | 3. INCIDENT NUMBER |
|---|---|---|---|---|---|
| ☒ CRIMINAL  ☐ TRAFFIC | | PAPSP2900/ FOGELSVILLE | 4450 | 610-395-1438 | |

| 4. DATE/TIME WARRANT RECEIVED (ORIGINATING STATION) | 5. MEMBER NAME | | BADGE NUMBER |
|---|---|---|---|
| 02/28/13  0939 Hours | Tpr. *NICHOLAS GOLDSMITH* | | *11002* |

| 6. TRANSMITTAL DATE | 7. SERVING STATION/LOCATION | CODE | TELEPHONE NUMBER | 8. INCIDENT NUMBER |
|---|---|---|---|---|
| | | | - - | |

| 9. DATE/TIME WARRANT RECEIVED (SERVING STATION) | 10. MEMBER ASSIGNED | BADGE NUMBER | 11. DATE DUE |
|---|---|---|---|
| | | | |

| 12. DEFENDANT NAME | 13. DEFENDANT ADDRESS | TELEPHONE NUMBER |
|---|---|---|
| Antoine Moses POTEAT | ▮▮▮▮▮▮▮. Charlottesville, VA. 22901 | ▮▮▮▮ |

| 14. DEFENDANT DOB | AGE |
|---|---|
| 06/07/89 | 23 |

| 15. DEFENDANT WORKPLACE/SCHOOL | 16. WORKPLACE/SCHOOL ADDRESS | TELEPHONE NUMBER |
|---|---|---|
| *UNKNOWN* | *UNKNOWN* | *UNK.* - - |

| 17. SSN | 18. DRIVER'S LICENSE NUMBER | STATE | 19. RACE | 20. SEX | 21. OCCUPATION |
|---|---|---|---|---|---|
| ▮▮▮▮ | ▮▮▮▮ | VA | B/N | M | *UNKNOWN* |

**22. SCARS-MARKS-TATTOOS**
*UNKNOWN*

| 23. EYES | 24. HAIR | 25. HEIGHT | 26. WEIGHT | 27. OTHER DESCRIPTION | 28. JNET/CPIN PHOTO ATTACHED |
|---|---|---|---|---|---|
| BRO | BLK | 506 | 135 | *UNKNOWN* | *UNAVAILABLE* |

| 29. VEHICLE MAKE | 30. VEHICLE MODEL | 31. VEHICLE COLOR | 32. REGISTRATION NO. | STATE | 33. OTHER VEHICLE DESCRIPTION |
|---|---|---|---|---|---|
| *N/A* | *N/A* | *N/A* | *N/A* | | *N/A* |

| 34. ISSUING AUTHORITY NUMBER | 36. ISSUING AUTHORITY ADDRESS | TELEPHONE NUMBER |
|---|---|---|
| MDJ-31-1-08 | 3000 South Pike Ave. Allentown, PA. 18103 | 610-797-8724 |

| 35. ISSUING AUTHORITY NAME |
|---|
| Hon. Michael J. FAULKNER |

| 37. DOCKET NUMBER | 38. OTN | 39. CHARGE(S) |
|---|---|---|
| MJ31108CR00000362013 | T297524-3 | Title 35, 780-113(a)(30)Manufacture |

| 40. EXTRADITION | 41. EXTRADITION AUTHORIZATION |
|---|---|
| ☒ YES  ☐ NO | |

| 42. NCIC ENTRY DATE | NIC NUMBER | 43. EXTRADITION REMARKS |
|---|---|---|
| 03/06/13 | W5▮▮▮▮ | Surrounding States Only |

**44. REMARKS**

*POTEAT* (margin)

45.

**SERVICE ATTEMPTS**

| OFFICER NAME | DATE/TIME | ADDRESS | REMARKS |
|---|---|---|---|
| TPR GOLDSMITH | 04/27/13 0700 | PSP FOGELSVILLE 8320 SCHANTZ RD BREINIGSVILLE PA 18031 | CHECK OF NCIC FOR OLN LISTS SAME ADDRESS. CHECK OF WHITEPAGES.COM NO PHONE LISTED |
| TPR GOLDSMITH | 05/19/13 0700 | PSP FOGELSVILLE 8320 SCHANTZ RD BREINIGSVILLE PA 18031 | CHECK OF ENTERPRISE.COM LISTS NO RECENT RENTALS SINCE THIS INCIDENT. LAST 02/24/13 RENTAL |
| TPR GOLDSMITH | 09/23/13 0700 | ▮▮▮▮▮▮▮ CHARLOTTESVILLE VA. 22901 | LETTER MAILED TO THE LAST KNOWN ADDRESS. |
| TPR GOLDSMITH | 01/07/14 1045 | PSP FOGELSVILLE 8320 SCHANTZ RD BREINIGSVILLE PA 18031 | 1/7/14 PACIC REQUEST FOR A BIO WORKSHEET RENTAL CHECKS ENTERPRISE...NONE HERTZ-12/27/13 -12/30/13 SAN FRAN AIRPO |
| TPR GOLDSMITH | 01/10/14 0700 | PSP FOGELSVILLE 8320 SCHANTZ RD BREINIGSVILLE PA 1803 | RECIEVED PACIC BIO SHEET AND VA INTEL EMAIL. NEW VEHICLE WAS REGISTERED BY POTEAT. WARRANT UPDATED IN NCIC WITH NEW |
| CPL EMERY | 02/20/14 | E-MAIL SENT TO DDA ZAMPOGNA | REQ. EXTRAD. CHANGE |
| TPR. KONOPKA | 05/07/14 | PSP FOGELSVILLE 8320 SCHANTZ RD. BREINIGSVILLE, PA 18031 | LEFT MESSAGE FOR DETECTIVE RESSLER REQUESTING EXTRADITION FROM VIRGINIA. |
| TPR. KONOPKA | 05/08/14 | PSP FOGELSVILLE 8320 SCHANTZ RD. BREINIGSVILLE, PA 1803 | FAXED DET. RESSLER COPY OF POTEAT AFFIDAVIT AND CRIMINAL COMPLAINT. |
| SGT REED | 05/17/14 | PSP FOGELSVILLE 8320 SCHANTZ RD BREINIGSVILLE, PA 1803 | CURRENTLY INCARCERATED IN HARFORD CTY DETENTION CENTER IN MD |
| TPR. KONOPKA | 08/06/14 | PSP FOGELSVILLE 8320 SCHANTZ RD. BREINIGSVILLE, PA 18031 | CONFIRMED STILL IN CUSTODY. |
| TPR. KONOPKA | 12/17/14 | PSP FOGELSVILLE 8320 SCHANTZ RD. BREINIGSVILLE, PA 1803 | CONFIRMED ARRAIGNMENT AND CURRENT STATUS |

**REPORT OF SERVICE**

| 46. FINE & COSTS COLLECTED | 47. METHOD | | 48. DATE – TIME | 49. NOT COLLECTED ☒ |
|---|---|---|---|---|
| **50. BAIL – BOND COLLECTED** 50,000.00 | **51. METHOD** NON MONETARY | | **52. DATE – TIME** 07/18/14 | **53. NOT COLLECTED** ☐ |

| 54. ARRAIGNED BEFORE | 55. ISSUING AUTHORITY ADDRESS | TELEPHONE NUMBER |
|---|---|---|
| JUDGE MARIA L. DANTOS | 3000 SOUTH PIKE AVE. ALLENTOWN, PA 18103 | 610-797-8724 |

| 56. COMMITMENT | 57. COMMITMENT REMARKS |
|---|---|
| ☒ RELEASED<br>☐ COMMITTED | OMNIBUS PRE TRIAL HEARING HELD ON 11/14/14 AT 0930 HRS. PRE TRIAL HEARING ON 01/14/15 AT 1330 HRS. |

**58. SERVICE REMARKS**

**CERTIFICATION OF SERVICE**

| 59. OFFICER – RANK, NAME | SIGNATURE | BADGE NUMBER |
|---|---|---|
| TPR. BRIAN KONOPKA | | 12367 |
| **60. SUPERVISOR – RANK, NAME** CPL. EMERY | SIGNATURE | BADGE NUMBER 8369 |

43.,                                    SERVICE ATTEMPTS

| OFFICER'S NAME | DATE/TIME | ADDRESS | REMARKS |
|---|---|---|---|
| CPL. EMERY | 0830 03/19/15 | SECURE DOCKET CHECKED - Δ IN CUSTODY FOR DUI. IN VA. | - TRIAL DATE 05/12/15 |
| CPL. EMERY | 0850 03/19/15 | - POTENT REMOVED NCIC/CLEAN | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

# EXHIBIT "F"

# WARRANT OF ARREST FOR EXTRADITION

VA. CODE §§ 19.2-99, 19.2-100

Albemarle ................................
LOCALITY

[x] General District Court

[ ] Juvenile and Domestic Relations District Court

[ ] Circuit Court

**TO ANY AUTHORIZED OFFICER:**

You are hereby commanded in the name of the Commonwealth of Virginia forthwith to arrest and bring the Accused before this Court to answer the allegation that the Accused alleged to be within this city or county has, pursuant to the provisions of Virginia Code

[ ] § 19.2-99  [x] § 19.2-100,

[x] fled justice from Pennsylvania ................................ on a charge or charges of
NAME OF STATE

Manufacture, Delivery, or Possession with intent to Manufacture of Deliver (2 Counts)
Possession of Marijuana

[ ] escaped confinement in ................................ after having been convicted of a crime;
NAME OF STATE

[ ] broken the terms of bail, probation, or parole in ................................
NAME OF STATE

I, the undersigned, have found probable cause to believe that the Accused is a fugitive from justice as alleged above, based upon a certified copy of the sworn charge or charges or upon the sworn statements of the Complainant which have been reduced to writing and attached to the original copy of this warrant.

Officer  D. P. Zambrotta   54   Albemarle PD
COMPLAINANT

06/11/2014 04:00 PM
DATE AND TIME ISSUED

[ ] CLERK  [x] MAGISTRATE  [ ] JUDGE
Mauricus Lofton

FORM DC-374 (FRONT) REVISED 7/05

---

CASE NO.

ACCUSED:

POTEAT, ANTOINE MOSES
LAST NAME, FIRST NAME, MIDDLE NAME

2069 Commonwealth Dr
ADDRESS/LOCATION

Charlottesville, VA 22901

COMPLETE DATA BELOW IF KNOWN

| RACE | SEX | BORN | HT. | WGT. | EYES | HAIR |
|------|-----|------|-----|------|------|------|
| | | MO. DAY YR. | FT. IN. | | | |
| B | M | 06/07/1989 | 5' 06" | 135 | BRO | BLK |

SSN

DL #                                    STATE
                                        VA

HEARING DATE AND TIME

**COMMONWEALTH OF VIRGINIA**
**WARRANT OF ARREST**
**FOR EXTRADITION**

[X] EXECUTED by arresting the Accused named above on this day:

6/11/14   1602
DATE AND TIME OF SERVICE

D. P. Zambrotta ................ Arresting Officer

54  ACPD   007
BADGE NO., AGENCY AND JURISDICTION

FOR ................................
SHERIFF

Attorney for the Accused:

Short Offense Description:

**Warrant of Extradition**

Offense Tracking Number:  **003GM1400003043**

FOR ADMINISTRATIVE USE ONLY
Virginia Crime Code:

ARR-9986-S9



Case 5:21-cv-03117-JFL    Document 55    Filed 10/03/24    Page 80 of 88

# Albemarle General District Court

 

## Traffic/Criminal Case Details

### Case/Defendant Information

| | | |
|---|---|---|
| Case Number : GC14008324-00 | Filed Date : 06/12/2014 | Locality : COMMONWEALTH OF VA |
| Name : POTEAT, ANTOINE MOSES | Status : Custody | Defense Attorney : GOODMAN |
| Address : CHARLOTTESVILLE, VA 22901 | AKA1 : | AKA2 : |
| Gender : Male | Race : Black(Non-Hispanic) | DOB : 06/07/**** |

### Charge Information

Charge : FUGITIVE, FELONY W/O WARRANT

| | | |
|---|---|---|
| Code Section.: 19.2-100 | Case Type : Felony | Class : U |
| Offense Date : 02/28/2013 | Arrest Date : 06/11/2014 | Complainant : D. P. ZAMBROTTA |
| Amended Charge : | Amended Code : | Amended Case Type : |

### Hearing Information

| Date | Time | Result | Hearing Type | Courtroom | Plea | Continuance Code |
|---|---|---|---|---|---|---|
| 06/12/2014 | 09:00 AM | Continued | | | | |
| 06/19/2014 | 09:00 AM | Continued | | | | |
| 07/01/2014 | 09:00 AM | Continued | | | | |
| 07/03/2014 | 09:00 AM | Continued | | | | |
| 07/08/2014 | 09:00 AM | Continued | | | | |
| 07/28/2014 | 09:00 AM | Continued | | | | |
| 07/31/2014 | 09:30 AM | Finalized | Disposition/Sentencing/Revocation Hearing | 138 | | |

### Service/Process

### Disposition Information

| | | |
|---|---|---|
| Final Disposition : Dismissed | | |
| Sentence Time : 00Months 000Days 00Hours | Sentence Suspended Time : 00Months 000Days 00Hours | |
| Probation Type : | Probation Time : 00Years 00Months 000Days | Probation Starts : |
| Operator License Suspension Time : 00Years 00Months 000Days | Restriction Effective Date : | |
| Operator License Restriction Codes : | | |
| Fine : | Costs : | Fine/Costs Due : |

Name Search
Case Number Search
Hearing Date Search
Service/Process Search

Name Search
Case Number Search
Hearing Date Search
Service/Process Search

Albemarle General Dist ˅

**EXHIBIT "G"**

| COMMONWEALTH OF PENNSYLVANIA | | POLICE CRIMINAL COMPLAINT |
|---|---|---|
| COUNTY OF: LEHIGH | | COMMONWEALTH OF PENNSYLVANIA VS. |

| Magisterial District Number | 31-1-08 | DEFENDANT: | (NAME and ADDRESS) |
|---|---|---|---|
| MDJ Name. Hon | MICHAEL J. POCHRON | ANTOINE   MOSES   POTEAT | |
| Address | 3000 SOUTH PIKE AVE | First Name   Middle Name   Last Name   Gen. | ORIGINAL |
| | ALLENTOWN, PA 18103 | 2301 SHELBY DR. | |
| | | CHARLOTTESVILLE, VA 22901 | |
| Telephone | 610-797-8724 | 347-775-1075 | |

COPY

### NCIC EXTRADITION CODE TYPE

- [ ] 1-Felony Full
- [ ] 2-Felony Ltd
- [x] 3-Felony Surrounding States
- [ ] 4-Felony No Ext
- [ ] 5-Felony Pend
- [ ] A-Misdemeanor Full
- [ ] B-Misdemeanor Limited
- [ ] C-Misdemeanor Surrounding States
- [ ] D-Misdemeanor No Extradition
- [ ] E-Misdemeanor Pending

'Distance'

### DEFENDANT IDENTIFICATION INFORMATION

| Docket Number | Date Filed | OTN/LiveScan Number | Complaint/Incident Number | SID: | Request Lab Services? |
|---|---|---|---|---|---|
| CR-36-13 | 02/28/13 | T 297524-3 | M0~~█████~~ | VA1848694E | [x] YES [ ] NO |

| GENDER | DOB 06/07/89 | POB NEW YORK | | Add'l DOB | Co-Defendant(s) [ ] |
|---|---|---|---|---|---|
| [x] Male [ ] Female | AKA   First Name | | Middle Name | Last Name | Gen. |

| RACE | [ ] White | [ ] Asian | [x] Black | [ ] Native American | | [ ] Unknown |
|---|---|---|---|---|---|---|
| ETHNICITY | [ ] Hispanic | | [x] Non-Hispanic | | [ ] Unknown | |

| HAIR COLOR | [ ] GRY (Gray) | [ ] RED (Red / Aubn ) | [ ] SDY (Sandy) | [ ] BLU (Blue) | [ ] PLE (Purple) | [ ] BRO (Brown) |
|---|---|---|---|---|---|---|
| | [x] BLK (Black) | [ ] ONG (Orange) | [ ] WHI (White) | [ ] XXX (Unk /Bald) | [ ] GRN (Green) | [ ] PNK (Pink) |
| | [ ] BLN (Blonde /Strawberry) | | | | | |

| EYE COLOR | [ ] BLK (Black) | [ ] BLU (Blue) | [x] BRO (Brown) | [ ] GRN (Green) | [ ] GRY (Gray) |
|---|---|---|---|---|---|
| | [ ] HAZ (Hazel) | [ ] MAR (Maroon) | [ ] PNK (Pink) | [ ] MUL (Multicolored) | [ ] XXX (Unknown) |

| Driver License | State VA | License Number ~~████~~ | Expires: 06/07/20 | WEIGHT (lbs.) |
|---|---|---|---|---|
| DNA | [ ] YES [x] NO | DNA Location | | 135 |
| FBI Number | | MNU Number | | Ft. HEIGHT In. |
| Defendant Fingerprinted | [ ] YES [x] NO | | | 5      6 |
| Fingerprint Classification | | | | |

### DEFENDANT VEHICLE INFORMATION

| Plate # | State | Hazmat [ ] | Registration Sticker (MM/YY) | Comm'l Veh. Ind. [ ] | School Veh. [ ] | Oth. NCIC Veh. Code | Reg. same as Def. [ ] |
|---|---|---|---|---|---|---|---|
| VIN | | | Year | Make | Model | Style | Color |

Office of the Attorney for the Commonwealth [x] Approved [ ] Disapproved because:_____
(The attorney for the Commonwealth may require that the complaint, arrest warrant affidavit, or both be approved by the attorney for the Commonwealth prior to filing. Pa R Crim P 507.)

ADA BETHANY ZAMPOGNA
(Name of Attorney for Commonwealth - Please Print or Type)          (Signature of Attorney for Commonwealth)          (Date)

I, TPR GERALD LYDON          00665349/11072
(Name of Affiant - Please Print or Type)          (PSP/MPOETC – Assigned Affiant ID Number & Badge #)

of the Pennsylvania State Police, Troop M, Fogelsville          PAPSP2900
(Identify Department or Agency Represented and Political Subdivision)          (Police Agency ORI Number)

do hereby state (check appropriate box)

1. [x]  I accuse the above named defendant who lives at the address set forth above

- [ ]  I accuse the defendant whose name is unknown to me but who is described as _

- [ ]  I accuse the defendant whose name and popular designation or nickname is unknown to me and whom I have therefore designated as John Doe or Jane Doe

with violating the penal laws of the Commonwealth of Pennsylvania at   101   INTERSTATE 78 WEST AT W ROCK RD.,
(Subdivision Code)   SALISBURY TWP
(Place-Political Subdivision)

in LEHIGH County (County Code) 39   on or about 02/20/13 AT 1333 HOURS

AOPC 412A-Rev. 09/12          Page 1 of 3

03/14/2007  08:46    6107911401         MDC 31 1 08                    PAGE  06/11
    07/16/2014  15:12    6108711448      CENTRAL BOOKING               FAGE  06/08

Jun.03 2014 1:41PM    LC DETECTIVES                6108203612          Page 8

May. 19, 2014 11:02PM                               No. 0661   P. 8

    **POLICE CRIMINAL COMPLAINT**

| Docket Number OR-36-13 | Date Filed 02/20/13 | CTN/LiveScan Number T 297324-3 | | Complaint/Incident Number M05-████ |
|---|---|---|---|---|
| Defendant Name | First ANTOINE | | Middle: MOSES | Last POTEAT |

2.  I ask that a warrant of arrest or a summons be issued and that the defendant be required to answer the charges I have made.

3.  I verify that the facts set forth in this complaint are true and correct to the best of my knowledge or information and belief. This verification is made subject to the penalties of Section 4904 of the Crimes Code (18 Pa.C.S.§4904) relating to unsworn falsification to authorities.

4.  This complaint consists of the preceding page(s) numbered 1  through 3

The acts committed by the accused, as listed and hereafter, were against the peace and dignity of the Commonwealth of Pennsylvania and were contrary to the Act(s) of the Assembly, or in violation of the statutes cited.
(Before a warrant of arrest can be issued, an affidavit of probable cause must be completed, sworn to before the issuing authority, and attached.)

FEBRUARY 28, 2013

AND NOW, on this date,    February 28, 2013        I certify that the complaint has been properly completed and verified. An affidavit of probable cause must be completed before a warrant can be issued.

    9121-08

SEAL

☒ Lab user fee applies.

Page 3 of 3

# POLICE CRIMINAL COMPLAINT

| | | | | Complaint/Incident Number<br>M05-1453342 |
|---|---|---|---|---|
| Docket Number: | Date Filed:<br>02/26/13 | OTN/LiveScan Number: | Middle:<br>Moses | Last:<br>POTEAT |
| Defendant Name: | First:<br>Antoine | | | |

## AFFIDAVIT of PROBABLE CAUSE

1.      Your AFFIANT is a Trooper with the Pennsylvania State Police, currently stationed at the Troop M, Fogelsville Barracks. I have been employed by the Pennsylvania State Police for approximately 4 years.

2.      On 02/20/13 I was assigned to routine patrol on Interstate 78 in Lehigh County. I was full uniform and in an unmarked vehicle. My scheduled shift was from 0700-1500 hours.

3.      At approximately 1333 hours I observed a gray 2012 Toyota Camry Sedan bearing VA Registration – WXH4142 traveling west on I-78 west in the area of W. Rock Rd. The aforementioned vehicle was following a tractor trailer at a distance of approximately one vehicle length. The vehicle was traveling approximately 65 MPH. This was closer than was reasonable and prudent for existing conditions. I activated my emergency lights and sirens and conducted a traffic stop on the vehicle. Upon my initial approach I made contact with POTEAT who was operating the vehicle. He was identified by VA DL #~~~~~~~~~. I advised POTEAT that the traffic stop was being audibly and visually recorded and the reason he was being stopped.

4.      I then spoke to POTEAT who originally stated he was coming from Allentown. This statement was inconsistent with his direction of travel. He then related he was coming from a shopping mall. He was unable to provide me with the name of the mall or the town it was located in.

5.      While speaking to POTEAT I observed several indicators of criminal activity. He had numerous air fresheners in original packaging on the passenger's seat. There were several more air fresheners hanging from the turn signal lever on the steering column of the vehicle. There was also a bottle of perfume and an open pack of laundry sheets on the passenger seat. I observed 2 cell phones in plain view in the vehicle (1 iPhone and 1 Trac Phone). The phones rang numerous times throughout the course of the stop. I observed a NYC Parking Ticket in the center console that was dated 02/18/13. I was also able to smell an odor of marijuana emitting from the vehicle despite all the scent masking agents. Through my training and experience I know the above are indicators of the transportation of narcotics.

6.      A warning notice was prepared and issued to POTEAT. I ended the traffic stop and advised POTEAT he was free to leave and he began to return to his vehicle. I asked POTEAT if I could ask him a few more questions. He willingly allowed me to. I asked if there was anything illegal in the vehicle to which he responded "no" and started to become confrontational. When asked about the odor of marijuana he stated he doesn't smoke weed. I asked POTEAT for consent to search his vehicle. He denied. At this point Tpr. Chad LABOUR and Canine "Dano" were requested to respond to the scene.

CONTINUED.....

I, TPR. GERALD LYDON, BEING DULY SWORN ACCORDING TO THE LAW, DEPOSE AND SAY THAT THE FACTS SET FORTH IN THE FOREGOING AFFIDAVIT ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.

_____ 11072
(Signature of Affiant)

Sworn to me and subscribed before me this _____ day of _____

_____                    _____
Date                                                    Magisterial District Judge

My commission expires first Monday of January.

SEAL

Page 1 of 2

AOPC 411C - Rev. 07/10

Jun 03 2014 1:40PM    LC DETECTIVES                    61082 712                    page 2

May. 19. 2014 11:01PM                                              No. 0661    P. 2

**COMMONWEALTH OF PENNSYLVANIA**
**COUNTY OF LEHIGH**



**Arrest Warrant**

Commonwealth of Pennsylvania
v.
Antoine Moses Poteat

| | |
|---|---|
| Mag. Dist. No. : | MDJ-31-1-08 |
| MDJ Name : | Honorable Michael Joseph Pochron |
| Address : | 3000 South Pike Avenue<br>Allentown, PA 18103 |
| Telephone : | 610-797-8724 |

| | | | |
|---|---|---|---|
| Complaint No: | M051453342 | Issued For: | Antoine Moses Poteat |
| Charging Officer: | Lydon, Gerald P | Docket No: | MJ-31108-CR-00008 |
| Arresting Agency: | Fogelsville PSP | | |
| Case Filed: | 02/28/2013 | NCIC OFF: | |
| OTN: | T 287624-3 | OOC: | |
| Reason For Warrant: | Felony | WARRANT ID: | DIS70 21 |
| Offense Date: | 02/20/2013 | Warrant Control No: | 31108-AW- |
| Lead Offense: | 35 § 780-113 §§ A30 Manufacture, Delivery, or Possession With Intent to Manufacture or Deliver | | |

**TO THE OFFICER:** Gerald P Lydon

In the name of the Commonwealth of Pennsylvania, you are commanded to take the defendant, Antoine Moses Poteat, into custody. When the defendant is taken into custody, bring the defendant before me at the Court address shown above to answer the complaint of Gerald P Lydon charging the defendant with the offense(s) set forth above and further to be dealt with according to law.

Witness the hand and official seal of the issuing authority on this 28th day of February, 2013.

February 28, 2013          *Michael J. Pochron*
Date                        Magisterial District Judge Pochron



MJ-31108-CR-0000036-2013          31108-AW-0000134-2013          Antoine Moses Poteat

MDJS 417                                                          Printed 02/28/2013 9:39 01AM

un 03 2014 1:40PM   LC ● CTIVES          6108 ● )12                    page 3

May. 19, 2014 11:01PM                              No. 0661   P. 3

Commonwealth of Pennsylvania                 Warrant Control No: 31108-AW-0000
v.                                           Docket No: MJ-31108-CR-00000
Antoine Moses Poteat                         OTN: T 297524-3

**RETURN WHERE DEFENDANT FOUND**

By authority of this warrant, on _____ 7-16 , 20 14

I took into custody the within named __Antoine Poteat__ , and he/she is

☐ before you for disposition.

☐ In the _____ Prison.

**RETURN WHERE DEFENDANT IS NOT FOUND**

☐ After careful search, I cannot find the within named defendant.

Officer Costs:
Warrant
Miles @
Commitments
Miles @
Conveying to hearing
Miles @
Total

_____
(Signature of Police Officer - Name and Title)

MDJS 417                          2                    Printed: 02/28/2013 9:99.01AM

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| ANTOINE POTEAT, | : CIVIL ACTION<br>: Plaintiff, |
| v. | : No. 21-cv-3117-JFL |
| GERALD LYDON, et al.,<br>Defendants | : |

## ORDER

**AND NOW,** this _____ day of _____, 2024, upon consideration of plaintiff's Rule 60 motion, and any response thereto, it is hereby **ORDERED** that:

1.  plaintiff's motion is granted;

2.  the order in favor of defendants, on defendants' motions to dismiss, is vacated;

3.  the judgment in favor of defendants, and against plaintiff is vacated;

4.  the above-captioned civil action is reinstated;

5.  plaintiff shall file a motion for leave to amend which includes a proposed, second amended complaint, within thirty (30) days of the date of this order.

BY THE COURT:

_____
J.

